# EXHIBIT 1

## STATE OF TENNESSEE

## IN THE CHANCERY COURT FOR DYER COUNTY

ROBBIE JOHNSON, an individual,          )     Case No. __21-CV-548__

      *Plaintiff,*                                     )

v.                                                          )

TYSON FOODS, INC., and                     )
RONDA GOOCH, HR Manager of         )
Tyson Foods, Inc.                                  )

      *Defendants.*                                 )

AM_____ PM_____
_____ #_____
OCT 1 9 2021
H. STEVEN WALKER
CHANCERY CLERK____ DC

## COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF

This is an action brought to remedy Tyson Food, Inc.'s pattern of discrimination against employees who do not wish to comply with Tyson's COVID-19 vaccine mandate.

Rather than adhering to its obligations under the Tennessee Human Rights Act ("THRA"), the Tennessee Disability Act ("TDA"), and state tort law, Tyson has informed employees that they will be effectively terminated for non-compliance, regardless of their exemption status. Tyson's adverse and punitive actions left the plaintiff Robbie Johnson ("Mrs. Johnson") with the impossible choice of either taking the COVID-19 vaccine, at the expense of her religious beliefs, health, and bodily autonomy, or losing her employment and livelihood, and she now faces immediate injury as a result of Tyson's unlawful mandate.

///

///

1

## PARTIES

1. Plaintiff Robbie Johnson is an employee at Tyson's plant in Newbern, Tennessee, ("Newbern plant"). She has worked there for twenty-three years. She is a citizen of Tennessee and a resident of Dyer County. Mrs. Johnson requested a religious exemption from Tyson's vaccine mandate. As a "reasonable" accommodation, Tyson offered only one year of unpaid leave, with no promise of a position at the end of the leave of absence, and the vaccine requirement still in effect upon the Plaintiff's unlikely return.

2. Mrs. Johnson was infected with and recovered from COVID-19 in 2020.

3. Defendant Tyson Foods, Inc. ("Tyson"), together with its subsidiaries, is a corporation that operates as a worldwide food processing and marketing company.

4. Tyson is the world's second largest processor and marketer of chicken, beef, and pork. Tyson employs approximately 139,000 people in the United States and operates five facilities in the state of Tennessee. Tyson's facilities throughout Tennessee employ thousands of people. A key plant at issue in this case is Tyson's plant at Newbern, located in Dyer County, Tennessee.

5. At all relevant times, Tyson knew or should have known of the laws, policies, practices, and conditions alleged herein.

6. Defendant Ronda Gooch is the HR manager at Tyson's Newbern plant.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to Tenn. Code Ann. §§ 16-11-101, 16-11-102, 16-11-103, 1-3-103, 29-1-101, and 29-14-102.

8.  This Court has personal jurisdiction over Tyson pursuant to Tenn. Code Ann. § 20-2-223 because Tyson transacts business in Tennessee, and the wrongful conduct and resulting injuries alleged herein substantially occurred in this state.

9.  This Court has personal jurisdiction over Defendant Ronda Gooch pursuant to Tenn. Code Ann. § 20-2-223(a)(3) because she caused tortious injury by an act in this state, as alleged herein.

10. Venue is proper in this judicial district pursuant to Tenn. Code Ann. § 20-4-101 because the cause of action arises from Tyson's Newbern Plant, situated in Dyer County.

## FACTS

### A.  COVID-19 and Response

11. The novel coronavirus SARS-CoV-2, which causes the disease COVID-19, is a contagious virus which spreads person-to-person.

12. In response to COVID-19, Tyson began implementing a series of mitigation protocols in spring 2020 to prevent the spread of the novel coronavirus SARS-CoV-2. These measures included mask mandates, face shields, social distancing, temperature checks, COVID-19 testing,[1] and self-quarantines.[2] Tyson also provided accommodations for

---

[1] Tyson Foods, *Tyson Foods CEO Provides Update on Efforts to Address COVID-19* (April 6, 2021) available at https://www.tysonfoods.com/news/news-releases/2020/4/tyson-foods-ceo-provides-update-efforts-address-covid-19 (last visited Sept. 27, 2021); Tyson Foods, *Why Tyson Has Taken a Leading Position on COVID-19 Testing* (July 1, 2021) available at https://thefeed.blog/2020/07/01/covid-19-testing-at-tyson-foods/ (Last visited Sept. 27, 2021).
[2] Tyson Foods, *Protecting Team Members and Our Company; Ensuring Business Continuity* (March 17, 2020) available at https://www.tysonfoods.com/news/news-releases/2020/3/protecting-team-members-and-our-company-ensuring-business-continuity (last visited Sept. 27, 2021); Chattin Cato, *Tyson Team Innovates to Make Face Shields for Frontline Workers* (July 6, 2021) available at https://thefeed.blog/2020/07/06/tyson-innovates-to-make-face-shields-for-frontline-workers/ (last visited Sept. 27, 2021).

hourly employees, such as "[]eliminating any punitive effect for missing work due to illness."[3]

13. Tyson enjoyed significant success at reducing the risk of spread of COVID-19 through the company's policy of self-quarantining for the symptomatic and testing measures for the asymptomatic persons.

14. Three COVID-19 vaccines have been manufactured and distributed in the United States. The Food and Drug Administration ("FDA") issued an Emergency Use Authorization ("EUA") for the Pfizer-BioNTech vaccine on December 1, 2020. One week later, a second EUA for the Moderna COVID-19 vaccine was granted. Finally, the FDA issued a EUA for the Johnson & Johnson COVID-19 vaccine on February 27, 2021. The FDA has approved the use of a currently unavailable vaccine for future use, Pfizer's Comirnaty. However, the only vaccines widely available for use in the United States are these three experimental, investigative, and unlicensed drugs.

**B.   Tyson's Vaccine Mandate**

15. On August 3, 2021, Tyson announced via news release that it would require all "team members at U.S. office locations to be fully vaccinated by October 1, 2021. All other team members are required to be fully vaccinated by November 1, 2021."[4] *Exhibit A.*

16.  Tyson informed employees on October 8, 2021, via an email sent by Defendant Rhonda Gooch, that to comply with the mandate, employees have until Oct. 18 to get the Johnson & Johnson vaccine to reach fully vaccinated status by the Nov. 1 deadline, as the time

---

[3] *Ibid.*

[4] Tyson Foods, *Tyson Foods to Require COVID-19 Vaccination for its U.S. Workforce* (Aug. 3, 2021) available at https://www.tysonfoods.com/news/news-releases/2021/8/tyson-foods-require-covid-19-vaccinations-its-us-workforce (last visited Sept. 27, 2021).

had already passed to receive either of the two mRNA vaccines (Pfizer or Moderna). *Exhibit B; Exhibit C.*

17. Tyson stated that it would provide an opportunity to seek exceptions to the vaccination mandate for workers who seek medical or religious accommodation.

18. To seek a religious or medical exemption, Tyson required employees to fill out an official form and submit it to the Human Resources department. Employees could also send a religious or medical accommodation letter to the Human Resources department as well as to the plant managers.

19. For those employees who sought religious or medical exemptions, Tyson offered as an accommodation up to one year of unpaid leave of absence. *Exhibit B.*

20. Employees were informed that if they remained unvaccinated after the one year of unpaid leave was complete, they would effectively be terminated from their position at Tyson. *Exhibit A; Exhibit B;* and *Exhibit C.* Although employees could technically return if they became fully vaccinated within one year, Tyson made clear that there was no guarantee that their positions would remain available. *Ibid.* Such an inadequate accommodation is tantamount to termination of employment.

21. Therefore, if employees were not vaccinated by October 18, 2021, they would face termination, either immediately or via unpaid leave of absence, regardless of their religious or medical exemption status. This deadline has now passed, and any unvaccinated employees will face adverse employment action following Tyson's November 1, 2021 deadline.

22. Tyson's mandate is uncompromisingly harsh. Tyson provides no alternative for remote work, periodic testing, mask wearing, social distancing, or exemptions for employees

who have recovered from COVID-19 and have natural immunity, even though Tyson successfully protected its employees and reduced the spread of COVID-19 using many of these measures for over 18 months.

23. Tyson has exercised substantial authoritarianism, pressure, and coercion against employees to enforce its unlawful vaccine mandate, at the expense of employees' personal autonomy, medical freedoms, and sincere religious beliefs.

C.   **Plaintiff Mrs. Johnson's exemption request**

24. Mrs. Johnson objects to the COVID-19 vaccine mandate on religious grounds and has sought a religious exemption from Tyson's mandate. She has worked at Tyson Foods, Inc. for 23 years and is now facing termination because of Tyson's vaccination requirement.

25. Unless enjoined, Tyson's discriminatory and retaliatory actions will cause Mrs. Johnson various harms, including a substantial loss of income and loss of professional advancement opportunities, not to mention the loss of a substantial twenty-three-year career at Tyson.

D.   **COVID-19 Vaccines Violate Plaintiffs' Religious Beliefs**

26. Presently, all COVID-19 vaccines (Pfizer, Moderna, and Johnson & Johnson) use, either in production or testing, of fetal cell lines developed from tissues originally derived from aborted fetuses (see excerpt below).[5]

---

[5] *See,* Los Angeles County Public Health, *COVID-19 Vaccine and Fetal Cell Lines,* http://publichealth.lacounty.gov/media/Coronavirus/docs/vaccine/VaccineDevelopment_FetalCellLines.pdf (last accessed August 26, 2021)



In various stages of vaccine development and manufacturing, some of the COVID-19 vaccines used cells originally isolated from fetal tissue (often referred to as fetal cells), some of which were originally derived from an aborted fetus. The use of fetal cell lines is a very sensitive and important topic within some faith communities and among individuals with concerns about the ethics of using materials derived in this way.

27. Johnson & Johnson vaccines used fetal cell cultures, specifically PER.C6, a retinal cell line that was isolated from a terminated fetus in 1985.[6]

28. As for the EUA-Pfizer and Moderna COVID-19 vaccines, fetal cell line HEK 293 was used during the research and development phase.[7] All HEK 293 cells are descended from tissue taken in 1973 from either an elective abortion or miscarriage[8] that took place in the Netherlands.[9]

E. **Natural Immunity is Durable, Lasting, and Superior to Vaccination**

29. There is strong evidence that individuals who have been infected with SARS-CoV-2 and recovered are protected from future reinfection for over a year, and potentially have lifelong immunity - unlike vaccinated persons for whom boosters are already being

---

[6] *Are the vaccines made with fetal cells*, Institute for Clinical Systems Improvement, https://www.icsi.org/covid-19-vaccine-faq/are-the-mrna-vaccines-made-with-fetal-cells/ (last accessed August 26, 2021), see also, Tennessee Department of Health, *Fact v. Fiction: Johnson & Johnson Vaccine* (2021) available at https://covid19.tn.gov/stay-informed/blogs/fact-v-fiction-johnson-johnson-vaccine/ (last visited Sept. 27, 2021) (acknowledging the Johnson & Johnson vaccine was developed from a fetal cell line).
[7] *See*, Nebraska Medicine, *You asked, we answered: Do the COVID-19 vaccines contain aborted fetal cells?*, https://www.nebraskamed.com/COVID/you-asked-we-answered-do-the-covid-19-vaccines-contain-aborted-fetal-cells, (last visited on Aug. 26, 2021).
[8] *COVID-19 Vaccine and Fetal Cell Lines.*
[9] *Ibid.*

recommended and administered.[10] However, Tyson has wholly disregarded the relevance and benefits of natural immunity.

30. Natural immunity includes antibodies, B-cells, plasma cells, T-helper cells, T-presenting cells, natural killer cells, and a host of innate defenses against the virus.

31. Epidemiological studies demonstrate that natural immunity provides robust and durable protection against reinfection at levels equal to or better than the most effective vaccines available.[11] It provides protection against all variations of SARS-CoV-2.

32. Therefore, it is medically unnecessary for persons who have recovered from COVID-19 and present evidence of natural immunity to receive a COVID-19 vaccine.

F.   **Tennessee Civil Rights Laws Prohibit Religious and Disability Discrimination**

33. Tennessee's anti-discrimination laws, the Tennessee Human Rights Act ("THRA") and Tennessee Disability Act ("TDA") mirror Title VII of the federal Civil Rights Act and the federal Americans with Disabilities Act.

34. Tennessee's anti-discrimination statutes forbid Tyson from discriminating and retaliating against employees based on their religious beliefs or medical conditions. Tenn. Code. Ann. § 4-21-401; Tenn. Code. Ann. § 8-50-103.

---

[10] *See*, Yair Goldberg; Micha Mandel, et al., *Protection of previous SARS-CoV-2 infection is similar to that of BNT162b2 vaccine protection: A three month nationwide experience from Israel*, medRxiv (April 20, 2021) available at https://www.medrxiv.org/content/10.1101/2021.04.20.21255670v1 (last visited on Aug. 26, 2021); *See*, also Jackson S. Turner; Wooseob Kim, et al., *SARS-CoV-2 infection induces long-lived bone marrow plasma cells in humans*, Nature 595 (pp. 421-425) (May 24, 2021).

[11] *See, e.g.* N. Kojima; A. Roshani, et al., *Incidence of Severe Acute Respiratory Syndrome Coronavirus-2 Infection among previously infected or vaccinated employees*, medRxiv (July 3, 2021) available at https://www.medrxiv.org/content/10.1101/2021.07.03.21259976v2 (last visited on Aug. 26, 2021).

35. The THRA is a "comprehensive anti-discrimination statute," enacted to "[s]afeguard all
individuals within the state from discrimination because of race, creed, color, religion,
sex, age or national origin in connection with employment." Tenn. Code. Ann. § 4-21-
101(a)(3); *Phillips v. Interstate Hotels Corp. No. L07*, 974 S.W.2d 680, 683 (Tenn.
1998). The THRA forbids an employer from engaging in a discriminatory practice with
respect to the compensation, terms, conditions, privileges or employment based on these
characteristics. Tenn. Code. Ann. § 4-21-401(a)(1); *Goree v. United Parcel Serv., Inc.*,
490 S.W.3d 413, 426 (Tenn. Ct. App. 2015).

36. Tenn. Code. Ann. § 4-21-401(a)(1)-(2) of the Tennessee Human Rights Act ("THRA")
states that "it is a discriminatory practice for an employer to . . . discharge any person or
otherwise discriminate against an individual with respect to compensation, terms,
conditions, or privileges of employment because of such individual's ... religion, ...; or
limit, segregate or classify an employee or applicants for employment in any way that
would deprive or tend to deprive an individual of employment opportunities or otherwise
adversely affect the status of an employee, because of . . . religion."

37. Under the THRA: "any person injured by any act in violation of the" THRA may forgo
the administrative process and file a "civil action in chancery court or circuit court."
*Sneed v. City of Red Bank*, 459 S.W.3d 17, 27 (Tenn. 2014) [quoting in part Tenn. Code.
Ann. § 4-2-311(a)]; *see also*, *Moore v. Nashville Elec. Power Bd.*, 72 S.W.3d 643, 649
(Tenn. Ct. App. 2001) [citing *Hoge v. Roy H. Park Broadcasting of Tenn., Inc.*, 673
S.W.3d 157, 158 (Tenn. Ct. App. 1984)].

38. Ultimately, a claim brought under the THRA is analyzed in the same manner as claims
brought under Title VII of the Civil Rights Act of 1964. *Tero v. Elliot Popham Pontiac,*

*Olsmoblie, Buck & GMC Trucks, Inc.*, 173 F.3d 988, 933 (6th Cir. 1999) [citing *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996)]; *Ferguson v. Middle Tenn. State Univ.*, 451 S.W.3d 375, 381 (Tenn. 2014) ["Generally, we interpret the THRA similarly, if not identically, to Title VII, but we are not obligated to follow and we are not limited by federal law when interpreting the THRA."].

39. The stated purpose and intent of the THRA is to provide for execution within Tennessee of the policies embodied in the federal civil rights laws. *Campbell v. Fla. Steel Corp.* 919 S.W.2d 26, 31 (Tenn. 1996).

40. Consequently, in construing and applying the THRA, decisions of federal courts addressing similar issues under Title VII (Americans with Disabilities Act) are helpful and potentially persuasive authority. *Spann v. Abraham*, 36 S.W.3d 452, 463 (Tenn. Ct. App. 1999) ["Tennessee courts may appropriately look to decisions of federal courts construing Title VII when analyzing claims under the Act"].

41. Tennessee has long recognized the importance of protecting the freedom of conscience. Article I, Section 3 of the Tennessee Constitution makes clear "that all men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience; . . . that no human authority can, in any case whatever, control or interfere with the rights of conscience."

42. "The Tennessee Supreme court has characterized this section [of the Tennessee Constitution] as 'practically synonymous' with the clauses of the First Amendment" of the United States Constitution. *Tenn. Dep't of Human Servs. v. Priest Lake Cmty. Baptist Church*, No. M2006-00302-COA-R3-CV, 2007 Tenn. App. LEXIS 391 (Ct. App. June 25, 2007) [citing *Carden v. Bland*, 199 Tenn. 655, 672, 288 S.W.2d 718, 721 (1956)];

10

*State ex rel. Comm'r of Transp. v. Medicine Bird Black Bear White Eagle*, 63 S.W.3d 734, 761 (Tenn. Ct. App. 2001)).

43. "Our constitutions place the freedom of belief beyond government control or interference so that the freedom to believe is absolute and inviolate." *Medicine Bird*, 63 S.W.3d at 762. "It [also] includes the right to act, or to refrain from acting, in a manner inconsistent with one's religious beliefs." *Ibid*. While "the freedom to act is subject to reasonable control for the protection of others," here Plaintiffs' failure to act, in the form of refusing to receive a COVID-19 vaccine, on religious grounds, is protected by the Tennessee Constitution. *Wolf v. Sundquist*, 955 S.W.2d 626, 630 (Tenn. Ct. App. 1997).

44. The analysis of a religious accommodation claim begins with whether an employee has established a prima facie case of religious discrimination. *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007) [quoting *Smith v. Pyro Minning Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987)]; Tenn. Code Ann. sec. 4-21-311(e) et seq.

45. To prevail on a claim of religious discrimination under the THRA, a plaintiff must present either direct evidence of discrimination or make a prima facie case of indireect discrimination. *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007) ("*Tepper*"). Where the discrimination claim is based on circumstantial evidence, a burden-shifting framework is used, as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973). This framework generally requires a the following elements relating to the plaintiff: "(1) is a member of a protected group; (2) was subjected to an adverse employment action; (3) was qualified for the position; and (4) was treated less favorably than similarly-situated nonprotected employees." *Ibid*. "If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to offer evidence of a

legitimate, nondiscriminatory reason for its adverse action." *Tepper, supra,* 505 F.3d at 515.

46. The THRA states that an "employer" cannot discriminate on the basis of religion, defining an employer as "the state, any political or civil subdivision thereof, and persons employing with (8) or more persons within the state, or any person acting s an agent of an employer, directly or indirectly." Tenn. Code Ann. sec. 4 21-102(5).

47. The statutory definition imposes upon an employer the duty to make reasonable accommodations for religious observances short of incurring an undue hardship. *Reed v. UAW*, 569 F.3d 576, 579 (6th Cir. 2009) [citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977)].

48. To establish a claim on a failure to accommodate an employee's religious beliefs under the THRA, the employee must demonstrate that: (1) the employee holds a sincere religious belief that conflicts with an employment requirement; (2) the employee informed the employer of the conflict; and (3) the employee was discharged or disciplined for failing to comply with the conflicting employment requirement. *Burdette v. Fed. Express Corp. Burdette v. Fed. Express Corp.,* 367 F. App'x 628 (6th Cir. 2010) [citing *Tepper, supra,* 505 F.3d at 514].

49. The Tennessee Disability Act ("TDA") prohibits employment practices that discriminate on the basis of physical, mental, or visual disability. Tenn. Code. Ann. § 8-50-103.Specifically, under the TDA, an employer may not discriminate against a "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other

terms, conditions and privileges of employment. *Bolden v. Lowes Home Ctrs.*, LLC, 783 Fed. App'x. 589, 599 (6th Cir. 2019).

50. Tennessee Code § 8-50-103(b) prohibits "discrimination in the hiring, firing, and other terms and conditions of employment of the state of Tennessee or any department, agency, institution or political subdivision of the state, or of any private employer, against any applicant for employment based solely upon any physical, mental or visual disability of the applicant, unless such disability to some degree prevents the applicant from performing the duties required by the employment sought or impairs the performance of the work involved."

51.  To succeed on a claim under the TDA, a plaintiff must show "(1) that the individual was qualified for the position; (2) that the individual was disabled; and (3) that the individual suffered an adverse employment action because of that disability." *Jones v. Sharp Elecs. Corp.*, No. W2013-01817-COA-R3-CV, 2014 Tenn. App. LEXIS 107 (Ct. App. Feb. 28, 2014).

52. Although the TDA does not define "disabled," the definition stated in the THRA is applicable to TDA claims. The THRA defines disability with respect to a person as: (i) a physical or mental impairment that substantially limits one (1) or more of such person's major life activities; (ii) a record of having such an impairment; or (iii) being regarded as having such an impairment. Tenn. Code Ann. § 4-21-102(3)(A).

53. A claim brought under the Tennessee Disability Act is also analyzed under the same principles as the federal Americans with Disabilities Act (ADA). *Bolden* at 599 (citing *Cardenas-Meade v. Pfizer, Inc.*, 510 F. App'x 367, 369 n.2 (6th Cir. 2013)). Under the ADA, an individual has a protected disability if he or she either has a "physical or mental

impairment that substantially limits one or more major life activities …" (ADA Act, §

12102(1)(A)), or is: "being regarded as having such an impairment []." (*Id.*, at

subparagraph (C)). Under section 12102(3)(A) of the ADA Act: "An individual meets the

requirement of 'being regarded as having such an impairment', if the individual

establishes that he or she has been subjected to an action prohibited [by the ADA]

because of an actual or perceived physical or mental impairment whether or not the

impairment substantially limits, or is perceived to substantially limit, a major life

activity." (See also, 28 Code of Federal Regulations ("C.F.R.") §§ 35.108(f)(1) and

36.105(f)(1).)

## COUNT I: VIOLATION OF THE TENNESSEE HUMAN RIGHTS ACT
## RELIGIOUS DISCRIMINATION

54. Plaintiff hereby incorporates by reference the allegations contained in the preceding

    paragraphs as if fully set forth herein.

55. Plaintiff Robbie Johnson holds sincere religious beliefs that precludes her from receiving

    a COVID-19 vaccine.

56.  The State of Tennessee has expressly committed to the principle of fair and equal

    employment opportunities for its citizens, regarding religious accommodations, defining

    a protected religious practice or belief as follows: "Religious beliefs are not only those

    beliefs held by traditional, organized religions, but also include moral or ethical beliefs as

    to what is right or wrong which are sincerely held with the strength of traditional

    religious views."[12]

---

[12] *See*, Religious Accommodation Guidelines, available at
https://www.tn.gov/content/dam/tn/hr/documents/Religion_Accommodation_Guidelines.pdf

57. As the Supreme Court has recognized, an employee's "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas v. Red. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981); *See also*, *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).

58. While there may be some who consider COVID-19 vaccines to be acceptable, no employer in Tennessee, public or private, is permitted to decide for itself whose religious beliefs are valid, and whose are not.

59. Once an employee has articulated his or her sincerely held religious objections to acceptance or receipt of the currently available COVID-19 vaccines, the proper inquiry is thus at its end as to that element.

60. Mrs. Johnson informed Tyson of her beliefs and requested religious accommodations from Tyson's vaccine mandate.

61. Mrs. Johnson now faces termination and disciplinary action for failing to comply with Tyson's vaccination requirements, which directly conflicts with her sincere religious beliefs.

62. Tyson's draconian COVID-19 mandate discriminates against employees who do not wish to receive the vaccine on religious grounds.

63. Tyson's only accommodations provided for employees who sought religious exemptions is one year of unpaid leave, with no guarantee of a position if they comply with the mandate within that year. Noncompliant employees such as Mrs. Johnson, who do not receive a COVID-19 vaccine at the end of the leave of absence period are promised

15

nothing short of termination. This is no reasonable accommodation at all, but rather a punitive measure taken against employees who choose to exercise their religious rights.

64. As a result of Tyson's draconian vaccine mandate, most employees will be forced to seek alternative employment during that year and those that refuse the vaccination on religious grounds are unlikely to comply with the mandate within the year due to their religious beliefs, and thus will effectively be terminated.

65. Tyson's failure to provide reasonable religious accommodations has injured and will continue to injure Mrs. Johnson, by discriminatorily denying her income and terminating her livelihood.

66. Because Mrs. Johnson will establish a prima facie showing of discrimination and failure to reasonably accommodate, the burden shifts to the Tyson defendants to demonstrate that they could not accommodate Mrs. Johnson's religious needs without undue hardship. *Tepper, supra,* 505 F.3d at 514.

67. The Tyson defendants cannot show undue hardship in this case. Granting other accommodations, such as scheduled testing, masking, social distancing, etc., to employees would not impose an undue hardship. Indeed, the Tyson defendants have implemented these safeguards for more than 18 months. Accommodating employees who refuse to take a COVID-19 vaccine on religious grounds using these methods would merely result in a continuation of practices that have already been successfully implemented at Tyson.

68. By *only* offering a Faustian choice, vaccination or termination, the Tyson defendants have afforded Mrs. Johnson essentially no accommodation at all.

16

69. By failing to provide any of these other alternatives, Tyson has failed to consider any reasonable accommodations to Mrs. Johnson.

70. As such, the Tyson defendants have and continue to discriminate against Mrs. Johnson based on her sincerely held religious beliefs, failed to provide a reasonable accommodation for her religious exemption, and therefore, violated the Tennessee Human Rights Act.

## COUNT II: VIOLATION OF TENNESSEE DISABILITY MEDICAL DISCRIMINATION

71. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

72. Mrs. Johnson was qualified for her position at Tyson, and successfully performed it over twenty-three-year career with the company.

73. Tyson's vaccine mandate discriminates against Mrs. Johnson because it treats her as though she is medically disabled. This is based upon the Tyson defendants' erroneous belief that Mrs. Johnson lacks immunity to COVID-19. Yet, the medical evidence set forth herein demonstrates that immunity gained from previous COVID-19 infection is equal to or superior to the protection offered by vaccination.

74. Mrs. Johnson has been infected with SAR-CoV-2 and has successfully recovered, thus likely providing her with natural immunity that is stronger and more robust than vaccine-induced immunity.

75. Therefore, the Tyson defendants have engaged in unlawful discrimination in violation of the TDA, by regarding Mrs. Johnson as having a physical impairment that disqualifies

17

her from performing her job, and who can only be allowed in the workplace if she takes the COVID-19 vaccine.

76. Because of Tyson's company policy and inherent discrimination on the basis of disability, Mrs. Johnson will face adverse employment action in the form of termination, either actual or constructive, on November 1, 2021.

77. The Tyson defendants discriminated against Mrs. Johnson by categorizing her as disabled because of her choice not to take the COVID-19 experimental vaccine, and subsequently taking adverse employment action against her as a result. The lack of regard for Mrs. Johnson's medical autonomy and the evidence regarding the success of natural immunity versus vaccine-induced immunity resulted in blatant discrimination against her.

78. Tyson's COVID-19 vaccine mandate has harmed and continues to harm Mrs. Johnson. Such injury includes, but is not limited to, coercion and harassment to take an untested and potentially unsafe substance, and threats to her employment, income, livelihood and twenty-three-year career, on the basis of disability.

## COUNT III: ASSAULT

79. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

80. Under Tennessee state law, a person commits assault who "intentionally or knowingly causes another to reasonably fear imminent bodily injury." Tenn. Code § 39-13-101(a)(2).

81. The Tyson defendants have intentionally threatened intentional harmful and offensive contact against Mrs. Johnson, by mandating that she receive a COVID-19 vaccine.

18

82. Furthermore, Defendant Ronda Gooch has facilitated this threat as Human Resources manager by communicating to employees that they will suffer punitive measures and dismissal if they fail to receive the vaccine.

83. Tyson's COVID-19 vaccine mandate caused Mrs. Johnson to reasonably fear imminent bodily injury from being forced to inject an experimental, untested, and potentially unsafe substance into her body, under penalty of termination from employment for failure to comply.

84. Tyson's vaccine mandate has and continues to cause Mrs. Johnson harm, including but not limited to by way of fear, anxiety, fright over being threatened with the injection of an untested and potentially unsafe substance into the body, and the imminent loss of her income and livelihood.

85. The Tyson defendants' conduct alleged herein was a substantial factor in causing Mrs. Johnson's harm.

///

///

19

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

a. For an order issuing emergency injunctive relief enjoining the defendants Tyson and Ronda Gooch, their officers, agents, servants, employees, attorneys, successors, and all persons in active concert or participation with them, from terminating or placing on unpaid leave of absence any employee who has sought an exemption and accommodation from Tyson's vaccine mandate on a religious basis, or discriminating against the plaintiff by refusing to grant reasonable religious or health accommodations to its COVID-19 vaccination mandate;

b. Grant any such further relief as the Court deems necessary and proper in the public interest.

DATED: October 19, 2021

Respectfully submitted,

Robert E. Barnes, Esq.
Tennessee BPR No. 020617
BARNES LAW
700 South Flower Street, Suite 1000
Los Angeles, California 90017
Telephone: (310) 510-6211
Facsimile: (310) 510-6225
Email: robertbarnes@barneslawllp.com

# EXHIBIT A

 Tyson

Home  |  News  |  News Releases

Share   

August 03, 2021

# Tyson Foods to Require COVID-19 Vaccinations for its U.S. Workforce

LEER COMUNICADO EN ESPANOL

### Company also providing $200 to fully vaccinated frontline team members

**Springdale, Ark. – August 3, 2021 –** To protect team members, their families and their communities, Tyson Foods (NYSE: TSN), is requiring its team members at U.S. office locations to be fully vaccinated by October 1, 2021. All other team members are required to be fully vaccinated by November 1, 2021, subject to ongoing discussions with locations represented by unions.

This action makes Tyson Foods the largest U.S. food company to require COVID-19 vaccinations for its entire workforce. Almost half of Tyson Foods' U.S. workforce has been vaccinated and coronavirus infection rates among team members remain low.

"Getting vaccinated against COVID-19 is the single most effective thing we can do to protect our team members, their families and their communities," said Dr. Claudia Coplein, Chief Medical Officer, Tyson Foods. "With rapidly rising COVID-19 case counts of contagious, dangerous variants leading to increasing rates of severe illness and hospitalization among the U.S. unvaccinated population, this is the right time to take the next step to ensure a fully vaccinated workforce."

A memo to Tyson Foods team members from President & CEO Donnie King can be found here.

Since February, Tyson Foods has hosted more than 100 vaccination events for team members across the country and more than 56,000 U.S. team members have been vaccinated so far. Additional onsite vaccination events will be scheduled, and the company will continue to collaborate with local health departments and healthcare providers to make the vaccine more accessible.

To support efforts to fully vaccinate all team members, the company will also provide $200 to its frontline team members, subject to ongoing discussions with locations represented by unions.  This is an expansion of the company's existing policy of compensating workers for up to four hours of regular pay if they are vaccinated outside of their normal shift or through an external source.

Exceptions to the vaccination mandate will involve workers who seek medical or religious accommodation.

"Tyson Foods and Matrix Medical have worked together since the beginning of this pandemic to develop and implement strategies to mitigate the risk of the virus to Tyson employees and their families, as well as the communities where they live and work," said Matrix Chief Medical Officer and Group President, Daniel Castillo, M.D., M.B.A. "Matrix clinicians and Tyson team members have worked hand-in-hand to implement a broad array of

Your privacy is important to us. This website uses cookies to ensure you get the best experience on this website. To learn more about how to control your cookies, the categories of personal information we collect on this website, and how we use that information, please visit our privacy policy.

Learn More        Accept

9/30/21, 2:08 PM
Tyson Foods to Require COVID-19 Vaccinations for its U.S. Workforce | Tyson Foods
Case 1:21-cv-01161-STA-jay   Document 1-1   Filed 10/20/21   Page 25 of 69   PageID 35

 Tyson

broad portfolio of products and brands like *Tyson*®, *Jimmy Dean*®, *Hillshire Farm*®, *Ball Park*®, *Wright*®, *Aidells*®, *ibp*®, and *State Fair*®. Tyson Foods innovates continually to make protein more sustainable, tailor food for everywhere it's available and raise the world's expectations for how much good food can do. Headquartered in Springdale, Arkansas, the company has 139,000 team members. Through its Core Values, Tyson Foods strives to operate with integrity, create value for its shareholders, customers, communities and team members and serve as a steward of the animals, land and environment entrusted to it.

Visit **TYSONFOODS.COM** to learn more.

#### 

Contact: **Derek Burleson**, 479-290-6466

LEER COMUNICADO EN ESPANOL

Share     

Who We Are

Innovation

Our Brands

Sustainability

Careers

Investors

News

Contact Us

Copyright 2021 Tyson Foods, Inc.

Privacy Policy | Terms of Use | Legal | CTSCA | Do Not Sell My Personal Information

Your privacy is important to us. This website uses cookies to ensure you get the best experience on this website. To learn more about how to control your cookies, the categories of personal information we collect on this website, and how we use that information, please visit our privacy policy.

Learn More      Accept

EXHIBIT B

## Explanation of Leave + Accommodation

Leave + as an accommodation provides team members who cannot reasonably work from home, either because of travel requirements or the nature of their job, the opportunity to remain employed by Tyson with access to certain benefits that come with a Leave of Absence.

Leave + also maintains the employment connection while Tyson determines whether there is a testing-based accommodation that eliminates or substantially mitigates the risk of COVID-19 to team members **and** can be reasonably implemented to allow a particular team member to return to the worksite. If Tyson is able to identify a such a testing protocol you will be notified, expected to return to work to participate in the testing regimen, and the leave of absence will end. If Tyson is unable to identify a testing protocol that eliminates or substantially mitigates the risk to team members posed by COVID-19, the team member will remain on an unpaid, leave of absence that is not job protected, in accordance with the terms and conditions of the Tyson Leave of Absence Policy.

Leave + also maintains the employment relationship while the medical profession works on new ways to attack the virus and end the pandemic. The primary motivation for the vaccine requirement is the safety of Tyson team members and getting vaccinated is the single most effective thing a team member can do to protect themselves and other team members from the dangers associated with COVID-19. However, where a team member cannot be vaccinated due to a disability or due to a sincerely held religious belief, and no other accommodation is available, Leave + provides some support for Tyson team members as Tyson, and the world at large, search for other ways to keep everyone safe.

REMINDER: Please verify your vaccination status

# Please verify your vaccination status

**JOHANNA SÖDERSTRÖM, EVP & CHIEF HUMAN RESOURCES OFFICER**
**FOR: ALL WIRED U.S.-BASED TEAM MEMBERS**

Getting vaccinated against COVID-19 is the single most effective thing we can do to protect our team members, our families, and our communities. There is nothing more important to us than your health and safety. This is why, with new COVID-19 variants spreading and a steady rise in cases across the U.S. among those who are unvaccinated, Tyson Foods is requiring all U.S. team members to be fully vaccinated.

All office and virtually based U.S. team members must be fully vaccinated by October 1, 2021, and all other U.S.-based team members by November 1, 2021.

Today, we have over 70,000 team members who have either been fully

vaccinated or started the vaccination process. Thank you! We have created a new vaccination site where you can quickly review or update your vaccination status. You can also confidentially submit your vaccination card, request an accommodation, get help scheduling an appointment, or update your profile to let us know if you don't plan to get vaccinated. Please visit the site to make sure your information is accurate and, if needed, request any changes by Wednesday, August 25, 2021.

We realize there is a lot of misinformation out there about the safety and efficacy of the vaccine that may raise concerns or make you question what to believe. The vaccine is safe and the most effective way to protect you against severe illness and death. The vaccine is also free. It is important that you have the right information and get your questions answered, so you can make a decision that is right for you. If you have questions or concerns, please review our FAQs or reach out to your HR partner, on-site medical staff, or other medical professionals.

A reminder that the vaccination process can take up to six weeks to complete. If you work in an office or virtually, in order to meet the October 1 deadline to be fully vaccinated, you need to begin the process immediately. This gives you time to receive two doses and allow for the two weeks it takes, after your final dose, to be considered fully vaccinated. All U.S.-based team members who need to meet the Nov. 1 deadline should also begin the vaccination process as

2

soon as possible.

We appreciate every Tyson team member and your dedication to our company.

Our priority is your health and safety, and to ensure Tyson Foods is a safe place to work — for everyone.

Thank you for helping to protect yourself, your families, your team members and our communities.

Be safe,

Johanna

This email and any files transmitted with it are confidential and intended solely for the use of the addressee. If you are not the intended addressee, then you have received this email in error and any use, dissemination, forwarding, printing, or copying of this email is strictly prohibited. Please notify us immediately of your unintended receipt by reply and then delete this email and your reply. Tyson Foods, Inc. and its subsidiaries and affiliates will not be held liable to any person resulting from the unintended or unauthorized use of any information contained in this email or as a result of any additions or deletions of information originally contained in this email.

3

# An extra $2,500 in your pocket is as easy as verifying vaccination!

Nothing is more important that your health and safety.
Vaccination is the most effective thing we can do to protect ourselves, our families and fellow team members against COVID-19 and the growing number of variants that threaten our health and safety.



Simply verify that you've received your first COVID-19 vaccination shot with the Plant Nurse and be entered to win $2,500!

WEEKLY RAFFLES will be held from Friday, 8/27 - Friday, 9/24.



Bring your proof of vaccination to Occupational Health Services today!

# EXHIBIT C



**Tyson**

September 30, 2021

Dear Team Member:

On Tuesday, Aug. 3, 2021, Tyson Foods announced that all team members must be fully vaccinated by Nov. 1, 2021.

Records show you have not submitted a vaccination card, made a request for an accommodation or indicated a decision to not pursue vaccination. Please speak with your HR partner or location nurse to indicate your plans as soon as possible.

The time has now passed to receive either of the two mRNA vaccines (Pfizer or Moderna) to be fully vaccinated by Nov. 1. You have until Oct. 18 to get the Johnson & Johnson vaccine to reach fully vaccinated status by the Nov. 1 deadline. With the exception of an approved accommodation, failure of a team member to be fully vaccinated by Nov. 1, 2021 will result in termination from Tyson.

Whatever you decide to do, we respect your choice. If you have questions or need additional information, please speak with your manager, HR partner, or talk to your location nurse.

Regards,

Tyson Foods Human Resources

Tyson Foods   2200 W. Don Tyson Parkway   Springdale, Arkansas 72762
[Click here and type 1-800 number]   [Click here and type phone number]   Fax: [Click here and type fax number]

IN THE CHANCERY COURT FOR DYER COUNTY
TWENTY-NINTH JUDICIAL DISTRICT
THE STATE OF TENNESSEE

| | | |
|---|---|---|
| ROBBIE JOHNSON, | ) | **PLAINTIFF'S *EX PARTE* APPLICATION FOR RESTRAINING ORDER** [*Tenn. R. Civ. P.*, Rule 65.03] |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TYSON FOODS, INC., and | ) | |
| RONDA GOOCH, Human Resources | ) | |
| Manager of Tyson Foods | ) | |
| | ) | |
| *Defendant.* | ) | |
| _____ | ) | |

AM_____ PM_____
_____#_____

OCT 19 2021

H. STEVEN WALKER
CHANCERY CLERK_____DC

## PLAINTIFF'S *EX PARTE* REQUEST FOR A RESTRAINING ORDER ENJOINING TYSON FOODS, INC.'S COVID-19 VACCINE MANDATE DEADLINE AND EMPLOYEE TERMINATION DEADLINE OF NOVEMBER 1, 2021

TO THE HONORABLE DYER COUNTY CHANCERY COURT CHANCELLOR TONY A. CHILDRESS:

PLEASE TAKE NOTICE Plaintiff Robbie Johnson ("Plaintiff") applies to this Court, upon an *ex parte* basis, for an order granting a restraining order pursuant to Tennessee Rules of Civil Procedure ("*Tenn. R. Civ. P.*"), Rule 65.03, enjoining defendants Tyson Foods, Inc. and Ronda Gooch, from terminating, placing on leave or otherwise taking adverse employment action against employees for their failure to submit COVID-19 vaccination by November 1, 2021. This Application requests this Court to order no more than a preservation of the status quo ante, until this Court can rule on the substantive merits of a preliminary injunction request that can be scheduled with sufficient time for the defendants to meaningfully respond and the court to meritoriously address.

1

## TABLE OF CONTENTS

INTRODUCTION...................................................................................... 5

FACTS....................................................................................................... 7

    I.    Employees' Faustian Choice - Lose Your Liberty or Lose Your Job........... 7

    II.    Tyson's Religious Accommodation - Constructive Termination................. 8

    III.    Tyson's Medical Accommodation - Constructive Termination................ 9

LEGAL STANDARD.............................................................................. 11

ARGUMENT AND AUTHORITIES....................................................... 13

    I.    Plaintiff Enjoys a Substantial Likelihood of Success on the Merits........... 13

        A.  *Defendants have Violated the Tennessee Human Rights Act by Discriminating Against Employees of the Basis of Religion and failing to provide reasonable accommodation* .............................................. 13

        B.  *Defendants have Violated the Tennessee Disability Act by Discriminating Against Employees Based on Their Personal Medical Decisions*.......................................................................... 16

        C.  *Defendants have Committed Assault Against Plaintiffs by Threatening Harmful and Offensive Contact Through its COVID-19 Vaccine Mandate*.......................................................................... 19

    II.    Plaintiff Will Suffer Immediate and Irreparable Injury, Loss, or Damage as a Result of Defendants' COVID-19 Vaccination Mandate If a Restraining Order is not Issued............................................................................. 20

    III.    The Injury and Harm to Plaintiff Outweighs the Injury and Harm to the Defendants............................................................ 20

    IV.    A Restraining Order is in the Public Interest........................... 22

    V.    Providing notice to Defendants is impracticable and should not be required given the immediacy of Tyson's implemented vaccination deadline........... 22

CONCLUSION...................................................................................... 23

## TABLE OF AUTHORITIES

**STATUTES:**

28 C.F.R. § 35.108(f)(1) ............................................................................ 19

28 C.F.R § 36.105(f)(1) ............................................................................ 19

ADA § 12102 ....................................................................................... 18

Article I, Section 2 Tenn. Const. ............................................................... 6

Tenn. Code Ann. § 4-21-102........................................................................ 18

Tenn. Code. Ann. § 4-21-401....................................................................... 14

Tenn. Code. § 39-13-101............................................................................ 20

Tenn. Code § 8-50-103.............................................................................. 17

Tenn. R. Civ. P. 65.03............................................................................... 13

**CASES:**

*Bolden v. Lowes Home Ctrs. LLC*, 783 Fed. App'x 589, 599 (6th Cir. 2019)....................... 18

*Burdette v. Fed. Express Corp.* 367 F. App'x 628 (6th Cir. 2010)................................... 15

*Cardenas-Meade v. Pfizer, Inc.*, 510 F. App'x 367, 369 n.2 (6th Cir. 2013)........................ 18

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520, 531 (1993)............................................................................ 16

*Jones v. Sharp Elecs. Corp.*, No. W2013-01817-COA-R3-CV, 2014
Tenn. App. LEXIS 107 (Ct. App. Feb. 28, 2014)...................................................... 18

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973)................................... 14

*Reed v. UAW*, 569 F.3d 576, 579 (6th Cir. 2009)..................................................... 15

*Rezult Group v. Hoskins*, 2019 Tenn. Cir. LEXIS 158................................................ 13

*S. Cent. Tenn. R.R. Auth. v. Harakas*, 44 S.W.3d 912 (Tenn. Ct. App.
2000)................................................................................................ 13

*Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007)........................................... 14, 15, 16

*Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981)............................... 16

*Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 75 (1977)...................................... 15

*///*

*///*

## INTRODUCTION

Article I, Section 2 of the Tennessee Constitution provides that: "government being instituted for the common benefit, the doctrine of nonresistance against arbitrary power and oppression is absurd, slavish, and destructive of the good and happiness of mankind."

This case strikes at the core of human rights in a free society. At issue is whether an employer can mandate a medical procedure without providing reasonable exemptions to its employees who, for lawful reasons, object to the medical procedure. In a free society, the answer is surely no, employers must recognize their employees' rights and make *reasonable* accommodations.

When the COVID-19 crisis began, perhaps not enough was known about the virus to second-guess employers who implemented harsh, one-size-fits-all mandates to combat the spread. But as more becomes known about the virus and alternative ways to respond to it, the failure to provide reasonable accommodations cannot survive judicial scrutiny. Simply put, when core human rights are at stake, courts cannot automatically defer to the judgments of multinational corporations. When properly called upon, like in the case at hand, the judicial branch must not shrink from its duty to require that a company's anti-virus mandates comply with the laws of this state, no matter the emergency. If we tolerate unlawful mandates during an emergency, whether out of expediency or fear, we abandon our rights at the moment we need them the most.

After some eight months without a vaccine mandate, Tyson abruptly changed course and announced it would impose a company-wide COVID-19 vaccine mandate on all employees, with the promise of termination for non-compliance. This is despite the fact that Tyson had, for many

months, provided employees with vaccine alternatives, such as, temperature, masks, distancing, self-isolation, etc.

Tyson justified its unlawful mandate based on false assumptions, faulty data, and a dubious premise: that asymptomatic, lethal spread of COVID-19 in the employment setting poses imminent and substantial risks of severe harm which can *only* be mitigated by vaccines. Yet, following the science shows something quite different. Asymptomatic lethal spread of COVID-19 is virtually non-existent, even in the workplace. Moreover, vaccinated people are at least five times more likely to spread COVID-19 than asymptomatic people, and alternatives to the vaccines like testing and quarantining adequately address the spread of COVID-19.

Tyson chose to rush its long-serving, loyal employees to make a drastic medical decision, putting their careers and financial livelihoods at risk. Tyson demanded their employees take an experimental, investigatory drug with well-documented severe short-term side effects and unknown long-term adverse effects. Moreover, Tyson mandated its employees inject into their body a novel drug developed with the aid of cell lines from aborted fetuses, without their informed consent, and against their will. Tyson originally promised to honor religious accommodations and medical exemptions for their employees, but then reversed course and recently denied those accommodations with threats of constructive termination.

The Faustian bargain forced upon Mrs. Johnson by Tyson – give me your liberty or your job -- violates Tennessee law. An emergency injunction is therefore necessary to preserve the status quo for Plaintiff, as she awaits this Court's scrutiny of Tyson's vaccine mandate, and to prevent the devastating and irreversible harm of stealing Plaintiff's livelihood.

///

6

## FACTS

### 1. Employees' Faustian Choice - Lose Your Liberty or Lose Your Job

On approximately August 3, 2021, Tyson publicly announced it would require all "[]team members at U.S. office locations to be fully vaccinated by October 1, 2021."[1] *Exhibit A*. Tyson also announced that all other team members, thus including plant team members, would be required to be vaccinated by November 1, 2021.[2] *Exhibit A*. Tyson publicly stated that "exceptions to the vaccination mandate will involve workers who seek medical or religious accommodation."[3] Then, in October, Tyson let employees know what that medical or religious accommodation would be: unpaid leave for a year with no protection for seniority or even employment once the year was complete. In other words, Tyson's "accommodation" was tantamount to constructive termination.

However, the reality of the situation is graver than it appears; Tyson Foods' supervisors then informed employees that in order to comply with the mandate, employees must receive the Johnson & Johnson vaccine no later than October 18 to be considered fully vaccinated by November 1. *Exhibit B; Exhibit C*. The time has now passed for employees to be able to receive the Moderna or Pfizer mRNA vaccines in order to meet the mandate deadline. *Ibid.*

Absent a temporary injunction, Plaintiff Ronnie Johnson will be forced to take an experimental vaccine, authorized only under emergency use, to preserve her position at Tyson, compromising her religious beliefs, bodily autonomy, medical freedoms, and potentially her health.

---

[1] Tyson Foods, *Tyson Foods to Require COVID-19 Vaccination for its U.S. Workforce* (Aug. 3, 2021) available at https://www.tysonfoods.com/news/news-releases/2021/8/tyson-foods-require-covid-19-vaccinations-its-us-workforce (last visited Sept. 27, 2021).
[2] *Ibid.*
[3] *Ibid.*

## 2. Tyson's Religious Accommodation - Constructive Termination

Mrs. Johnson holds sincere concerns surrounding the process used to manufacture the vaccines. Presently, all COVID-19 vaccines have made use either in production or testing of fetal cell lines developed from tissues originally derived from aborted fetuses.[4] For example, the Johnson & Johnson vaccine used fetal cell cultures, specifically PER.C6, a retinal cell line that was isolated from a terminated fetus in 1985.[5] As for the EUA-Pfizer and Moderna COVID-19 vaccines, fetal cell line HEK 293 was used during the research and development phase.[6] All HEK 293 cells are descended from tissue taken in 1973 from an abortion[7] that took place in the Netherlands.[8] Plaintiff objects to receiving the COVID-19 vaccines on the basis that, even assuming the vaccines do confer a meaningful health benefit, that benefit is one from ill-gotten gains and flows from the unjust exploitation of unborn human life. This is not the sole religious objection: additional reasons for religious objections include treating their body as a temple and informed consent as part of their deeply held moral code about the purpose of life. Tyson recognizes these religious beliefs are sincerely held religious objections.

///

///

---

[4] *See,* Los Angeles County Public Health, *COVID-19 Vaccine and Fetal Cell Lines,* http://publichealth.lacounty.gov/media/Coronavirus/docs/vaccine/VaccineDevelopment_FetalCellLines.pdf (last accessed August 26, 2021)

[5] *Are the vaccines made with fetal cells,* Institute for Clinical Systems Improvement, https://www.icsi.org/covid-19-vaccine-faq/are-the-mrna-vaccines-made-with-fetal-cells/ (last accessed August 26, 2021), see also, Tennessee Department of Health, *Fact v. Fiction: Johnson & Johnson Vaccine* (2021) available at https://covid19.tn.gov/stay-informed/blogs/fact-v-fiction-johnson-johnson-vaccine/ (last visited Sept. 27, 2021) (acknowledging the Johnson & Johnson vaccine was developed from a fetal cell line).

[6] *See,* Nebraska Medicine, *You asked, we answered: Do the COVID-19 vaccines contain aborted fetal cells?,* https://www.nebraskamed.com/COVID/you-asked-we-answered-do-the-covid-19-vaccines-contain-aborted-fetal-cells, (last visited on Aug. 26, 2021).

[7] *COVID-19 Vaccine and Fetal Cell Lines.*

[8] *Ibid.*

### 3. Tyson's Medical Accommodation - Constructive Termination

The available COVID-19 vaccines on the market, Pfizer-BioNTech, Moderna, and Johnson & Johnson, are still only authorized under Emergency Use Authorization ("EUA"). Though the FDA has technically approved the currently unavailable vaccine, "Comirnaty," for future use, it is "legally distinct" from the current EUA Pfizer-BioNTech vaccine and, according to the approval letter, has yet to be manufactured and distributed. Thus, the only vaccines widely available for use in the United States are these three experimental, investigative, and unlicensed drugs. As such, the potential short- and long- term negative effects from this vaccine are only beginning to be understood.

Data from the VAERS database presents an alarming picture: as of early September, there have been 14,506 deaths reported to VAERS from COVID-19 vaccines, compared to just 8,673 for the preceding 30 years for all other vaccines. That is more than **50 times** the annual average. The numbers presented by VAERS underestimate the real harm, as both a 2010 federal study commissioned by the U.S. Health and Human Services and performed by Harvard consultants found that "fewer than 1% of vaccine adverse events" are ever reported to VAERS.[9] Indeed, public polling data shows the real serious injury rate nearly 100 times higher than that reported in VAERS. Furthermore, footage from inside a Department of Health and Human Services Hospital, which is federally run, shows that physicians are failing to report adverse side effects and deaths from the COVID-19 vaccine, which they are mandated to do.[10] Indeed, new

---

[9] Lazarus, Ross, MMBS, et. al., *Electronic Support for Public Health–Vaccine Adverse Event Reporting System (ESP:VAERS)*, Agency for Healthcare Research and Quality (Sept. 30, 2010) available at https://digital.ahrq.gov/sites/default/files/docs/publication/r18hs017045-lazarus-final-report-2011.pdf (last visited Oct. 2, 2021).

[10] *Federal Govt. Whistleblower Goes Public with Secret Recordings,* Project Veritas, available at https://www.projectveritas.com/news/federal-govt-whistleblower-goes-public-with-secret-recordings-government/.

research suggests the heightened risk of adverse effects results from "preexisting immunity to SARS-CoV-2 [that] may trigger unexpectedly intense, albeit relatively rare, inflammatory and thrombotic reactions in previously immunized and predisposed individuals."[11] A number of other serious side effects have been identified from these vaccines, including blood clotting, heart conditions, anaphylaxis, strokes, etc. The potential adverse effects Plaintiff faces in being coerced to receive the COVID-19 vaccines pursuant to Tyson's mandate are not theoretical, hypothetical, or academic—they are very real and have real victims.

Given the alarming reports of adverse side-effects associated with the COVID-19 vaccines, subjecting employees to vaccination exposes them to a variety of health risks ranging from headaches and blood clots to death. As Tyson is not offering any indemnity or disability coverage from any of the known and potential adverse effects of the COVID-19 vaccines, Plaintiff has no recourse against Tyson should their long-term health, or even life, be sacrificed to appease Tyson's authoritarian and unlawful mandate. Equally, as EUA investigatory drugs, the plaintiff has no remedy against the vaccine maker, manufacturer, or anyone else involved in the administration of the vaccine, under a special federal immunity law for EUA drugs. In fact, it is not even clear if Tyson's health insurance will cover the costs of any adverse effect from the vaccine.

Meanwhile, there is strong evidence that persons who have been infected with SARS-CoV-2 and recovered, and thus have natural immunity, are better protected from SARS-CoV-2, against all variants of the virus, than those with vaccine-induced immunity. Individuals with natural immunity are protected from future reinfection for over a year, and potentially have

---

[11] Angeli et al., *SARS-CoV-2 Vaccines: Lights and Shadows*, 88 EUR. J. INTERNAL MED. 1, 8 (2021).

lifelong immunity – unlike vaccinated persons for whom boosters are already being recommended and administered.

Therefore, given the mounting body of compelling research, it is medically unnecessary for persons who have recovered from COVID-19 and present evidence of natural immunity, to undergo vaccination for SARS-CoV-2. Tyson does not offer an alternative for employees to demonstrate natural immunity to SARS-CoV-2, even though forcing immune employees to receive the COVID-19 vaccines would not only offer them or those around them little benefit, but it would also subject them to an elevated risk of adverse side effects, including death.

## LEGAL STANDARD

Restraining orders are governed by Tennessee Rules of Civil Procedure Rule 65.03, which provides:

"The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party can be heard in opposition; and

(B) the applicant's attorney (or pro se applicant) certifies in writing efforts made to give notice and the reasons why it should not be required.

A restraining order may be granted at the commencement of the action or during the pendency thereof without notice, if it is clearly shown by verified complaint or affidavit that the applicant's rights are being or will be violated by the adverse party and the

11

applicant will suffer immediate and irreparable injury, loss, or damage before notice can be served and a hearing had thereon."[12]

There are four factors the Court considers and balances when deciding whether to issue a temporary restraining order:

"(1) The irreparable harm that could result if the injunction is not issued;

(2) the likelihood that the plaintiff will succeed on the merits of the case;

(3) a balancing of the injuries between the plaintiff and the defendant; and

(4) the impact of the injunction on the public interest."[13]

## ARGUMENT AND AUTHORITIES

1. **Plaintiff Has a Substantial Likelihood of Success on the Merits**

   a. *Defendants have Violated the Tennessee Human Rights Act by Discriminating Against Employees of the Basis of Religion and failing to provide reasonable accommodation*

Tenn. Code. Ann. § 4-21-401(a)(1)-(2) of the Tennessee Human Rights Act ("THRA") states that "it is a discriminatory practice for an employer to . . . discharge any person or otherwise discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's ... religion, ...; or limit, segregate or classify an employee or applicants for employment in any way that would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect the status of an employee, because of . . . religion." "Any employee terminated in violation of this section may

---

[12] Tenn. R. Civ. P. 65.03(1).

[13] *Rezult Group v. Hoskins*, 2019 Tenn. Cir. LEXIS 158; *S. Cent. Tenn. R.R. Auth. v. Harakas*, 44 S.W.3d 912 (Tenn. Ct. App. 2000); *see* Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 4-3(l) (1999).

bring a civil action against the employee's employer."[14] The THRA defines an employer as "the state, any political or civil subdivision thereof, and persons employing with (8) or more persons within the state, or any person acting as an agent of an employer, directly or indirectly."[15] This definition includes Tyson Foods, Inc.

To prevail on a claim of religious discrimination under the THRA, a plaintiff must present either direct evidence of discrimination or make a prima facie case of indirect discrimination.[16] Where the discrimination claim is based on circumstantial evidence, a burden-shifting framework is used, as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973). This framework generally requires a the following elements relating to the plaintiff: "(1) is a member of a protected group; (2) was subjected to an adverse employment action; (3) was qualified for the position; and (4) was treated less favorably than similarly-situated nonprotected employees."[17] "If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to offer evidence of a legitimate, nondiscriminatory reason for its adverse action."[18]

The statutory definition imposes upon an employer the duty to make reasonable accommodations for religious observances short of incurring an undue hardship.[19] To establish a claim on a failure to accommodate an employee's religious beliefs under the THRA, the employee must demonstrate that: (1) the employee holds a sincere religious belief that conflicts with an employment requirement; (2) the employee informed the employer of the conflict; and

---

[14] Tennessee Human Rights Act § 4-21-401(5).
[15] Tenn. Code Ann. sec. 4 21-102(5).
[16] *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007) ("*Tepper*").
[17] *Ibid.*
[18] *Tepper, supra*, 505 F.3d at 515.
[19] *Reed v. UAW*, 569 F.3d 576, 579 (6th Cir. 2009) [citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977)].

(3) the employee was discharged or disciplined for failing to comply with the conflicting

employment requirement.[20]

The State of Tennessee has expressly committed to the principle of fair and equal

employment opportunities for its citizens, regarding religious accommodations, defining a

protected religious practice or belief as follows: "Religious beliefs are not only those beliefs held

by traditional, organized religions, but also include moral or ethical beliefs as to what is right or

wrong which are sincerely held with the strength of traditional religious views."[21]

Mrs. Johnson holds sincere religious beliefs that precludes her from receiving a COVID-

19 vaccine. While there may be some who consider COVID-19 vaccines to be acceptable, no

employer in Tennessee, public or private, is permitted to decide for itself whose religious beliefs

are valid, and whose are not. As the Supreme Court has recognized, an employee's "religious

beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit

First Amendment protection."[22] Once an employee has articulated his or her sincerely held

religious objections to acceptance or receipt of the currently available COVID-19 vaccines, the

proper inquiry is thus at its end as to that element.

Defendant's COVID-19 vaccine mandate, which threatens termination for non-compliant

employees, discriminates against employees who do not wish to receive the vaccine on religious

grounds. Mrs. Johnson has sought an exemption from Tyson's COVID-19 vaccine mandate on

religious grounds. The only accommodation provided for employees who are granted an

exemption is one year of unpaid leave, with no guarantee of a position upon their return. This is

---

[20] *Burdette v. Fed. Express Corp. Burdette v. Fed. Express Corp.*, 367 F. App'x 628 (6th Cir. 2010) [citing *Tepper, supra,* 505 F.3d at 514].
[21] *See*, Religious Accommodation Guidelines, available at
https://www.tn.gov/content/dam/tn/hr/documents/Religion_Accommodation_Guidelines.pdf
[22] *Thomas v. Red. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981); *See also*, *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).

no reasonable accommodation at all, but rather a punitive measure taken against employees who choose to exercise their religious rights.

Tyson was made aware of the conflict between its COVID-19 vaccine mandate on the one hand, and Plaintiff's religious beliefs on the other. Tyson responded by implementing an accommodation tantamount to disciplinary action by discharge against Plaintiff. As a result of Tyson's draconian vaccine mandate, most employees will be forced to seek alternative employment during that year and those that refuse the vaccination on religious grounds are unlikely to comply with the mandate within the year, and thus will ultimately be terminated.

Because Plaintiff can establish a prima facie showing of discrimination, the burden shifts to Tyson to show that it could not accommodate the Plaintiff's religious needs without undue hardship.[23] Tyson cannot make a showing of undue hardship, as there are several other accommodations (scheduled testing, masking, etc.) that Tyson has already been implementing as safety measures for over 18 months, that would address safety concerns and which Tyson could hardly claim impose an undue hardship. Tyson thus failed to consider any reasonable accommodations to Plaintiff.[24] Indeed, since self-quarantining the symptomatic is a far more effective safety protocol, asymptomatic spread is very rare, and testing works better to prevent risk than these vaccines, these fully-capable, fully-qualified, fully-trained, qualified, experienced, unvaccinated, asymptomatic, tested-negative employees do not present any undue hardship on Tyson.

---

[23] *Tepper, supra,* 505 F.3d at 514.
[24] See EEOC Guidance for employers whose employees are unable to be vaccinated due to their sincerely held religious beliefs. *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (the "COVID-19 Technical Assistance", https://www.eeoc.gov/newsroom/eeoc-issues-updated-covid-19-technicalassistance, last visited on September 26, 2021.

As such, Tyson discriminated against the Plaintiff based on her sincerely held religious beliefs and failed to provide a reasonable accommodation for an exemption based on religious grounds. Therefore, Plaintiff has a substantial likelihood of success at demonstrating that Tyson violated the THRA by discriminating against employees based on sincere religious beliefs.

> **b.** *Defendants have Violated the Tennessee Disability Act by Discriminating Against Employees Based on Their Personal Medical Decisions*

Under the Tennessee Disability Act ("TDA"), Tennessee Code § 8-50-103(b) prohibits "discrimination in the hiring, firing, and other terms and conditions of employment of the state of Tennessee or any department, agency, institution or political subdivision of the state, or of any private employer, against any applicant for employment based solely upon any physical, mental or visual disability of the applicant, unless such disability to some degree prevents the applicant from performing the duties required by the employment sought or impairs the performance of the work involved."

To succeed on a claim under the TDA, a plaintiff must show "(1) that the individual was qualified for the position; (2) that the individual was disabled; and (3) that the individual suffered an adverse employment action because of that disability."[25] Although the TDA does not define "disabled," the definition stated in the THRA is applicable to TDA claims. The THRA defines disability with respect to a person as: (i) a physical or mental impairment that substantially limits one (1) or more of such person's major life activities; (ii) a record of having such an impairment; or (iii) being regarded as having such an impairment.[26]

---

[25] *Jones v. Sharp Elecs. Corp.*, No. W2013-01817-COA-R3-CV, 2014 Tenn. App. LEXIS 107 (Ct. App. Feb. 28, 2014).
[26] Tenn. Code Ann. § 4-21-102(3)(A).

A claim brought under the TDA is also analyzed under the same principles as the federal Americans with Disabilities Act (ADA).[27] Under the ADA, an individual has a protected disability if he or she either has a "physical or mental impairment that substantially limits one or more major life activities ..." (ADA Act, § 12102(1)(A)), or is: "being regarded as having such an impairment []." (Id., at subparagraph (C)). Under section 12102(3)(A) of the ADA Act: "An individual meets the requirement of 'being regarded as having such an impairment', if the individual establishes that he or she has been subjected to an action prohibited [by the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment substantially limits, or is perceived to substantially limit, a major life activity."[28]

Mrs. Johnson was qualified for her position at Tyson, and successfully performed it over twenty-three-year career with the company. She has been infected with SAR-CoV-2 and has successfully recovered, thus likely providing her with natural immunity that is stronger and more robust than vaccine-induced immunity. However Mrs. Johnson is facing adverse employment action because of Tyson's policies and discriminatory treatment. Tyson's unreasonable accommodation of taking adverse and punitive employment action against Mrs. Johnson by only offering an accommodation of one year of unpaid leave, with no guarantee of a position upon an employee's return, is no accommodation at all. Rather Tyson's policy is tantamount to termination of employment based on Tyson's inference of Plaintiff's "disabilities."

Tyson's vaccine mandate discriminates against Plaintiff because it treats her as though they are medically disabled, based upon Tyson's erroneous belief that Plaintiff lacks immunity to COVID-19. Yet, the medical evidence set forth herein demonstrates that natural immunity

---

[27] *Bolden v. Lowes Home Ctrs. LLC*, 783 Fed. App'x 589, 599 (6th Cir. 2019) (citing *Cardenas-Meade v. Pfizer, Inc.*, 510 F. App'x 367, 369 n.2 (6th Cir. 2013)).

[28] See also, 28 Code of Federal Regulations ("C.F.R.") §§ 35.108(f)(1) and 36.105(f)(1).

gained from previous COVID-19 infection is equal to or superior to the protection offered by vaccination.

Therefore, Tyson engages in unlawful discrimination in violation of the TDA, because Tyson regards Mrs. Johnson as having a physical impairment that disqualifies her from doing her job, and who can only be allowed in the workplace if she takes the COVID-19 vaccine. Equally, Tyson cannot justify termination as an accommodation when testing works far better than vaccination for stopping the spread of COVID-19, and especially when self-quarantining protects against the only real risk of symptomatic spread. Therefore, Plaintiff is substantially likely to succeed on her claim of disability discrimination.

### c.  *Defendants have Committed Assault Against Plaintiff by Threatening Harmful and Offensive Contact Through its COVID-19 Vaccine Mandate*

Under Tennessee law, a person commits assault who "intentionally or knowingly causes another to reasonably fear imminent bodily injury." Tenn. Code. 39-13-101(a)(2). Tyson Foods has threatened intentional harmful and offensive contact upon Plaintiff, by way of imposing the company-wide COVID-19 vaccine mandate upon them, under penalty of being terminated from their employment. At a minimum, Tyson's actions place their employees "to reasonably fear imminent bodily injury." Indeed, the entire doctrine of Informed Consent arose from the ancient tort of assault and battery.

Tyson's COVID-19 Vaccine Mandate caused Plaintiff to reasonably believe that Tyson was about to carry out the threat of harmful and offensive contact upon them, by way of forcing Plaintiff to inject a potentially unsafe substance into their bodies with novel technology of unknown long-term effects in violation of their conscience and religious beliefs, and without legal remedy should the vaccine manufacturer, marketer or medical professional be wildly reckless or grossly negligent in their duties to the public.

18

Furthermore, Defendant Ronda Gooch was responsible for informing employees, including Plaintiff, in her October 8, 2021 email to Newbern plant staff, that they could no longer obtain either of the mRNA Pfizer or Moderna vaccines in order to be fully vaccinated by the November 1st deadline. Rather, they were forced to receive the Johnson & Johnson vaccine by October 18 to comply with the mandate, under coercion, threat of termination, and fear of loss of livelihood caused by Defendants.

Plaintiff did not consent to Tyson Foods' or Ronda Gooch's coercive and threatening conduct and do not consent to receiving the COVID-19 vaccine in order to comply with the November 1st deadline. Therefore, Plaintiff is substantially likely to succeed on her claim for assault under Tennessee state law.

2. **Plaintiff Will Suffer Immediate and Irreparable Injury, Loss, or Damage as a Result of Defendants' COVID-19 Vaccination Mandate If a Restraining Order is not Issued.**

Liberty or livelihood: Tyson's rushed employee mandate threatens imminent and irreparable injury, as the loss of civil liberties always entails. "When constitutional rights are threatened or impaired, irreparable injury is presumed." *Fisher v. Hargett*, 604 S.W.3d 381, 415 (Tenn. 2020). The right to bodily autonomy and religious expression are Constitutionally rooted rights, protected in Tennessee from employer discrimination by the Tennessee Human Rights Act, and is why the law expressly and explicitly approves and authorizes injunctive relief as a remedy under the Tennessee Human Rights Act. With irreparable injury imminently threatened by the Faustian choice forced onto Plaintiff by Tyson, this element for emergency injunctive temporary relief is also met.

///

///

19

3. **The Injury and Harm to Plaintiff Outweighs the Injury and Harm to the Defendants**.

The harm caused to Plaintiff by failing to grant a TRO for Defendant's COVID-19 vaccine mandate substantially outweighs the harm caused to the Defendant by granting a TRO.

Tyson's mandate addresses a very remote risk: that of asymptomatic deadly spread of COVID-19 to fellow employees by unvaccinated individuals. There are several problems with Tyson's approach. First, asymptomatic lethal spread is a less than a one-in-a-million risk at worst; and testing more effectively, and easily, suffices rather than forced injections of unwanted experimental, potentially life-altering drugs. Furthermore, there is little credible scientific evidence that demonstrates the phenomenon of "asymptomatic spread" poses any meaningful danger to Tyson employees or anyone else, for that matter. Tyson's response to COVID-19 is predicated in part on the flawed assumption that asymptomatic individuals pose a meaningful risk of spreading the disease. In fact, Tyson's response to this minute risk is to require a method (vaccination), that poses a higher risk of deadly spread of COVID-19 than asymptomatic spread.

Because of the waning efficacy of COVID-19 vaccines in preventing infection or transmission, the robustness and preference of natural immunity, and the small risk of asymptomatic transmission of the SARS-CoV-2 virus demonstrates, having a 100% vaccination rate among its employees provides very little long-term benefit to Tyson long-term. Given that a temporary restraining order would only delay Tyson's mandate for 15 days, when the company has been implementing other effective safety precautions for months, Tyson will not suffer any measurable harm by temporarily suspending their deadline.

On the other hand, the injury to the Plaintiff, should she be forced to either comply with the mandate or be terminated from their position, is substantial. Choosing to be vaccinated creates the risk of known and unknown negative side effects that could result in long-term health

20

concerns for Plaintiff, or even death. This concern is even graver for employees with medical concerns regarding the vaccine, as being injected with an experimental, untested mRNA vaccine poses a higher risk for individuals with other health conditions. Meanwhile, Plaintiff may also be forced to compromise her sincere ethical and spiritual beliefs.

The only alternative available to Plaintiff is termination or one year of unpaid leave, with no guarantee of an available position, which is tantamount to termination of employment. Thus, Plaintiff would lose her livelihood and means of supporting her family, as well as suffer a severe detriment to her career prospects as a punishment for exercising her religious rights and bodily autonomy.

Tyson cannot justify stealing Plaintiff's livelihood for a negligible benefit and the illusion of safety. The injury to the Plaintiff caused by failing to grant the TRO clearly outweighs the injury to the Defendants by granting the TRO.

4. **A Restraining Order is in the Public Interest**.

The rights to our religious freedoms and bodily autonomy are long-cherished liberties and are codified in Tennessee's civil rights laws. Allowing private corporations to threaten these rights and claim control over their employees' bodily autonomy would be a horrendous blow to civil liberties for the people of Tennessee.

The public has a sincere interest in preventing their employers from impairing their religious and medical freedoms. The public also has an interest in having confidence in the courts to protect employees who may suffer irreparable and immediate harm from a mandate that may later be deemed unlawful. Failing to temporarily halt Tyson's unlawful mandate until Tyson's actions can be properly addressed and adjudicated would be neglectful of those interests.

5. **Providing notice to Defendants is impracticable and should not be required given the immediacy of Tyson's implemented vaccination deadline.**

Although Tyson initially published a November 1, 2021 vaccination deadline, Tyson has communicated that employees who fail to receive a vaccination by October 18, 2021, will not be considered "fully vaccinated" by November 1, and will not be in compliance with the mandate and thus are promised adverse employment action and either termination or unpaid leave of absence - constructive dismissal - on November 1. *Exhibit A*; *Exhibit B*; *Exhibit C*.

Given the time sensitive nature of this action and the indisputable harm to Mrs. Johnson in the absence of an immediate restraining order, notice to the Tyson defendants is not practical and should not be required. Thus, this Court should grant the restraining order applied for herein, upon an *ex parte* basis, to preserve the status quo and prevent immediate and irreparable injury to Mrs. Johnson.

///

///

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiff's request for an order granting a restraining order enjoining defendants Tyson Foods Inc, and Ronda Gooch from imposing the November 1, 2021 employee termination deadline for failure to get a COVID-19 vaccine. Said order should be issued pending judicial review of Plaintiff's request for permanent injunctive relief in this action.

DATED: October 19, 2021                    Respectfully submitted,

Robert E. Barnes, Esq.
Tennessee BPR No. 020617
BARNES LAW
700 South Flower Street, Suite 1000
Los Angeles, California 90017
Telephone: (310) 510-6211
Email: robertbarnes@barneslawllp.com

23

EXHIBIT A

(F) Tyson

Home  |  News  |  News Releases

Share    

August 03, 2021

# Tyson Foods to Require COVID-19 Vaccinations for its U.S. Workforce

LEER COMUNICADO EN ESPANOL

## Company also providing $200 to fully vaccinated frontline team members

**Springdale, Ark. – August 3, 2021 –** To protect team members, their families and their communities, Tyson Foods (NYSE: TSN), is requiring its team members at U.S. office locations to be fully vaccinated by October 1, 2021. All other team members are required to be fully vaccinated by November 1, 2021, subject to ongoing discussions with locations represented by unions.

This action makes Tyson Foods the largest U.S. food company to require COVID-19 vaccinations for its entire workforce. Almost half of Tyson Foods' U.S. workforce has been vaccinated and coronavirus infection rates among team members remain low.

"Getting vaccinated against COVID-19 is the single most effective thing we can do to protect our team members, their families and their communities," said Dr. Claudia Coplein, Chief Medical Officer, Tyson Foods. "With rapidly rising COVID-19 case counts of contagious, dangerous variants leading to increasing rates of severe illness and hospitalization among the U.S. unvaccinated population, this is the right time to take the next step to ensure a fully vaccinated workforce."

A memo to Tyson Foods team members from President & CEO Donnie King can be found here.

Since February, Tyson Foods has hosted more than 100 vaccination events for team members across the country and more than 56,000 U.S. team members have been vaccinated so far. Additional onsite vaccination events will be scheduled, and the company will continue to collaborate with local health departments and healthcare providers to make the vaccine more accessible.

To support efforts to fully vaccinate all team members, the company will also provide $200 to its frontline team members, subject to ongoing discussions with locations represented by unions.  This is an expansion of the company's existing policy of compensating workers for up to four hours of regular pay if they are vaccinated outside of their normal shift or through an external source.

Exceptions to the vaccination mandate will involve workers who seek medical or religious accommodation.

"Tyson Foods and Matrix Medical have worked together since the beginning of this pandemic to develop and implement strategies to mitigate the risk of the virus to Tyson employees and their families, as well as the communities where they live and work," said Matrix Chief Medical Officer and Group President, Daniel Castillo, M.D., M.B.A. "Matrix clinicians and Tyson team members have worked hand-in-hand to implement a broad array of

Your privacy is important to us. This website uses cookies to ensure you get the best experience on this website. To learn more about how to control your cookies, the categories of personal information we collect on this website, and how we use that information, please visit our privacy policy.

Learn More        Accept

9/30/21, 2:08 PM

Case 1:21-cv-01161-STA-jay   Document 1-1   Filed 10/20/21   Page 61 of 69   PageID 71
Tyson Foods to Require COVID-19 Vaccinations for its U.S. Workforce | Tyson Foods

 Tyson

broad portfolio of products and brands like *Tyson®*, *Jimmy Dean®*, *Hillshire Farm®*, *Ball Park®*, *Wright®*, *Aidells®*, *ibp®*, and *State Fair®*. Tyson Foods innovates continually to make protein more sustainable, tailor food for everywhere it's available and raise the world's expectations for how much good food can do. Headquartered in Springdale, Arkansas, the company has 139,000 team members. Through its Core Values, Tyson Foods strives to operate with integrity, create value for its shareholders, customers, communities and team members and serve as a steward of the animals, land and environment entrusted to it.

Visit **TYSONFOODS.COM** to learn more.

####

Contact: **Derek Burleson**, 479-290-6466

LEER COMUNICADO EN ESPANOL

Share       

Who We Are

Innovation

Our Brands

Sustainability

Careers

Investors

News

Contact Us

Copyright 2021 Tyson Foods, Inc.

Privacy Policy  |  Terms of Use  |  Legal  |  CTSCA  |  Do Not Sell My Personal Information

Your privacy is important to us. This website uses cookies to ensure you get the best experience on this website. To learn more about how to control your cookies, the categories of personal information we collect on this website, and how we use that information, please visit our privacy policy.

Learn More        Accept

# EXHIBIT B

## Explanation of Leave + Accommodation

Leave + as an accommodation provides team members who cannot reasonably work from home, either because of travel requirements or the nature of their job, the opportunity to remain employed by Tyson with access to certain benefits that come with a Leave of Absence.

Leave + also maintains the employment connection while Tyson determines whether there is a testing-based accommodation that eliminates or substantially mitigates the risk of COVID-19 to team members **and** can be reasonably implemented to allow a particular team member to return to the worksite. If Tyson is able to identify a such a testing protocol you will be notified, expected to return to work to participate in the testing regimen, and the leave of absence will end. If Tyson is unable to identify a testing protocol that eliminates or substantially mitigates the risk to team members posed by COVID-19, the team member will remain on an unpaid, leave of absence that is not job protected, in accordance with the terms and conditions of the Tyson Leave of Absence Policy.

Leave + also maintains the employment relationship while the medical profession works on new ways to attack the virus and end the pandemic. The primary motivation for the vaccine requirement is the safety of Tyson team members and getting vaccinated is the single most effective thing a team member can do to protect themselves and other team members from the dangers associated with COVID-19. However, where a team member cannot be vaccinated due to a disability or due to a sincerely held religious belief, and no other accommodation is available, Leave + provides some support for Tyson team members as Tyson, and the world at large, search for other ways to keep everyone safe.

REMINDER: Please verify your vaccination status

FOR: ALL WIRED U.S.-BASED TEAM MEMBERS

**JOHANNA SÖDERSTRÖM, EVP & CHIEF HUMAN RESOURCES OFFICER**

# Please verify your vaccination status

Getting vaccinated against COVID-19 is the single most effective thing we can do to protect our team members, our families, and our communities. There is nothing more important to us than your health and safety. This is why, with new COVID-19 variants spreading and a steady rise in cases across the U.S. among those who are unvaccinated, Tyson Foods is requiring all U.S. team members to be fully vaccinated.

All office and virtually based U.S. team members must be fully vaccinated by October 1, 2021, and all other U.S.-based team members by November 1, 2021.

Today, we have over 70,000 team members who have either been fully

1

vaccinated or started the vaccination process. Thank you! We have created a new vaccination site where you can quickly review or update your vaccination status. You can also confidentially submit your vaccination card, request an accommodation, get help scheduling an appointment, or update your profile to let us know if you don't plan to get vaccinated. Please visit the site to make sure your information is accurate and, if needed, request any changes by Wednesday, August 25, 2021.

We realize there is a lot of misinformation out there about the safety and efficacy of the vaccine that may raise concerns or make you question what to believe. The vaccine is safe and the most effective way to protect you against severe illness and death. The vaccine is also free. It is important that you have the right information and get your questions answered, so you can make a decision that is right for you. If you have questions or concerns, please review our FAQs or reach out to your HR partner, on-site medical staff, or other medical professionals.

A reminder that the vaccination process can take up to six weeks to complete. If you work in an office or virtually, in order to meet the October 1 deadline to be fully vaccinated, you need to begin the process immediately. This gives you time to receive two doses and allow for the two weeks it takes, after your final dose, to be considered fully vaccinated. All U.S.-based team members who need to meet the Nov. 1 deadline should also begin the vaccination process as

soon as possible.

We appreciate every Tyson team member and your dedication to our company. Our priority is your health and safety, and to ensure Tyson Foods is a safe place to work — for everyone.

Thank you for helping to protect yourself, your families, your team members and our communities.

Be safe,

Johanna

This email and any files transmitted with it are confidential and intended solely for the use of the addressee. If you are not the intended addressee, then you have received this email in error and any use, dissemination, forwarding, printing, or copying of this email is strictly prohibited. Please notify us immediately of your unintended receipt by reply and then delete this email and your reply. Tyson Foods, Inc. and its subsidiaries and affiliates will not be held liable to any person resulting from the unintended or unauthorized use of any information contained in this email or as a result of any additions or deletions of information originally contained in this email.

3



**Tyson**

September 30, 2021

Dear Team Member:

On Tuesday, Aug. 3, 2021, Tyson Foods announced that all team members must be fully vaccinated by Nov. 1, 2021.

Records show you have not submitted a vaccination card, made a request for an accommodation or indicated a decision to not pursue vaccination. Please speak with your HR partner or location nurse to indicate your plans as soon as possible.

The time has now passed to receive either of the two mRNA vaccines (Pfizer or Moderna) to be fully vaccinated by Nov. 1. You have until Oct. 18 to get the Johnson & Johnson vaccine to reach fully vaccinated status by the Nov. 1 deadline. With the exception of an approved accommodation, failure of a team member to be fully vaccinated by Nov. 1, 2021 will result in termination from Tyson.

Whatever you decide to do, we respect your choice. If you have questions or need additional information, please speak with your manager, HR partner, or talk to your location nurse.

Regards,

Tyson Foods Human Resources