**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBBIE JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 21-cv-01161-STA-jay** |
| **vs.** | ) | |
| | ) | |
| **TYSON FOODS, INC. and** | ) | |
| **RHONDA GOOCH,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

---

**ORDER PARITALLY GRANTING DEFENDANTS' MOTION TO DISMISS**
**AND**
**PARTIALLY DENYING MOTION TO DISMISS**

---

Plaintiff Robbie Johnson filed this action in the Dyer County Chancery Court against her employer Tyson Foods, Inc. and a human resources manager at the company Rhonda Gooch. Plaintiff alleges that Defendants violated her rights under the First, Fourth, and Fifth Amendments to the United States Constitution; the Tennessee Constitution, Article I, Section 3; the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12010 *et seq.*; the Nuremberg Code; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 360bbb-3; the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4–21–101 *et seq.*; the Tennessee Disability Act ("TDA"), Tenn. Code Ann. § 8–50–103 *et seq.*; and Tenn. Code Ann. § 14-1-101 *et seq.*, by requiring her to be vaccinated with the COVID-19 vaccine prior to November 1, 2021, or else go on unpaid leave without the assurance of ever reclaiming her job. Plaintiff also alleges a state common law claim of assault. (Amd. Cmplt., No. 18.)  Plaintiff seeks declaratory

1

relief that Tyson Foods violated the THRA, TDA, and state tort law, and injunctive relief enjoining Tyson Foods from discriminating against employees by refusing to grant religious or health accommodations to its COVID-19 vaccine mandate as well as damages.

Defendant Tyson Foods removed the action on October 20, 2021, asserting that this Court has jurisdiction over the matter under diversity-of-citizenship jurisdiction pursuant to 28 U.S.C. §1332 and federal officer jurisdiction under 28 U.S.C. § 1442(a)(1).  (ECF No. 1.) On November 3, 2021, the Court denied Plaintiff's motion to remand finding that the Court has jurisdiction under 28 U.S.C. § 1442(a)(1). (ECF No. 17.)  Plaintiff filed an amended complaint on November 18, 2021.  (ECF No. 18.)

Defendants have now filed a motion to dismiss the amended complaint.  (ECF No. 24.) Plaintiff has responded to the motion (ECF No. 29), and Defendants have filed a reply to the response.  (ECF No. 34.)  For the reasons set forth below, the motion is **PARTIALLY GRANTED** and **PARTIALLY DENIED.**

<u>Standard of Review</u>

The Federal Rules of Civil Procedure require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint may be attacked for failure "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion to dismiss, a Court will presume that all the factual allegations in the complaint are true and will draw all reasonable inferences in favor of the nonmoving party. *See Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)).  "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). That is, a complaint must contain enough facts "to state a claim to relief that is plausible on its face." *Id.* at 570. A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). If the Court cannot "infer more than the mere possibility of misconduct, the complaint has alleged — but has not 'show[n]' — 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

<u>Analysis</u>

Plaintiff has brought thirteen claims in her amended complaint. Many of those claims are based on the underlying premise that Defendants are government or state actors,[1] specifically the claims alleging violations of the Free Exercise Clause of the First Amendment (claim one); the RFRA (claim five); the FDCA (claim nine); the Nuremberg Code (claim ten); and the Fourth and Fifth Amendments (claim eleven). Plaintiff relies, in part, on the Court's previous finding of federal officer jurisdiction in support of her contention that Defendants acted as government or state actors during the events giving rise to this lawsuit while Defendants argue that removal under

---

[1] The Court has used "government actor" and "state actor" interchangeably in this order.

3

the federal officer removal statute did not transform them into government actors.  The Court will address this issue first.

A review of the Court's order denying Plaintiff's motion to remand and finding federal officer jurisdiction is informative. In that order (ECF No. 17), the Court explained that the federal officer removal statute permits a defendant to remove to federal court a state court action for an act made while the defendant was acting under an agency or officer of the United States. 28 U.S.C. § 1442(a)(1).  That is, the removal statute applies to private persons when they "lawfully assist" a federal officer "in the performance of his official duty,"  *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 150–57 (2007) (quoting *Davis v. South Carolina*, 107 U.S. 597, 600 (1883)), while the private party is "authorized to act with or for [the federal officer] in affirmatively executing duties under . . . federal law." *City of Greenwood v. Peacock*, 384 U.S. 808, 824 (1966).   A Court will find federal officer removal to be appropriate when "the defendant (1) is a person within the meaning of the statute, (2) is acting under the United States, its agencies, or its officers, (3) is acting under color of federal authority, and (4) has a colorable federal defense." *Betzner v. Boeing Co.*, 910 F.3d 1010, 1015 (7th Cir. 2018).

In their response to the motion to remand, Defendants argued that Tyson acted under a federal officer pursuant to President Donald J. Trump's April 28, 2020 Executive Order which expressly invoked the President's authority under the Defense Production Act of 1950 ("DPA"), as amended, 50 U.S.C. § 4501 *et seq.* The Executive Order directed meat and poultry processing companies, such as Tyson, to stay open and continue operations, subject to the supervision of the Secretary of Agriculture. *See Food Supply Chain Resources*, 85 Fed. Reg. at 26,313, 2020 WL 2060381, at *1.  Defendants reasoned that, because Tyson is operating under the DPA and supervision from the Secretary of Agriculture, removal under 28 U.S.C. § 1442(a)(1) was

warranted.  That is, removal was proper because each Defendant was a "person" within the meaning of the statute who "acted under the direction of a federal officer" and its actions were for or related to acts performed under color of federal office.  *See Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010) (stating that a defendant seeking removal under § 1442(a)(1) must establish that it is a "person" who "acted under" a federal officer).  The Court adopted Defendants' reasoning, relying in part on *Fields v. Brown*, 519 F. Supp.3d 388 (E.D. Tex. Feb. 11, 2021), and *Wazelle v. Tyson Foods, Inc.*, 2021 WL 2637335 (N.D. Tex. June 25, 2021).  *Wazelle* and *Fields* concluded that Tyson Foods (also a defendant in those cases) acted under a federal officer because it worked closely with the government to "guarantee that there was an adequate food supply" for the country.  *Wazelle*, 2021 WL 2637335, at *4 (explaining that the Department of Agriculture and the Food Safety and Inspection Service ("FSIS") "closely monitored Tyson Foods' meatpacking plants, staffing some employees onsite during the pandemic," and that "Congress even allocated additional funding to FSIS to ensure that they had the resources" to supervise meatpacking plants during the pandemic); *Fields*, 519 F. Supp. at 393 (same).

This Court also found persuasive the following reasoning of *Wazelle* and *Fields*.  "When a national emergency was declared in response to the COVID-19 pandemic on March 13, 2020, Tyson Foods, along with other components of the Food and Agriculture Sector, was designated as critical infrastructure." *Fields*, 519 F. Supp. 3d at 392. From that point forward, Tyson Foods "interacted," "collaborat[ed]," and "work[ed] directly with" federal officers to assist the U.S. government to fulfill the government's responsibility of "guarantee[ing] that there was an adequate food supply." *Id.* at 293. "Accordingly, . . . [Tyson was] 'acting under' the directions of federal officials" from the time of the national emergency declaration. *Wazelle*, 2021 WL 2637335, at *5.

Section 1442(a)(1) additionally requires that a defendant removing a case demonstrate that the alleged conduct by the defendant is for, or relates to, an act under color of federal office. A plaintiff's claims are removable as long as they are "connected" or "associated" with federal directions. *Latiolais v. Huntington Ingalls, Inc.*, 951 F. 3d 286, 292 (5th Cir. 2020). This Court found that Plaintiff's claims satisfied the causal connection required by § 1442(a). Plaintiff's claims related to Tyson Foods' vaccination policy are connected to the federal directive to "continue operating and fulfilling orders to ensure a continued supply of protein for Americans," Executive Order at *1, and are in compliance with CDC and OSHA workplace safety guidelines.

In their motion to dismiss, Defendants argue that removal of this action under the federal officer removal did not transform Tyson into a government actor, and, therefore, federal constitutional claims cannot be brought against Defendants. Plaintiff has responded that Tyson's vaccine mandate constitutes state action based on this Court's order denying Plaintiff's motion to remand. Plaintiff acknowledges that Tyson "is a corporation that operates as a worldwide food processing and marketing company" (Amd. Cmplt. ¶ 11, ECF No. 18) but posits that deciding whether to attribute state action to a private party is a fact-based inquiry not appropriate at the pleading state.

It is well-settled that an entity is only liable for claims based on constitutional violations if the entity is held to be a government actor. *Dusenbery v. United States*, 534 U.S. 161, 167 (2002); *see also Cochran v. Gilliam*, 656 F.3d 300, 306 (6th Cir. 2011) (explaining that a constitutional claim requires that the "constitutional violation be taken under color of state law either by government actors or private individuals acting as agents of the state"). "In certain circumstances, however, the acts of even private parties may be deemed to be state action;" however, "'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *Cox*

*ex rel. Dermitt v. Liberty Healthcare Corp.*, 622 F. Supp. 2d 487, 491–92 (E.D. Ky. 2008) (quoting *Revis v. Meldrum*, 489 F.3d 273, 289 (6th Cir. 2007), and *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

At the outset, the Court must decide whether its finding of federal officer jurisdiction equates to a finding of government or state action. It does not. Section 1442(a)(1) enables defendants who are federal officers or who are acting under a federal officer to have access to a federal forum when asserting federal defenses against a claim that relates to an act under color of such office or a claim that is for such an act. *See Watson v. Philip Morris Cos.*, 551 U.S. 142, 150–51 (2007). As noted by Defendants, the statute merely determines which court hears a case; it does not transform a private party into a government actor. In denying Plaintiff's motion to remand, the Court held that Defendant "acted under a federal officer" — not that either Defendant was a federal officer or government actor.

Defendants correctly point out that the standard for removal under § 1442(a)(1) is different from the test for determining when a private defendant can be deemed a government actor. The statute permits removal of a civil action brought "for or relating to any act under color of [federal] office," 28 U.S.C. § 1442(a)(1), whereas a private party is not considered to be a government actor unless one of three tests are met. *Snodgrass-King Pediatric Dental Assocs., P.C. v. DentaQuest USA Ins. Co., Inc.*, 780 F. App'x 197, 198 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 898 (2020). Those tests are the "public function test, the state compulsion test, and the nexus test." *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995).[2] Therefore, Plaintiff's reliance on this Court's order

---

[2] "The very existence of the three tests to determine whether a private party's actions can be fairly attributed to the state indicates a presumption — a reasonable and correct one — that a private party has not acted under color of state law." *Hines v. Chandra*, 2007 WL 9658631, at *3 n.4 (N.D. Ohio May 17, 2007).

denying her motion to remand is unavailing in determining whether Defendants can be considered government actors under the Constitution.  Turning to the public function, state compulsion, and nexus tests, the Court finds that Plaintiff has not shown that any of these tests encompass Defendants' actions during the events giving rise to this lawsuit.[3]

Under the public function test, "a private party is deemed a state actor if he or she exercised powers traditionally reserved exclusively to the state." *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003). *See also Anderson v. United Airlines, Inc.*, 2021 WL 6337144, at *5 (M.D. Fla. Dec. 30, 2021) ("[T]he public function test shows state action only when private actors are given powers (or perform functions) that are traditionally the exclusive prerogative of the State." (quoting *Harvey v. Harvey*, 949 F.2d 1127, 1131 (11th Cir. 1992)) This test is usually interpreted narrowly and has rarely been used to find state action on the part of a private actor. *Chapman*, 319 F.3d at 833–34.

To the extent that Plaintiff alleges that Defendants have taken on a public function under this test, the Court finds that her allegations are not sufficiently plausible.  A private business's implementation of an employee vaccination policy is not akin to any of "those limited activities – for example running a city — that have 'traditionally *and exclusively*' been performed by the government." *United States v. Miller*, 982 F.3d 412, 423 (6th Cir. 2020) (emphasis in original)

---

[3]   Plaintiff contends that "the issue of state action attributable to a private party is one fundamentally unsuited for adjudication at the pleading stage of the case."  (Resp. p. 3, ECF No. 32.)  However, when a plaintiff has failed to plead facts supporting a finding of government action, as in the present case, dismissal is warranted. *See*, *e.g.*, *Wilcher v. City of Akron*, 498 F.3d 516, 519 (6th Cir. 2007) (affirming grant of defendant's motion to dismiss "because the complaint failed to allege facts showing state action"); *Rose v. Emergency Med. Training Processionals*, 2019 WL 4784607, at *2 (E.D. Ky. Sept. 30, 2019) ("Plaintiff has failed to allege facts that would support a determination under any of the three tests that [the defendant's] conduct is 'fairly attributable' to the state.")

(quoting *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 341 (6th Cir. 2006)).[4]   Although Plaintiff argues that Defendants' provision of "a critical infrastructure to exercise the federal government's public function of guaranteeing an adequate food supply during the government declared COVID-19 pandemic" is a public function (Resp. p. 4, ECF No. 32), the Court cannot find that meat and poultry processing is an activity usually reserved for the government. Furthermore, private companies often implement vaccination policies for their employees.

The state compulsion test "requires that the state 'exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state.'" *Wilcher v. City of Akron*, 498 F.3d 516, 519 (6th Cir. 2007) (quoting *Wolotsky v. Huhn*, 960 F.2d 1131, 1335 (6th Cir. 1992)). Under this test, there must be more than merely the approval or acquiescence of the state in the decisions or actions of the private actor. *See Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). ("[A]lthough the factual setting of each case will be significant, our precedents indicate that a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." (citations omitted)).

Even though then-President Trump instructed meat and poultry processing plants to stay open and continue operations in his executive order, he did not direct or require Tyson to implement a vaccine requirement.[5]   Defendants note that Tyson's vaccine policy was guided by

---

[4]  *Miller* noted that "[m]ost activities — such as providing electricity, operating a nursing home, or managing a public-access television station — will not qualify" as "public functions." 982 F.3d 423 (citations omitted).

[5] Plaintiff acknowledges that there is no governmental order or law requiring Tyson to mandate the COVID-19 vaccine for its employees.  (Resp. p. 14, ECF No. 32.)

9

the Government but was not coerced by it. *See S.H.A.R.K. v. Metro Parks Serving Summit Cnty.*, 499 F.3d 553, 565 (6th Cir. 2007) (finding that a private individual working with park rangers was not a state actor when he erased security tapes even though the rangers "encouraged" but did not compel him to do so).

The third "state-action test" is the nexus test. As explained by the *Cox* Court,

Under this test, "the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter maybe fairly treated as that of the state itself." *Wolotsky*, 960 F.2d 1331, 1335 (6th Cir.1992). As with the public-function test, the Court's review of case law reveals the application of this nexus test to be very restrictive. "[T]he Sixth Circuit has made clear that the ties between the private party and the State must be substantial." *Jackim v. City of Brooklyn*, 2007 WL 893868, at *24, 2007 U.S. Dist. LEXIS 20355, at *85 (N.D. Ohio Mar. 22, 2007) (citing *Wolotsky*, 960 F.2d at 1335); *see also Siskaninetz v. Wright State Univ.*, 175 F.Supp.2d 1018, 1023 (S.D. Ohio 2001) (same); *Marchese v. Weeman*, 1993 U.S. Dist. LEXIS 11826, at *7 (E.D. Mich. July 24, 1993) (plaintiff "must establish a substantial degree of cooperative action" between state and private actor).

*Cox*, 622 F. Supp. 2d at 493–94. Moreover,

[c]ertain factors have been deemed insufficient, in and of themselves, to establish the required nexus between the private actor's complained-of conduct and the State. Extensive state regulation of a private entity's operations does not establish state action via the nexus test. *See, e.g.*, *Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S. Ct. 2764, 73 L.Ed.2d 418 (1982); *Adams v. Vandemark*, 855 F.2d 312 (6th Cir. 1988); *Crowder v. Conlan*, 740 F.2d 447 (6th Cir. 1984). Public funding of nearly all of the private actor's activities, as well as the private actor's use of public property, are similarly insufficient to establish the required nexus. *See, e.g.*, *Blum v. Yaretsky*, 457 U.S. 991, 102 S. Ct. 2777, 73 L.Ed.2d 534 (1982); *Wolotsky*, 960 F.2d at 1336; *Crowder*, 740 F.2d at 450, 453. The minority presence of public officials on the private actor's decision-making board also does not satisfy the nexus test for state action. *See, e.g.*, *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S. Ct. 449, 42 L.Ed.2d 477 (1974); *Lansing* [*v. City of Memphis*], 202 F.3d [821, 831 (6th Cir. 2000)]; *Crowder*, 740 F.2d at 447. Also, the utilization of public services by private actors does not by itself establish the requisite nexus for state action. *See, e.g.*, *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 119 S. Ct. 977, 143 L.Ed.2d 130 (1999); *Ellison v. Garbarino*, 48 F.3d 192 (6th Cir. 1995).

*Cox*, 622 F. Supp. 2d at 494-95 (citing "[n]umerous cases [that] illustrate the restrictive approach the Sixth Circuit has taken with the nexus test, similar to its interpretation of the public function test" and stating that "that precedent counsels great caution in finding state action by virtue of a symbiotic relationship.")

Plaintiff contends that Defendants acted as an "agent of the government … by imposing strict worker vaccination rules to (in the estimation of the federal government), in order to preserve the integrity of the national food supply." (Resp. p. 7, ECF No. 29.) However, no facts are pled that would enable the Court to find a sufficient nexus between Tyson's vaccine policy and the involvement of the Government. The mere fact that Tyson relied on OSHA and CDC guidance in formulating its vaccine policy does not make either Defendant an "agent of the government." Nor does the fact that Tyson is subject to the federal government's COVID-19 guidance for meat and poultry plants convert Defendants into government actors. Government "regulation, even when extensive, is not sufficient to justify a finding of a close nexus between the state and the regulated entity." *Lansing*, 202 F.3d at 830 (collecting Supreme Court and Sixth Circuit cases holding that private parties' actions do not constitute government action despite extensive regulation).

Because Plaintiff has failed to show that Defendants' actions in requiring employees to be vaccinated is equivalent to government or state action, the claims requiring state action must be dismissed. As previously stated, these claims are those alleging violations of the Free Exercise Clause of the First Amendment (claim one); the RFRA (claim five); the FDCA (claim nine); the Nuremberg Code (claim ten); and the Fourth and Fifth Amendments (claim eleven). Defendants' motion as to these claims is granted, and the claims are dismissed with prejudice.

Next, Defendants contend that Plaintiff has failed to state a claim for religious discrimination under Article I, Section 3, of the Tennessee Constitution (claim two) because the

Tennessee Constitution does not provide for a private right of action and/or because Defendants are not state actors.[6]  Because the Court has determined that Defendants are not state actors, it will focus on Defendants' private right of action argument. In support of the argument, Defendants rely on *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996) ("The plaintiff can state no claim of a state constitutional violation in this case because Tennessee does not recognize a private cause of action for violations of the Tennessee Constitution." (citation omitted)); *Bowden Bldg. Corp. v. Tennessee Real Estate Comm'n*, 15 S.W.3d 434, 446 (Tenn. Ct. App. 1999) ("Tennessee, however, has not recognized any such implied cause of action for damages based upon violations of the Tennessee Constitution") (citations omitted)); *Siler v. Scott*, 591 S.W.3d 84, 102 n.2 (Tenn. Ct. App. 2019) (affirming order granting summary judgment in favor of defendant that dismissed plaintiff's claim alleging a violation of the Tennessee Constitution for failure to state a claim); and *Wooley v. Madison County, Tennessee*, 209 F. Supp. 2d 836, 844 (W.D. Tenn. 2002) (dismissing the plaintiff's "freedom of speech claim under article I, section 19 of the Tennessee Constitution" since "it is well established that Tennessee does not recognize an implied private cause of action for damages based upon violation of the Tennessee Constitution." (citations omitted)).

Plaintiff agrees that there is no private right of action for damages under the Tennessee Constitution but argues that she may seek injunctive relief.  (Resp. p. 13, ECF No. 29.)  Even if Plaintiff is correct that she may seek injunctive relief for a violation of her rights under the Tennessee Constitution, it is not clear whether Plaintiff would be eligible for an injunction

---

[6]  The Tennessee Constitution provides "that all men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience, . . . that no human authority can, in any case whatever, control or interfere with the rights of conscience; and that no preference shall ever be given, by law, to any religious establishment or mode of worship." Tenn. Const. Art. I § 3.

prohibiting Defendants from taking an adverse action against her.  Plaintiff's Amended Complaint alleges that Defendant actually terminated her employment on November 1, 2021.  Am. Compl. ¶ 9 ("Then, on November 1, 2021, Defendants sent Plaintiff a permanent discharge notice, notifying her that she was fired.").  In view of this allegation, any claim Plaintiff had for injunctive relief is now moot.  Accordingly, claim two is dismissed with prejudice.

Defendants next contend that Plaintiff has failed to state a claim for religious discrimination under Title VII (claim three) and the ADA (claim six) or race discrimination under Title VII (claim eight) because she failed to exhaust her administrative remedies.  It is well-settled that exhaustion of administrative remedies is a prerequisite to filing a district court lawsuit alleging discrimination under Title VII, s*ee Brown v. General Serv. Admin.*, 425 U.S. 820, 823-33 (1976), and that a plaintiff may only bring a Title VII action in district court after he has exhausted the administrative remedies provided under 42 U.S.C. § 2000e-16. [7]  Thus, timely filing a charge with the Equal Employment Opportunity Commission ("EEOC") and subsequently filing a complaint in federal district court in a timely manner are prerequisites to maintaining a Title VII action.  *See Lomax v. Sears, Roebuck, & Co.*, 2000 WL 1888715, at \*6 (6th Cir. Dec. 19, 2000) (reiterating that "when a claim is not first presented to the EEOC, the claim may not be brought in court").

In order to exhaust the administrative remedies of Title VII and the ADA, a plaintiff must "trigger the investigatory and conciliatory procedures of the EEOC so that the Commission may first attempt to obtain voluntary compliance with the law.... These investigatory and conciliatory procedures notify potential defendants of the nature of plaintiffs' claims and provide them with the opportunity to settle the claims before the EEOC rather than litigate them." *Davis v. Sodexho,*

---

[7]  Section 107(a) of the ADA states that the remedies and procedures used in the event of a Title VII violation also apply to claims brought under the ADA. 42 U.S.C. § 12117(a).

*Cumberland College Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998).  A plaintiff must exhaust his or her administrative remedies for each and every claim.  *Id.* In the present case, it is undisputed that Plaintiff has not filed a charge with the EEOC.

Plaintiff argues that she is only seeking injunctive relief, not monetary damages, which she claims is a generally accepted exception to the administrative remedy exhaustion requirement.  In support of her argument, she cites *Malone v. City of E. Cleveland*, 1978 WL 186, at *1 (N.D. Ohio Oct. 6, 1978) (relying on *Drew v. Liberty Mutual Insurance Co.*, 480 F.2d 69 (5th Cir. 1973), which held that, when temporary injunctive relief would be appropriate, "filing of the complaint and request for such relief before exhaustion of EEOC conciliation procedures is not fatal to the Court's jurisdiction over the complaint."  However, Plaintiff fails to make the distinction that in the cases she cites, excluding *Costantino v. TRW, Inc.*, 13 F.3d 969 (6th Cir. 1994), the issue presented to the court was whether a plaintiff could bring a claim for injunctive relief before receipt of a notice of right to sue from the EEOC.  *See*, *e.g.*, *Drew*, 480 F.2d at 72  ("We conclude that in the *limited class of cases*, such as the present, in which irreparable injury is shown and likelihood of ultimate success has been established, (here this has been determined by the trial court), the individual employee may bring her own suit to maintain the status quo pending the action of the Commission on the basic charge of discrimination  (emphasis added)); *Malone*, 1978 WL 186, at *2 ("[I]f a temporary restraining order is otherwise appropriate under Rule 65, Fed. R. Civ. P., filing of the complaint and request for such relief before exhaustion of EEOC conciliation procedures is not fatal to the Court's jurisdiction over the complaint."); *Sughrim v. New York,* 503 F.Supp.3d 68, 96 (2020) (When "a person has filed a Title VII charge with the EEOC, the court has jurisdiction to entertain a motion for temporary injunctive relief against employer retaliation while the charge is pending before the EEOC and before the EEOC has issued a right to sue letter"

14

(citations omitted).  *Costantino* concerns ERISA exhaustion. ERISA, unlike Title VII and the ADA, "does not explicitly require exhaustion of administrative remedies" *Id.* at 974 (citation omitted). Instead, unlike Title VII and the ADA's express administrative exhaustion requirements, ERISA administrative exhaustion is left to the district court's discretion. *Id.* at 974-75.

Here, Plaintiff has not filed charges with the EEOC; *a fortiori*, the cases cited by Plaintiff are inapposite to her claims.  Plaintiff's failure to file an EEOC charge is dispositive, and Plaintiff's Title VII and ADA claims (claims three, six, and eight) must be dismissed without prejudice for failure to exhaust her administrative remedies.  What is more, Plaintiff alleges that Tyson has already terminated her employment.  Any injunctive relief related to Tyson's vaccine mandate is no longer available to Plaintiff.  Her argument to excuse her failure to exhaust is not persuasive.

Plaintiff has brought a claim under the THRA for Defendants' alleged failure to accommodate her religious beliefs (claim four). Plaintiff alleges that she holds sincere religious beliefs that preclude her from receiving a COVID19 vaccine and that "Defendant's accommodation of one year of unpaid leave, with no guaranteed positions upon potential return, is no reasonable accommodation at all, but rather a punitive measure taken against employees who choose to exercise their religious rights."  (Amd. Cmplt. ¶¶ 159, ECF No. 18.)

In their motion to dismiss, Defendants contend that the THRA does not require an employer to accommodate an employee's religious beliefs.  Plaintiff acknowledges that there is no explicit language in the Tennessee Human Rights Act imposing a duty to accommodate religious beliefs, but she argues that the Tennessee Supreme Court has held that THRA claims are analyzed in the same manner as Title VII claims, and Title VII does prescribe a duty to accommodate an employee's religious beliefs. (Resp. p. 16, ECF No. 32.)

Defendants have raised the issue of preemption. Defendants contend that this claim and Plaintiff's other state statutory claims are preempted by (1) President Trump's Executive Order, (2) the Federal Meat Inspection Act, 21 U.S.C. §§ 601 *et seq*., and (3) the Poultry Production Inspection Act, 21 U.S.C. § 451 *et seq*.[8]   The Supremacy Clause provides that the Constitution, federal statutes, and treaties constitute "the supreme Law of the Land." Art. VI, cl. 2.   If federal law "imposes restrictions or confers rights on private actors" and "a state law confers rights or imposes restrictions that conflict with the federal law," "the federal law takes precedence and the state law is preempted." *Murphy v. National Collegiate Athletic Assn.*, 138 S. Ct. 1461, 1480 (2018).  *See also Torres v. Precision Indus., Inc.*, 938 F.3d 752, 755 (6th Cir. 2019) (reiterating that preemption presents the constitutional question whether state and federal law "conflict (citations omitted)).

When a litigant challenges the constitutionality of a Tennessee statute, the Tennessee Attorney General must be notified. As explained in *In re Adoption of E.N.R.*, 42 S.W.3d 26 (Tenn. 2001),

> [T]he court is required, pursuant to Tenn. R. Civ. P. 24.04, to ensure that notice of the constitutional challenge has been provided to the Office of the Attorney General.
>
> This rule makes it clear that the trial court sits as gatekeeper to inquire whether notice has been provided to the Attorney General by the challenger and **to suspend proceeding on the constitutional challenge until such notice has been provided and a response from the Attorney General received.**

*In re Adoption of E.N.R.*, 42 S.W.3d at 33 (emphasis added).

---

[8]  Plaintiff's state statutory claims are brought under the THRA (claim four), Tenn. Code Ann. § 4–21–101 *et seq.*; the TDA, Tenn. Code Ann. § 8–50–103 *et seq.* (claim seven); and Tenn. Code Ann. § 14-1-101 *et seq.* (claim twelve).  Plaintiff has also brought a state constitutional claim (claim two).  Because the Court has declined supplemental jurisdiction over that claim, Defendants need not notify the Attorney General of claim two.  *See Torres*, 938 F.3d at 755 (pointing out that "courts should not address a question of preemption if they can resolve the case on other grounds.")

16

The Court in *Waters v. Farr*, 291 S.W.3d 873 (Tenn. 2009), further expounded,

[a] second jurisprudential principle, embodied in Tenn. Code Ann. § 29–14–107(b) (2000), Tenn. R. Civ. P. 24.04, and Tenn. R. App. P. 32, requires parties challenging the constitutionality of a statute to notify the Attorney General and Reporter of the challenge by serving a copy of their papers on the Attorney General. The purposes for these requirements are two-fold. First, the notice enables the Office of the Attorney General to discharge its responsibility to defend the constitutionality of state statutes. Tenn. Code Ann. § 8–6–109(b)(9) (Supp. 2008). Second, the joinder of the Attorney General assures that the statute will be vigorously defended. Compliance with this statute and the related rules is mandatory.

*Waters*, 291 S.W.3d at 918 (concurrence) (some citations omitted).

Here, there is no indication in the record that the Tennessee Attorney General has been notified of the constitutional challenge to the state statutory claims. Therefore, the Court will deny Defendants' motion to dismiss the state law claims (claims four, seven, twelve) without prejudice. Defendant will be given twenty-eight days from the entry of this order in which to notify of the Court of its compliance with Tenn. Code Ann. § 29–14–107(b) and Tenn. R. Civ. P. 24.04.

Defendants have moved to dismiss Plaintiff's RFRA claim (claim five) on the ground that RFRA claims may be brought only against a government actor for government conduct. RFRA provides that the "Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). "The text of the statute makes quite clear that Congress intended RFRA to apply only to suits in which the government is a party." *Gen. Conf. Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 410 (6th Cir. 2010).

Plaintiff does not dispute the principle that only government actors may be held liable under the RFRA ("If Tyson is a federal officer, then it is obligated to follow the limits imposed on federal officers under the Religious Freedom Restoration Act." And, "In essence, a federal actor's

17

burden on a person's exercise of religion must satisfy strict scrutiny." Amd. Cmplt. ¶¶ 186, 188, ECF No. 21.)   Instead, she continues to argue that Defendants are government actors for the purposes of this lawsuit.   However, the Court has already decided this issue against Plaintiff. Therefore, the RFRA claim must be dismissed.

The Court agrees with Defendants that Plaintiff has failed to state a claim for Defendants' alleged violation of the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 360bbb-3 (claim nine), because there is no private right of action under that statute.   Section 564 of the FDCA, 21 U.S.C. § 360bbb-3, authorizes the Secretary of Health and Human Services to issue an "emergency use authorization" ("EUA") of a medical product in certain emergency situations. That section further provides that "with respect to the emergency use of an unapproved product, the Secretary . . . shall for a person who carries out any activity for which the authorization is issued, establish such conditions on an authorization . . . as the Secretary finds necessary or appropriate to protect the public health, including" that health care professionals administering the product are informed that the Secretary have authorized emergency use, the significant and potential benefits and risks of such use, and of the extent to which the benefits and risks are unknown, and of the alternatives to the product that are available and of their benefits and risks, 21 U.S.C. §360bbbe-(3)(1)(A)(i), and that individuals on whom the product is administered are provided the same information along with the option to refuse or accept the administration of the product. 21 U.S.C. §360bbbe-(3)(1)(A)(ii).   Section 564(l) specifically states that "[t]his section only has legal effect on a person who carries out an activity for which an authorization under this section is issued." 21 U.S.C. §360bbb-3(l).

Plaintiff claims that "as a corporation mandating a vaccine . . ., Defendants failed to follow the requirements associated with EUA products" by not giving Plaintiff the option to refuse the

vaccine, and by not providing the information specified in 21 U.S.C. §360bbbe-(3)(1)(A)(ii).

(Amd. Cmplt. ¶¶ 227, ECF No. 18.) However, there is no allegation that Defendants actually

administered the vaccine.

> It is well-settled that there is no private right of action under the FDCA. *See*
> *Buckrnan Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n. 4, 121 S. Ct. 1012,
> 148 L.Ed.2d 854 (2001) (there is "no doubt that it is the Federal Government rather
> than private litigants who are authorized to file suit for noncompliance" with the
> FDCA); *Bailey v. Johnson*, 48 F.3d 965, 968 (6th Cir.1995) ("Congress did not
> intend, either expressly or by implication, to create a private cause of action under
> the FDCA"); *Griffin v. O'Neal, Jones & Feldman, Inc.*, 604 F. Supp. 717, 718 (S.D.
> Ohio 1985) ("It is clear from the face of the statute that no civil private right of
> action exists").

*Edwards v. Warner-Lambert*, 2012 WL 2156246, at *4 (S.D. Ohio June 13, 2012)

As explained in *Bridges v. Houston Methodist Hosp.*, 543 F. Supp. 3d 525, 527 (S.D. Tex.

2021),

> [the FDCA] confers certain powers and responsibilities to the Secretary of Health
> and Human Services in an emergency. It neither expands nor restricts the
> responsibilities of private employers; in fact, it does not apply at all to private
> employers like the hospital in this case. It does not confer a private opportunity to
> sue the government, employer, or worker. Bridges's claim that the injection
> requirement violates 21 U.S.C. § 360bbb-3 fails.

*See also Doe v. Franklin Square Union Free Sch. Dist.*, 2021 WL 4957893, at *20 (E.D.N.Y. Oct.

26, 2021) ("Section 564 does not include a private right of action.")

Plaintiff's claims brought under the Nuremberg Code (claim ten) must also be dismissed.

Plaintiff alleges that Defendants have "offended long-held and fundamental principles of

international law," that Tyson's "employees are being coerced into unknowingly participating in

a national medical experiment" and that Defendant has "failed to provide sufficient balanced

information to satisfy informed consent" (Amd. Cmplt. ¶¶ 235-236, ECF No. 18), in violation of

the Nuremberg Code which requires the voluntary consent of any human subject in order to

participate in medical experiments. *See Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 175 (2d Cir. 2009)

(describing the "sources of international law that categorically forbid medical experimentation on non-consenting human subjects").

The Court agrees with Defendants that there is no private right of action for a violation of international law based on the Nuremberg Code. *See Washington Univ. v. Catalona*, 437 F. Supp. 2d 985, 1000 (E.D. Mo. 2006), *aff'd*, 490 F.3d 667 (8th Cir. 2007). "Covid-19 vaccine mandates are simply not equivalent to the forced experimentation on concentration camp victims that led to the writing of the Nuremberg Code." *Anderson v. United Airlines, Inc.*, 2021 WL 6337144, at *7 (M.D. Fla. Dec. 30, 2021). *See Heinrich ex rel. Heinrich v. Sweet*, 49 F. Supp. 2d 27, 42 (D. Mass. 1999) (noting that there is no private right of action under the Nuremberg Code). Furthermore, the Nuremberg Code does not apply to private employers. *See Bridges v. Houston Methodist Hosp.*, 2021 WL 2399994, at *2 (S. D. Tex. June 12, 2021) ("Equating the injection requirement to medical experimentation in concentration camps is reprehensible.") Plaintiff cites no law in opposition to this argument and, instead, just makes a policy argument.

As explained in by the *Catalona* Court,

There is no private right of action for an alleged violation of international law for the protection of human research subjects based upon the Declaration of Helsinki and the Nuremberg Code. *White v. Paulsen*, 997 F. Supp. 1380, 1383 (E.D. Wash. 1998); *Hoover v. West Virginia Dept. of Health and Human Resources*, 984 F. Supp. 978, 980 (S.D.W.Va.1997) *aff'd* 129 F.3d 1259, 1997 WL 705385 (4th Cir.1997); *see also*, *Abdullahi, et al. v. Pfizer, Inc.*, 2005 WL 1870811 (S.D.N.Y. 2005). Furthermore, this Court agrees with the conclusions reached by its fellow district courts in Michigan and Oklahoma that the standard in the United States for conducting research on human subjects is contained in the Code of Federal Regulations and therefore United States federal courts have no need to resort to international law to impute a standard. *Ammend v. Bioport, Inc.*, 322 F. Supp.2d 848, 872–73 (W.D. Mich. 2004); *Robertson v. McGee*, 2002 WL 535045 (N.D.Okla.2002).

437 F. Supp. 2d at 1000–01. Accordingly, this claim must be dismissed with prejudice.

Finally, Defendants contend that Plaintiff has failed to state a claim for common law assault (claim thirteen). Claim thirteen alleges as follows:

262. Defendants have threatened intentional, imminent harmful and offensive contact upon Plaintiff by way of forced vaccine injection of an experimental, untested, and ineffective mRNA vaccine, under penalty of being terminated from their employment. A penalty they in fact exercised.

263. Furthermore, Defendant Rhonda Gooch has continuously harassed and threatened Plaintiff regarding her choice not to receive the vaccine.

264. Defendant's coercion, emboldened by tight deadlines, uncompromising exemption protocols, and a hostile and censored work environment, contributed to Plaintiff's stress and fear concerning Defendants' vaccine mandate.

265. Tyson's COVID-19 vaccine mandate caused Mrs. Johnson to reasonably fear imminent bodily injury from being forced to inject an experimental, untested, and potentially unsafe substance into her body, under penalty of termination from employment for failure to comply. A penalty that was in fact exercised by Defendants.

266. Plaintiff did not consent to Defendants' conduct, nor did she consent to receiving the COVID-19 vaccine. Defendant's unlawful requirement of employment was an
unwelcome invasion of Plaintiff's privacy and bodily integrity.

267. Tyson's COVID-19 vaccine mandate has and continues to cause Plaintiff harm, including but not limited to by way of fear, anxiety, fright over being threatened with the injection of an untested and potentially unsafe substance into the body, and the imminent and subsequent loss of her income and livelihood.

(Amd. Cmplt., ECF No. 18.)  Defendants assert that Plaintiff has failed to plead sufficient facts to support a common law claim of assault because she had not alleged an overt act or a physical movement sufficient to set forth a plausible assault claim for which relief may be granted under Tennessee law. Defendants posit that the threat of the loss of income cannot sustain a claim for assault.  The Court finds Defendants' argument to be meritorious.

Under Tennessee common law, assault is defined as "any act tending to do corporal injury to another, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against that person." *Vafaie v. Owens*, 1996 WL 502133, at *3 (Tenn. Ct. App. 1996) (citing *Huffman v. State*, 292 S.W.2d 738, 742 (Tenn. 1956),

overruled on other grounds by *State v. Irvin*, 603 S.W.2d 121 (Tenn. 1980)).  In *Vafaie*, the Tennessee Court of Appeals affirmed the grant of summary judgment to the defendant on the plaintiff's assault claim because "the alleged threats were always threats of future harm, and were not threats of immediate or imminent harm. In no instance, were the threats 'coupled with the present ability to act,' or, to borrow the words of the criminal statute, there was never a threat of 'imminent bodily injury.'"  1996 WL 502133, at *4.

> In Tennessee, assault is defined as "any act tending to do corporal injury to another, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against the person." *Thompson v. Williamson Cnty.*, 965 F. Supp. 1026, 1037 (M.D. Tenn. 1997). A defendant is not liable for assault unless he or she commits an "intentional act creating a reasonable apprehension of imminent physical harm on the part of the plaintiff." *Baker v. Moreland*, 1989 WL 89758, at *5 (Tenn. Ct. App. Aug. 9, 1989).
>
> A civil action for assault cannot be sustained upon the basis of words alone. *Id.* Rather, there must be an overt act or physical movement causing the plaintiff to believe he was in imminent physical harm or danger. *Id.* "An overt act is an essential element of an assault, and mere preparation or a threat to commit an assault unaccompanied by physical effort to do so, does not amount to an assault." *Id.* In other words, the defendant must make a physical movement "which might be reasonably interpreted as the beginning of a physical attack upon the plaintiff." *Id.*, at *6.

*Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 855 (E.D. Tenn. 2011).

In the present case, Defendants do not administer the vaccine, and Plaintiff may choose not to take the vaccine - albeit at the risk of losing her job.  *C.f.*, *Reese v. Tyson Foods, Inc.*, 2021 WL 5625411, at *3 (W.D. Mo. Nov. 30, 2021) (denying the employee plaintiff's motion for a temporary restraining order and preliminary injunction to be able to keep his job during the pendency of the litigation and not have to receive the vaccine and pointing out that "Plaintiff admitted he had not been forced to get the COVID-19 vaccine and that no one had tried to or physically made him get it" even though he had alleged in his complaint that he believed that the defendant employer would "force" him to be vaccinated).

The court in *McCutcheon v. Enlivant ES, LLC*, 2021 WL 5234787, at *3 (S.D.W. Va. Nov. 9, 2021), explained,

> Ms. McCutcheon's claims are similar to those offered in *Bridges v. Houston Methodist Hosp.*, ——— F. Supp. 3d ———, Case No. H-21-1774, 2012 WL 2399994 (S.D. Tex. June 12, 2021). Among other good observations, Judge Hughes correctly noted that vaccine mandates by public employers do not coerce employees. *Id.* at *7. The same might be said of private employers -- particularly those in the medical and assisted living industries -- which impose vaccination policies to protect their residents, patients, and staff members. Ms. McCutcheon is free to accept or refuse the COVID-19 vaccine. If she refuses, she need only to pursue employment elsewhere.

*C.f., Jacobson v. Massachusetts*, 197 U.S. 11 (1905) (rejecting substantive due process claim that "a compulsory vaccination law is ... hostile to the inherent right of every freeman to care for his own body" and "nothing short of an assault upon his person").  Here, there has been no assault upon Plaintiff because she is "free to accept or refuse the COVID-19 vaccine," and, if she refuses, she "need only to pursue employment elsewhere."  For this reason, claim thirteen is dismissed with prejudice.

In summary, Defendants' motion to dismiss is **PARTIALLY GRANTED** and **PARTIALLY DENIED**.  The motion is granted with prejudice as to claims one, two, five, nine, ten, eleven, and thirteen.  The motion is granted without prejudice as to claims three, six, and eight.

The motion is denied without prejudice as to claims four, seven, and twelve.  As previously stated, Defendants will be given twenty-eight days from the entry of this order in which to notify the Court of its compliance with Tenn. Code Ann. § 29–14–107(b) and Tenn. R. Civ. P. 24.04.

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: June 15, 2022