IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| ROBBIE JOHNSON | ) |
| | ) |
| Plaintiff, | ) CIVIL ACTION NO: 1:21-cv-01161-STA-jay |
| | ) |
| v. | ) |
| | ) |
| TYSON FOODS, INC. and | ) |
| RONDA GOOCH, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO DISMISS PLAINTIFF'S AMENDED VERIFIED COMPLAINT**

Defendants Tyson Foods, Inc. ("Tyson") and Ronda Gooch ("Gooch") (collectively, "Defendants") submit this Memorandum of Law in Support of Defendants' Renewed Motion to Dismiss Plaintiff's Amended Verified Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") and Local Rules 7.2 and 12.1.

## INTRODUCTION

Plaintiff is a former Tyson team member who claims Tyson violated various state and federal laws by requiring its workforce to receive the Covid 19 vaccination as a condition of continued employment. On December 9, 2021, Defendants moved to dismiss Plaintiff's Amended Verified Complaint (D.E. 24), which the Court granted in part and denied in part on June 15, 2022 ("Order") (D.E. 35). The Court denied Defendant's Motion to Dismiss without prejudice as to count four, (Tennessee Human Rights Act), Tenn. Code Ann. § 4–21–101 *et seq.;* count seven, (Tennessee Disability Act), Tenn. Code Ann. § 8–50–103 *et seq.*; and count twelve, Tenn. Code Ann. § 14-1-101 *et seq.* Id. at pp. 16 fn. 8, 23, on the basis that Tyson's federal preemption

1

challenge to all three statutes required notification to the Tennessee Attorney General. Tyson provided notice to the Attorney General who subsequently was allowed to intervene for the limited purpose of defending the constitutionality of the Tennessee statutes.

Defendant renews its motion to dismiss counts four, seven and twelve. Plaintiff has not alleged a cause of action under the Tennessee Human Rights Act ("THRA") for religious discrimination because she admits she was treated the same as other employees, and there is no duty to accommodate religious beliefs. Plaintiff has similarly failed to allege a cause of action under the Tennessee Disability Act ("TDA") because she was not discriminated against because of a disability, and there is no duty to accommodate a disability. Plaintiff's claim under Tenn. Code Ann. § 14-1-101 fails because it does not apply to Tyson. The Court should dismiss the claims against Defendant Ronda Gooch on the additional grounds that there is no individual liability under any of the Tennessee statutes at issue.

Additionally, President Trump's April 28, 2020, Executive Order, and the Federal Meat Inspection Act ("FMIA") both preempt Plaintiff's state law claims.

For the reasons stated above and more fully set forth below, the Court should dismiss the three remaining counts with prejudice and Plaintiff's Amended Complaint in its entirety.

## LEGAL ARGUMENT

### I. Legal Standard Governing Motions to Dismiss.

Rule 12(b)(6) provides for dismissal of a complaint based on the plaintiff's "failure to state a claim upon which relief can be granted." FRCP 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat well-pleaded allegations of the pleadings as true and construe allegations in the light most favorable to the non-moving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992). However, legal

conclusions or unwarranted factual inferences need not be treated as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). The factual allegations contained in the complaint must be enough to make a right to relief more than speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555 n.3, 558) ("The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief.").

Rules 8(a) and 12(b)(6) work together. Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a). Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009); *Twombly*, 550 U.S. at 555*; see also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). This requires the plaintiff to plead more than "a formulaic recitation" of the elements of her causes of action, more than simple legal conclusions, which are not entitled to an assumption of truth, and more than the possibility the defendant is liable. *Iqbal*, 556 U.S. at 678-80. Rather, a plaintiff's complaint must contain well-pleaded factual allegations that move her claim "across the line from conceivable to plausible." *Id.* (quoting *Twombly*, 550 U.S. at 570).

All of Plaintiff's claims fall short of these standards for the reasons set forth below. Plaintiff's factual assertions do not demonstrate she is entitled to relief against Defendants. Therefore, the Court should dismiss Plaintiff's Amended Complaint in its entirety.

## II. **Plaintiff Fails to State a Claim Under the THRA Because Defendants Have Not Discriminated Against Plaintiff and Defendants Have No Duty to Accommodate Her Religious Beliefs (Count Four).**

### A. Plaintiff was treated the same as other employees.

Under the THRA it is a "discriminatory practice for an employer to:"

> (1) Fail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race, creed, color, religion, sex, age, or national origin; or
>
> (2) Limit, segregate or classify an employee or applicants for employment in any way that would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect the status of an employee, because of race, creed, color, religion, sex, age, or national origin.

Tenn. Code Ann. §4-21-401(a)(1)&(2).

By definition, religious discrimination cannot occur when all employees are treated equally. *Id. Cf Phillips v. Interstate Hotels Corporation,* 974 S.W.2d 680 (Tenn. 1998)(in public accommodation case under the THRA, Tennessee Supreme Court found no discrimination on the basis of race where "all patrons were affected equally by the music selection policy, as every patron, regardless of race, was subjected to the same music selections.").

Therefore, Plaintiff's claim of religious discrimination under the THRA should be dismissed.

### B. No Duty to Accommodate

The THRA does not require an employer to accommodate an employee's religious beliefs. Unlike Title VII, which imposes an express accommodation requirement within its definition of

religion,[1] the THRA does not define "religion," nor does it include any reference to accommodation of religious practices that conflict with an employee's job functions or an employer's policy. Tenn. Code Ann. §§ 4-21-101-1004.[2]

Where the language of the THRA differs from Title VII, Tennessee courts must conduct their own analysis on whether to follow federal law when interpreting the THRA. *See Booker v. The Boeing Co.*, 188 S.W.3d 639, 647 (Tenn. 2006) ("[W]e will not apply the reasoning and conclusions of federal civil rights decisions where doing so would conflict with the THRA."). Courts should also "resist reading words or elements into a statute that do not appear on its face." *Bates v. United States,* 522 U.S. 23, 29 (1997). Consequently, although the THRA includes similar protections as Title VII, it does not impose on any employer the duty to accommodate an employee's religious beliefs and practices.

Furthermore, no state or federal court in Tennessee has held that an employer's alleged failure to accommodate an employee's religious beliefs and practices under the THRA must be analyzed under the same standards as Title VII. Waverly D. Crenshaw, Jr., and Brian A. Pierce, 1 Belmont L. Rev. 1, 9 (2014) (citing *Dobbs-Weinstein v. Vanderbilt Univ.*, 1 F. Supp. 2d 783, 791 (M.D. Tenn. 1998), *aff'd*, 185 F.3d 542 (6th Cir. 1999)). The conclusion that the THRA does not impose a duty to accommodate an employee's religious beliefs is consistent with the well-established canon of statutory construction that a legislature purposefully chooses its words and

---

[1] The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that it is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business. 42 U.S.C. § 2000e(j).

[2] The THRA not only does not contain an accommodation requirement, but its definition of "discriminatory practices" prohibits preferences in treatment based on a protected trait including religion: "(4) 'Discriminatory practices' means any direct or indirect act or practice of exclusion . . . or any other act or practice of differentiation or preference in the treatment of a person or persons because of race, creed, color, religion, sex, age or national origin." Tenn. Code Ann. §4-21-102(4).

means different things when it uses different words. *Id.* Plaintiff's claim under the THRA fails as a matter of law because there is no duty to accommodate an employee's religious beliefs.

### III. Plaintiff Fails to State a Claim Under the TDA (Count Seven) Because Defendants Did Not Discriminate Against Plaintiff Because of a Disability, and There is No Duty to Accommodate a Disability Under the TDA.

#### A. Plaintiff Was Not Discriminated Against Because of a Disability

An individual alleging discrimination under the TDA must demonstrate: (1) that she was qualified for the position; (2) that she was disabled; and (3) that she suffered an adverse employment action because of that disability. *Cardenas-Meade v. Pfizer, Inc.*, 510 F. App'x 367, 369 (6th Cir. 2013). Here, aside from generalized allegations of discrimination, Plaintiff's Amended Complaint fails to set forth any factual assertions to support her discrimination claim, let alone that she was treated differently than any other Tyson employee. Plaintiff admits that Tyson's Policy required that all team members be fully vaccinated. Doc. 18, ¶3. Consequently, Plaintiff has not asserted any facts that Tyson treated her differently under its Policy because of an actual or perceived disability. As a result, Plaintiff has failed to state a claim under the TDA.

#### B. The TDA Does Not Require Defendants to Reasonably Accommodate Plaintiff.

Plaintiff asserts that Defendants' "failure to provide medical accommodations has harmed and continues to harm plaintiff" and she "sought reasonable medical exemption from Tyson's COVID-19 mandate." Doc. 18, ¶¶191, 199. The TDA, however, does not require employers to reasonably accommodate employees' disabilities. *Russo v. Moore Ingram Johnson & Steele, LLP,* Case No. 3:21-cv-00535, 2022 WL 1787102 at *17 (M.D. Tenn. 2022); *Jones v. Sharp Elecs. Corp.*, No. W2013-01817-COA-R3CV, 2014 WL 806131, at *3 (Tenn. Ct. App. Feb. 28, 2014); *Sasser v. ABF Freight Sys. Inc.*, 219 F. Supp. 2d 701, 708 (M.D. Tenn. 2016). Consequently,

Plaintiff has failed to state a claim under the TDA as a matter of law. Therefore, the Court should dismiss Count Seven.

### IV. Plaintiff Fails to State a Claim Under Tenn. Code Ann. §14-1-101 *et al*. Because Title 14 is Inapplicable to Tyson (Count Twelve).

#### A. Tyson Is Not Prohibited from Imposing a Vaccine Policy or Mandate.

Title 14 only prohibits a "Governmental Entity" from imposing a vaccine mandate.[3] *See* Tenn. Code Ann. § 14-2-101. Tyson falls squarely within Title 14's definition of a Private Business: "(15) 'Private business' means a corporation, . . . or any other legal or non-governmental entity whether formed as a for-profit or not-for-profit entity engaged in business or commerce in this state . . .." Tenn. Code Ann. § 14-1-101(15). Title 14 does not prohibit a private business such as Tyson from imposing its vaccine policy. Consequently, the Court should dismiss Count Twelve for failure to state a claim.[4]

#### B. The Court Should Dismiss Plaintiff's Claim Under Title 14 Because the Alleged Violations Occurred Before Title 14's Enactment and Effective Date.

Plaintiff filed her original Complaint on October 19, 2021. (Doc. 1, Ex. 1). Plaintiff alleges that Tyson imposed a "vaccine mandate on August 3, 2021, and that unvaccinated employees were placed on unpaid leave if they requested an exemption as of November 1, 2021. Doc. 18, ¶¶ 3-4.

---

[3] In the Court's June 15, 2022 Order, the Court rejected Plaintiff's assertion that Defendants were government actors and dismissed Plaintiff's claims that require state action (D.E. 35 at 11)("Because Plaintiff has failed to show that Defendants' actions in requiring employees to be vaccinated is equivalent to government or state action, the claims requiring state action must be dismissed").

[4] Tyson lifted its vaccine requirement on October 31, 2022.
https://www.reuters.com/business/healthcare-pharmaceuticals/tyson-foods-ends-covid-19-vaccine-mandate-employees-2022-11-16/

The complained of actions occurred before November 12, 2021, the effective date of Title 14. *See* Tenn. Code Ann. § 14-1-101(2021 Pub. Acts (3rd Ex. Sess.), c. 6, § 1, eff. Nov. 12, 2021). In *Nutt v. Champion International Corporation*, 980 S.W.2d 365, 368 (Tenn. 1998), the Tennessee Supreme Court stated that new laws are applied prospectively unless the legislature clearly states otherwise:

> The Tennessee Constitution states, "That no retrospective law, or law impairing the obligations of contracts, shall be made." Tenn. Const. art. 1, § 20. Statutes are presumed to operate prospectively unless the legislature clearly indicates otherwise. *Shell v. State,* 893 S.W.2d 416, 419 (Tenn. 1995); *Kee v. Shelter Ins.,* 852 S.W.2d 226, 228 (Tenn. 1993); *State v. Defriece,* 937 S.W.2d 954, 957 (Tenn.Ct.App.1996), *per. app. denied* (Tenn. 1997).

*Id.* The only provision of Title 14 the General Assembly made retroactive is Tenn. Code Ann. §14-3-101(c). It states "[t]his section entitles an otherwise eligible claimant to a **retroactive** payment of unemployment benefits if the claimant was denied benefits on grounds that the claimant's separation from employment for failing or refusing to receive a COVID-19 vaccine was insufficient for benefits." (emphasis added). The other provisions of Title 14, including the provisions Plaintiff cites in Count Twelve, apply only prospectively and thus do not provide Plaintiff with a cause of action for an alleged violation of Title 14.[5] Therefore, the Court should dismiss Count Twelve for failure to state a claim.

## V. Plaintiff Fails to State a Claim Against Defendant Gooch Because There is No Individual Liability Under Any State Statute at Issue.

The THRA and TDA claims against Gooch should be dismissed for the additional reasons that there is no individual liability under either Act. *See Bowles v. Heath Consultants, Inc.*, No. 216CV02982STACGC, 2017 WL 1026017, at *5 (W.D. Tenn. Mar. 16, 2017) (district court, in

---

[5] Title 14 "affect[s] the vested rights or liabilities of the parties" as it "create[d] a new right of recovery" [Tenn. Code Ann. § 14-6-103] and cannot be considered as a remedial or procedural statute which might be given retroactive effect. *Nutt,* 980 S.W.2d at 368.

denying motion to remand, ruled there is no individual liability under the THRA based on the 2014 amendments to the THRA); Tenn. Code Ann. §4-21-301(b) ("No individual employee or agent of an employer shall be liable for any violation of part 4 of this chapter that any employer shall be found to have committed."); *Garner v. SDH Servs. E., LLC*, 55 F. Supp. 3d 1016, 1025 (M.D. Tenn. 2014) ("[T]he TDA does not permit lawsuits against individual supervisors . . . .").

Additionally, Gooch does not fall within the definition of a "Governmental Entity," "Employer" or "Private Business" for purposes of Tenn. Code Ann. § 14-1-101. Therefore, Plaintiff's claims against Gooch should be dismissed.

## VI. Plaintiff's State Claims Are Preempted by President Trump's April 28, 2020, Executive Order and by the Federal Meat Inspection Act.

In addition to the foregoing, Plaintiff's state law claims under the TDA, THRA, and Tenn. Code Ann. § 14-1-101(8), are preempted by federal law based on (1) President Trump's Executive Order and (2) the Federal Meat Inspection Act ("FMIA").

### A. President Trump's April 28, 2020, Executive Order Preempts Plaintiff's Claims

On April 28, 2020, President Trump issued an Executive Order invoking his authority under the Defense Production Act ("DPA") and instructing meat and poultry processing companies to stay open and continue operations, subject to the Secretary of Agriculture's supervision. *Food Supply Chain Resources*, 85 Fed. Reg. at 26,313, 2020 WL 2060381, at *1. The same day, the Secretary of Agriculture declared that guidance from the Centers for Disease Control and Prevention ("CDC") and the Occupational Safety & Health Administration ("OSHA") would "help ensure employee safety to reopen plants or to continue to operate those still open" and "*ensure that these plants are allowed to operate to produce the meat protein that Americans need*."[6] As

---

[6] Available at https://www.usda.gov/media/press-releases/2020/04/28/usda-implement-presidenttrumps-executive-order-meat-and-poultry (emphasis added).

the pandemic progressed, the CDC and OSHA continued to update their guidance as new information about COVID-19 came to light, including guidance on employee vaccination.[7] On May 18, 2020, the Food and Drug Administration and the Department of Agriculture ("USDA") entered a Memorandum of Understanding setting their respective roles in using the DPA to regulate food producers during the COVID-19 pandemic, which reiterated that "actions by States or localities could lead to the closure of food resource facilities;" such closures "could threaten the continued functioning of the national food supply chain, undermining critical infrastructure during the national emergency;" and the USDA retained "***exclusive delegated authority***" under the DPA to issue orders regarding domestic food producers.[8]

The Executive Order, implemented by the USDA, stated that Tyson should continue operating its processing facilities consistent with CDC and OSHA guidance. That Order, issued pursuant to the President's powers under the DPA, preempts any attempt by the states to strike a different policy balance between securing the national food supply and stemming the spread of COVID-19. Indeed, as this Court concluded, "[t]he Court agrees with Defendant that [the Trump

---

[7] *See, e.g.*, CDC, Meat and Poultry Processing Workers and Employers: Interim Guidance from CDC and the Occupational Safety and Health Administration (OSHA). Available at https://stacks.cdc.gov/view/cdc/90395. The CDC COVID-19 Workplace Guidance states that vaccination keeps the workforce healthy by preventing employees from getting COVID-19, reduces absences due to illness, improves productivity and improves morale. The CDC also states that vaccination is the best way to maximize protection from the Delta variant, illness, hospitalization, and death. Available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/essentialworker/workplace-vaccination-program.html. OSHA's Guidance on Mitigating and Preventing the Spread of COVID-19 in the Workplace stated that "vaccination is the key element in a multi-layered approach to protect workers," and that vaccines authorized by the U.S. Food and Drug Administration are highly effective at protecting vaccinated people against symptomatic and severe COVID-19 illness and death. According to the CDC, a growing body of evidence suggests that fully vaccinated people are less likely to have symptomatic infection or transmit the virus to others." Available at https://www.osha.gov/coronavirus/safework.

[8] Available at https://www.usda.gov/sites/default/files/documents/mou-between-fda-usdadpa.pdf (emphasis added).

Executive Order and Secretary of Agriculture] directives, issued after the President invoked the DPA, preempt any attempt to challenge the policy balance between securing the food supply for the country and reducing the spread of COVID-19." Doc. 20 at 10; *Johnson*, 2021 WL, at *6 (denying motion to remand).

It is "simply implausible that Congress would have gone to such lengths to empower the President if it had been willing to compromise his effectiveness by deference to every provision of state [law] that might, if enforced, blunt the consequences of discretionary Presidential action." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 376 (2000). The President's decisions "represent[] a national response to a specific problem of 'truly national' concern." *Rancho Viejo, LLC v. Norton*, 323 F.3d 1062, 1078-79 (D.C. Cir. 2003). Because "the purpose of the [DPA] cannot otherwise be accomplished" while allowing states to implement their own, potentially inconsistent policy decisions for meat and poultry processor operations during the COVID-19 pandemic, "the state law must yield." *See Savage v. Jones*, 225 U.S. 501, 533 (1912).

### B. Plaintiff's Claims are Preempted by the FMIA.

The FMIA expressly preempts any attempt by the states to impose regulations that are "in addition to, or different than" those prescribed under the Act:

> Requirements within the scope of this [Act] with respect to *premises, facilities and operations* of any establishment at which inspection is provided under subchapter I of this chapter, which are in addition to, or different than those made under [the Act] may not be imposed by any State. . . .

21 U.S.C. § 678 (emphasis added). This provision "sweeps widely" and "prevents a State from imposing any additional or different – even if non-conflicting – requirements that fall within the scope of the Act and concern a slaughterhouse's facilities or operations." *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 459-60 (2012).

Significantly, whether a requirement falls "within the scope of" the FMIA – and is therefore preempted – does not depend on whether the USDA has adopted or rejected the requirement. That is "irrelevant," the Supreme Court has noted, "because the FMIA's preemption clause covers not just conflicting but also different or additional state requirements." *Harris*, 565 U.S. at 461. Instead, the question is whether the USDA could have adopted the requirement: if the USDA "could issue regulations under the FMIA . . . mandating" the requirement at issue, then the state's requirement is preempted. *Id.* at 466. In this case, not only *could* the USDA "issue regulations," it has *in fact* already issued regulations addressing "infectious disease" (9 C.F.R. § 416.5(c)) and personal protective equipment (9 C.F.R. § 416.2(b) and 9 C.F.R § 416.5(b)) within meat processing facilities. The USDA's regulation of "sanitary conditions" (21 U.S.C. § 608) applies to individuals working at meat-processing facilities, not just the animals they process. Its preemptive scope applies broadly to state laws governing the "premises, facilities and operations" of meat-processing companies. 21 U.S.C. § 678. The FSIS has specifically issued regulations under the FMIA pertaining to "[e]mployee hygiene" and "disease control," requiring that any employee who "has or appears to have an infectious disease ... or any other abnormal source of microbial contamination" be excluded from facility operations. 9 C.F.R. § 416.5(c). The regulations also extend to cover personal protective equipment and various "hygienic practices" needed to guard against "the creation of insanitary conditions." *Id.* § 416.5(a), (b). Thus, Tyson's Policy, which serves to prevent the spread of COVID-19, an infectious disease caused by microbial infection, falls within the scope of the FMIA, as evidenced by its implementing regulations.

Preemption applies wherever Plaintiff seeks to impose, as a matter of state law, different requirements for meat-processing employees than those adopted by the USDA. In *Wazelle v. Tyson Foods, Inc.*, the Court stated, "workplace conditions and procedures related to disease prevention

implicate food safety, which could bring Plaintiff's claims under the ambit of the FMIA," No. 2:20-CV-203-Z, 2021 WL 2637335, at *3 (N.D. Tex. June 25, 2021), *vacated and remanded on other grounds*, 2022 WL 4990424 (5th Cir. Oct. 03, 2022). The FMIA expressly preempts any "[r]equirement" that falls "within the scope of" the FMIA, and the FMIA absolutely controls on these matters. The alleged violations of the TDA, THRA, and Title 14 are "in addition to, or different than" the requirements the USDA has imposed regarding infectious disease. Tyson's Policy certainly relates to workplace conditions and procedures concerning disease prevention and implicates food safety. Thus, Plaintiff's claims are preempted under the express terms of 21 U.S.C. § 678.

## CONCLUSION

For the reasons discussed herein, Defendants request that this Court grant their renewed motion and dismiss the three remaining state court claims with prejudice, and Plaintiff's Amended Verified Complaint in its entirety.

Respectfully submitted,

**FISHER & PHILLIPS LLP**

By: */s J. Gregory Grisham*
J. Gregory Grisham (TN BPR#013810)
1715 Aaron Brenner Drive Suite 312
Memphis, Tennessee 38120
(901) 526-0431 – telephone
(901) 526-8183 – facsimile
ggrisham@fisherphillips.com

*Attorneys for Defendants*

FP 45779355.1

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, the foregoing Memorandum in Support of Defendants' Renewed Motion to Dismiss was electronically filed with the Clerk of Court using the CM/ECF system and served on the followings persons:

B. Tyler Brooks
Law Office of B. Tyler Brooks, PLLC
P.O. Box 728
Cary, North Carolina 27512
btb@btylerbrookslawyer.com

Robert E. Barnes
Barnes Law
700 South Flower Street, Suite 1000
Los Angeles, CA 90017
robertbarnes@barneslawllp.com

*Attorneys for Plaintiff*

Robert W. Wilson
Office of the Tennessee Attorney General and Reporter
40 South Main Street, Suite 1014
Memphis, TN 38103-1877
Robert.wilson@ag.tn.gov

Shanell Lanette Tyler
Tennessee Attorney General's Office
315 Deadrick Street
Nashville, TN 38119
Shanell.tyler@ag.tn.gov

*Attorneys for Intervenor State of Tennessee*

This the 2nd day of December 2022.

*/s J. Gregory Grisham*
J. Gregory Grisham
