## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | | |
|---|---|---|
| **ROBBIE JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case 1:21-cv-01161-STA-jay** |
| | ) | |
| **TYSON FOODS, INC. and** | ) | |
| **RHONDA GOOCH,** | ) | |
| | ) | |
| **Defendants,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| **Intervenor.** | ) | |

## STATE OF TENNESSEE'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

The State of Tennessee has intervened in this case for the limited purpose of defending the constitutionality of the Tennessee Human Rights Act, Tenn. Code Ann. §§ 4-21-101 to -607 (THRA); the Tennessee Disability Act, Tenn. Code Ann. §§ 8-50-103, -104 (TDA); and Tenn. Code Ann. §§ 14-1-101 to 14-6-105, which Defendants, Tyson Foods, Inc., and Ronda Gooch, have challenged on preemption grounds. Defendants filed a renewed motion to dismiss Plaintiff's state-law claims on December 2, 2022. (ECF 47.) The State now submits this response in support of the constitutionality of the challenged statutes.

## BACKGROUND

In her Amended Complaint, Plaintiff alleges that Defendants Tyson Foods, Inc., and Ronda Gooch violated state law by mandating involuntary COVID-19 vaccination of their employees without providing religious accommodations or medical exemptions. (ECF 18, PageID 430-35, 441-44, 453-54.)

More specifically, in Count Four of her Amended Complaint, Plaintiff asserts a claim under the THRA (ECF 18, PageID 430-35), which "prohibits discriminatory practice[s] in employment," *Marpaka v. Hefner*, 289 S.W.3d 308, 313 (Tenn. Ct. App. 2008). The Act prohibits an employer from discriminating "against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's . . . religion"; it further restricts an employer from limiting, segregating, or classifying "an employee . . . for employment in any way that would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect the status of an employee, because of . . . religion." Tenn. Code Ann. § 4-21-401(a)(1)-(2).

In Count Seven, Plaintiff asserts a claim under the TDA (ECF 18, PageID 441-44), which "prohibits private employers from discriminating against employees 'based solely upon any physical mental or visual disability of the applicant,'" *Bennett v. Nissan N. Am., Inc.*, 315 S.W.3d 832, 841 (Tenn. Ct. App. 2009) (quoting Tenn. Code Ann. § 8-50-103(b)).

In Count Twelve, Plaintiff claims that Defendants violated Tenn. Code Ann. § 14-2-102 (ECF 18, PageID 453-54), which provides that "[a] private business, governmental entity, school, or local education agency shall not compel or otherwise take an adverse action against a person to compel the person to provide proof of vaccination if the person objects to receiving a COVID-19 vaccine for any reason," Tenn. Code Ann. § 14-2-102(a).

Defendants have moved to dismiss each of these claims, asserting, *inter alia*, that federal law preempts the application of these statutes to Defendants' COVID-19 vaccination policy. (ECF 47, PageID 671-72.)  Defendants specifically contend that the statutes are preempted by President Trump's April 28, 2020 Executive Order 13917 (ECF 47-1, PageID 682-84), and by the Federal Meat Inspection Act (*id.*, PageID 684-86).

## ARGUMENT

As an initial matter, the Court may not need to reach Defendants' constitutional challenge at all.  Federal courts avoid determining constitutional challenges unless doing so is absolutely necessary.  And since Defendants assert other independent bases for dismissal, it may not be necessary for the Court to reach the constitutional issues.  If, however, the Court should determine that it must reach Defendants' constitutional challenge, it should reject the challenge as meritless.  Defendants have not shown that the challenged Tennessee statutes are either expressly or impliedly preempted by Executive Order 13917 or the Federal Meat Inspection Act.

## I.    This Court Should First Resolve Defendants' Non-Constitutional Arguments.

It will be unnecessary for this Court to reach Defendants' constitutional challenge if it can resolve this matter on other, non-constitutional grounds.  Federal courts express a "general preference for declining to pass on unsettled constitutional issues whenever there are alternative grounds available to dispose of a case."  *Osborn v. Griffin*, 865 F.3d 417, 459 (6th Cir. 2017). This "fundamental rule of judicial restraint," *Three Affiliated Tribes v. Wold Eng'g, P.C.*, 467 U.S. 138, 157 (1984), requires a federal court to first "consider nonconstitutional grounds for decision," *Jean v. Nelson*, 472 U.S. 846, 855 (1985) (internal quotation marks omitted). Consequently, "[w]here a statutory or nonconstitutional basis exists for reaching a decision . . ., it is not necessary to reach the constitutional issue." *Adams v. City of Battle Creek*, 250 F.3d 980,

986 (6th Cir. 2001); *see also id.* ("Supreme Court precedent makes clear that courts should avoid unnecessary adjudication of constitutional issues.").

Defendants assert several independent, non-constitutional bases for dismissing Plaintiff's Amended Complaint.  (ECF 47, PageID 671-72.)  Defendants contend that Plaintiff has failed to state a claim for relief under the THRA, the TDA, or "Tenn. Code Ann. § 14-1-101, *et al.*"  (ECF 47-1, PageID 677, 679-80.)  Should this Court conclude that Plaintiff's state-law claims must be dismissed on any of these other bases, it will be unnecessary "to reach the constitutional issue." *Adams*, 250 F.3d at 986.

## II.    The Tennessee Statutes Are Not Preempted.

If the Court deems it necessary to reach the constitutional issue, though, it should hold that the challenged Tennessee statutes are not preempted.

"Federalism, central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect." *Arizona v. United States*, 567 U.S. 387, 398–99 (2012) (citations omitted).  This system "assures a decentralized government that will be more sensitive to the diverse needs of a heterogenous society," and "ensure[s] the protection of our fundamental liberties." *Gregory v. Ashcroft*, 501 U.S. 452, 458, (1991) (citations omitted).  "[P]owers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X.   States therefore "retain substantial sovereign authority" concurrent with that of the Federal Government, "subject only to limitations imposed by the Supremacy Clause." *Gregory*, 501 U.S. at 457 (internal quotation marks omitted).

"The Supremacy Clause provides that the Constitution, federal statutes, and treaties constitute 'the supreme Law of the Land.'"  *Kansas v. Garcia*, 140 S. Ct. 791, 801 (2020)

(quoting U.S. Const. art. VI, cl. 2).  Under that Clause, federal law will preempt conflicting state laws and render them "invalid."  *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 604 (1991) (internal quotation marks omitted).

"In all pre-emption cases," though, courts "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (internal quotation marks omitted).  Congressional purpose "is the ultimate touchstone of pre-emption analysis." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (cleaned up).

Accordingly, if the subject matter of the state law at issue falls within the State's traditional powers, the party arguing federal preemption must show that preemption was the "clear and manifest purpose of Congress."  *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 206 (1983).

The Tennessee statutes Defendants challenge here prohibit employment discrimination, which falls within the traditional powers of the States.  *See Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 287-90 (1987) (analyzing a state employment-discrimination statute under the "clear and manifest purpose" standard).  Defendants must therefore demonstrate that preemption of these statutes was Congress's "clear and manifest purpose."  *Pacific Gas*, 461 U.S. at 206.

A party may challenge the constitutionality of a statute by asserting either a facial or an as-applied challenge.  In a facial challenge, a party must demonstrate that "no set of circumstances exist under which the statute would be valid."  *Green Party v. Hargett*, 791 F.3d 684, 691 (6th Cir. 2015).  When asserting an as-applied challenge, the party must demonstrate that the law is unconstitutional as applied to him.  *Amelkin v. McClure*, 205 F.3d 293, 296 (6th

Cir. 2000).  Here, Defendants' challenge is necessarily an as-applied challenge, since they claim that the Tennessee statutes are preempted only insofar as they are applied to an employer in the meat industry.  (ECF 47-1, PageID 682, 684.)

**A.    Executive Order 13917 does not preempt the Tennessee statutes.**

Defendants cannot demonstrate that a "clear and manifest purpose" of Executive Order 13917 was to preempt Tennessee's employment-discrimination statutes.  Concerned about food-supply-chain disruptions caused by COVID-19-related closures, President Trump issued Executive Order 13917 under the Defense Production Act (DPA) to "ensure a continued supply of protein for Americans."  Executive Order 13917, "Delegating Authority Under the Defense Production Act With Respect to Food Supply Chain Resources During the National Emergency Caused by the Outbreak of COVID-19," 85 Fed. Reg. 26,313, 2020 WL 2089096 (April 28, 2020).  That Order directed the Secretary of the USDA to "take all appropriate action" under Section 101 of the DPA "to ensure that meat and poultry processors continue operations consistent with the guidance for their operations jointly issued by the CDC and OSHA."  *Id.* While the Secretary of the USDA implemented this Order by issuing a letter to "meat and poultry processors" to "utilize" guidance from the CDC and OSHA, that nonbinding letter did not compel processors to take any specific action.[1]

Defendants suggest that the Tennessee statutes are impliedly preempted, on the theory that they conflict with the Executive Order as implemented by the USDA.  (ECF 47-1, PageID 682-84.)   "When facing a question of implied preemption, a court must begin with the presumption that the state law is valid*." Springston v. Consol. Rail Corp.*, 130 F.3d 241, 244

---

[1] *Re: Executive Order Delegating Authority Under the Defense Production Act with Respect to the Food Supply Chain Resources During the National Emergency Caused by the Outbreak of COVID-19*, USDA (May 5, 2020), https://www.usda.gov/sites/default/files/documents/governor-letters-covid.pdf.

(6th Cir. 1997). And Defendants have failed to rebut that presumption, because they fail to show that an actual conflict exists between Executive Order 13917 and the Tennessee statutes.

First, Defendants do not even contend, let alone demonstrate, that it is "impossible [for them] to comply with both state and federal law." *Downhour v. Somani*, 85 F.3d 261, 266 (6th Cir. 1996). Nor do Defendants show how the Tennessee statutes are an obstacle to accomplishment of the "full purposes and objectives" of the Executive Order. *Id.* Defendants do not identify any action on their part that was compelled by Executive Order 13917 or by the nonbinding letter that followed. (ECF 47-1, PageID 682-84.) Defendants acknowledge that the purpose of the Order and related guidance was to prevent the pandemic-related closure of meat facilities (*id.* at PageID 682-83), but Defendants fail to explain how that purpose is at odds with Tennessee's prohibition against employment discrimination. Even Tenn. Code Ann. § 14-2-102(a), which is expressly COVID-related, merely prohibits any adverse action against an employee who does not provide proof of a COVID-19 vaccination if that person objects to receiving a vaccine. Defendants' apparent assumption that their compliance with state antidiscrimination law would lead to the closure of their facility is wholly unsupported.[2]

Second, insofar as Defendants' argument is that the Order's delegation of DPA authority to the Secretary of the USDA manifests a clear intent to occupy the field of employment matters (ECF 55, PageID 872), such an argument is meritless. *Cf. Torres v. Precision Indus., Inc.*, 995 F.3d 485, 491 (6th Cir. 2021) (stating that field preemption precludes States from regulating conduct in a field that Congress, acting within its proper authority, has determined must be

---

[2] Defendants rely on this Court's November 3, 2021 order for the proposition that the Executive Order "'preempt[s] any attempt to challenge the policy balance between securing the food supply for the country and reducing the spread of COVID-19.'" (ECF 47-1, PageID 683-84.) But this Court found only that Defendants had shown "a colorable federal defense" on the basis of the Executive Order, for purposes of ruling on Plaintiff's motion to remand (ECF 17, PageID 385)—it did not hold that the Executive Order preempted the Tennessee statutes at issue.

regulated by its exclusive governance).  There is no indication that, by granting the Secretary of the USDA authority to compel the performance of contracts or orders, the Order intended to assume the entire field of employment matters for meat and poultry processors.   Indeed, Executive Order 13917 itself excepts "contracts of employment" from its delegation of authority to the USDA.   85 Fed. Reg. at 26,314.   This shows a *lack* of intention to occupy the employment-discrimination field.  *See Downhour*, 85 F.3d at 268.

> **B.**      **The Federal Meat Inspection Acts does not preempt the Tennessee statutes.**

Defendants also contend that the Tennessee statutes are preempted by the Federal Meat Inspection Act.  (ECF 47-1, PageID 684.)  They are not.  While the Inspection Act contains an express-preemption provision, Tennessee's employment-discrimination statutes fall outside the scope of this provision.

Congress may expressly preempt state law, *English v. Gen. Elec. Co.*, 496 U.S. 72, 78 (1990), and when it does so, federal courts "focus on the plain wording of the [preemption] clause, which necessarily contains the best evidence of Congress' preemptive intent," *Chambers of Commerce v. Whiting*, 563 U.S. 582, 594 (2011) (internal quotation marks omitted).  Here, the Federal Meat Inspection Act provides that "[r]equirements within the scope of this chapter with respect to premises, facilities and operations of any establishment at which inspection is provided under . . . this chapter, which are in addition to, or different than those made under this chapter may not be imposed by any State."  21 U.S.C. § 678.

The Inspection Act "regulates the inspection, handling, and slaughter of livestock for human consumption."  *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 455 (2012).  Because meat products "are an important source of the Nation's total supply of food," Congress determined it "essential" that "the health and welfare of consumers be protected by assuring that" meat

products "distributed to them are wholesome, not adulterated, and properly marked, labeled, and packaged."  21 U.S.C. § 602.  Consistent with this purpose, the scope of the Inspection Act's preemption provision "expressly limits states in their ability to govern meat inspection and labeling requirements."  *Empacadora de Carnes de Fresnillo, S.A. de C.V. v. Curry*, 476 F.3d 326, 333 (5th Cir. 2007).  While the Inspection Act's preemption provision "sweeps widely," "state laws of general application (workplace safety regulations, building codes, etc.) will usually apply to slaughterhouses" "as long as those laws are consistent with the" Act.  *See Harris*, 565 U.S. at 459, 467 n.10.

The Tennessee statutes fall outside the scope of the Inspection Act's preemption provision.  That federal Act protects consumers from adulterated meat products—it does not protect workers from infectious disease.  *See* 21 U.S.C. § 602; *Empacadora de Carnes*, 476 F.3d at 333.  Meanwhile, the Tennessee statutes Defendants challenge are state laws of general application that prohibit employer discrimination; they do not relate to the "inspection, handling, and slaughter of livestock for human consumption."  *Harris*, 565 U.S. at 455, 467 n.10; *see* Tenn. Code Ann. §§ 4-21-401(a)(1)-(2), 8-50-103(b), 14-2-102(a).

Additionally, the federal agency charged with enforcing the Inspection Act has determined that it has no authority to regulate worker safety.  Congress delegated the Inspection Act's enforcement to the Secretary of the USDA, 21 U.S.C. §§ 601-02, and enforcement responsibility resides with the Food Safety and Inspective Service (FSIS), 7 C.F.R. §§ 2.18(a)(1)(ii)(A)-(B); 2.53(a)(2)(i)-(ii).  FSIS has acknowledged that, as part of its delegated authority "to exercise the functions of the Secretary of [the USDA] under the" Inspection Act, it "has neither the authority nor the expertise to regulate issues related to establishment worker safety."  Modernization of Swine Slaughter Inspection, 84 Fed. Reg. 52,300, 52,315, 2019 WL

4750800 (Oct. 1, 2019) (Final Rule).  Rather, "OSHA is the Federal agency with statutory and regulatory authority to promote workplace safety and health" under the Occupational Safety and Health Act of 1970.  *Id.*

Defendants insist that the Tennessee statutes fall *within* the scope of the Inspection Act's preemption provision, but their arguments fail.  Defendants first contend that because FSIS has issued regulations "addressing 'infectious disease'" and the Inspection Act regulates meat producers' "sanitary conditions," the Act preempts the Tennessee statutes as applied to Defendants.  (ECF 47-1, PageID 685.)  But again, these "infectious disease" and "sanitary conditions" provisions all relate to protecting consumers from adulterated meat and poultry products—not protecting workers from disease.  *See* 21 U.S.C. § 608 (requiring Secretary of the USDA to proscribe regulations to prevent adulterated meat products from being prepared "for commerce"); 9 C.F.R. §§ 416.2(b) (requiring facilities to be built and maintained to "prevent product adulteration and the creation of insanitary conditions"), 416.5(b) (requiring workers to wear "[c]lean garments . . . to prevent adulteration of product and the creation of insanitary conditions"), 416.5(c) (requiring a "person who has or appears to have an infectious disease . . . [to] be excluded from any operations which could result in product adulteration and the creation of insanitary conditions").

Nor can Defendants claim that their COVID-19-vaccine mandate was necessary to prevent meat product adulteration.  Defendants imposed their vaccine mandate to "protect team members, their families and their communities," as part of a "broad array of workplace safety measures."[3]  A year later, Defendants lifted the mandate after Tyson Foods, Inc. "generally

---

[3] *See Tyson Foods to Require COVID-19 Vaccinations for its U.S. Workforce*, Tyson Foods (August 3, 2021), https://www.tysonfoods.com/news/news-releases/2021/8/tyson-foods-require-covid-19-vaccinations-its-us-workforce.

improved [its] ability to operate . . . effectively in fiscal 2022."[4]  If protecting consumers from adulterated meat was the purpose of Defendants' vaccine mandate, their decision to lift the mandate would prevent them from adequately "addressing 'infectious disease'" as required by FSIS.  (ECF 47-1, PageID 685.)

Finally, Defendants are wrong to rely on *Wazelle v. Tyson Foods, Inc.,* No. 2:20-cv-00203, 2021 WL 2637335 (N.D. Tex., June 25, 2021).  (ECF 47-1, PageID 685-86.)  The district court in *Wazelle* considered only whether the defendant stated a "plausible" or "colorable" federal defense for purposes of federal-officer removal jurisdiction, by asserting that the Federal Meat Inspection Act preempts workplace safety regulations.  While the district court found that the defendant had asserted a plausible defense, the court did not "express[] any opinion" on the merits of that defense.  *Wazelle*, 2021 WL 2637335, at \*2-3.  Furthermore, the Fifth Circuit recently vacated the district-court judgment in *Wazelle*, concluding that the defendant was not acting under direction of the federal government for purposes of federal-officer removal jurisdiction.  *See Wazelle v. Tyson Foods, Inc.*, No. 22-10061, 2022 WL 4990424, at \*2 (5th Cir. Oct. 3, 2022); *see also id.* ("[A]lthough the food industry was designated as 'critical infrastructure,' 'the federal government's guidance to critical infrastructure industries was nonbinding.'") (quoting *Glenn v. Tyson Foods, Inc.*, 40 F.4th 230, 234-35 (5th Cir. 2022), *pet. for cert. filed* (U.S. Nov. 15, 2022) (No. 22-455)).

---

[4] Tom Polansek, *Tyson Foods ends COVID-19 vaccine mandate for employees*, Reuters (Nov. 16, 2022, 5:04 PM), https://www.reuters.com/business/healthcare-pharmaceuticals/tyson-foods-ends-covid-19-vaccine-mandate-employees-2022-11-16/.

**CONCLUSION**

For the reasons stated, and if the Court determines that it needs to reach Defendants' constitutional challenge, the Court should hold that the challenged Tennessee statutes are not preempted.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter


s/Robert W. Wilson
Robert W. Wilson (TN BPR No. 34492)
Senior Assistant Attorney General
Office of the Tennessee Attorney General
40 South Main Street, Suite 1014
Memphis, TN 38103
(901) 543-9031
Robert.Wilson@ag.tn.gov

Shanell L. Tyler (TN BPR No. 36232)
Assistant Attorney General
Education and Employment Division
P.O. Box 20207
Nashville, Tennessee 37202-0207
(615) 532-9631
Shanell.Tyler@ag.tn.gov




**CERTIFICATE OF SERVICE**

I hereby certify that on this the 3rd day of January, 2023, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing report.  Parties may access this filing through the Court's electronic filing system.

s/Robert W. Wilson
Senior Assistant Attorney General