IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| ROBBIE JOHNSON | ) |
| | ) |
|     Plaintiff, | ) CIVIL ACTION NO: 1:21-cv-01161-STA-jay |
| | ) |
| v. | ) |
| | ) |
| TYSON FOODS, INC. and | ) |
| RONDA GOOCH, | ) |
| | ) |
|     Defendants. | ) |

**REPLY IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO DISMISS PLAINTIFF'S AMENDED VERIFIED COMPLAINT**

Defendants Tyson Foods, Inc. ("Tyson") and Ronda Gooch ("Gooch") (collectively, "Defendants") hereby submit this Reply in Support of Defendants' Renewed Motion to Dismiss Plaintiff's Amended Verified Complaint ("Motion")[1] and state the following:

## LEGAL ANALYSIS

**I.  Plaintiff Fails to State a Claim Under the THRA Because Plaintiff Has Not Stated a Claim for Religious Discrimination and Defendants Have No Duty to Accommodate Plaintiff's Religious Beliefs (Count Four).**

    **A.  Plaintiff Has Not Stated a Claim for Religious Discrimination Under the Tennessee Human Rights Act ("THRA").**

Plaintiff contends that Defendants' argument that Tyson cannot have discriminated against her because its vaccine policy treated all employees equally is a "circular argument" that "misses the point entirely." Unsurprisingly, Plaintiff cites no authority to support her position. Further,

---

[1] The Memorandum of Law In Opposition to Defendants' Renewed Motion to Dismiss Plaintiff's Amended Verified Complaint filed by Plaintiff shall be cited as "D.E. 48, Response."  The Amended Verified Complaint will be referred to as "Amended Complaint."

1

she fails to distinguish *Phillips v. Interstate Hotels Corp.,* 974 S.W.2d 680, 686 (Tenn. 1998), in which the Tennessee Supreme Court held that no discrimination exists where everyone is subject to the same policy. *Cf. Williams v. Ga. Dept. of Corrections,* No. 1:13-CV-03084-WSD, 2014 WL 3956039, at *4 (N.D. Ga. Aug. 13, 2014) ("Because [defendant's] policy applie[d] equally to all employees. . . it was not reasonable for [p]laintiff to believe that he had [been] racially discriminated against.").

Plaintiff further asserts that equal application of Tyson's policy to everyone in the workplace is irrelevant when determining whether the policy affected her in a discriminatory fashion. (D.E. 48, Response, at pp. 3-4). However, Plaintiff makes no allegation in Count Four of her Amended Complaint that Tyson's policy had a disparate impact[2] on employees whose religious beliefs prevented them from being vaccinated, but rather only alleges disparate treatment. (D.E. 18, at ¶¶143-64). The allegations Plaintiff cites in her Response (D.E. 48, Response, at pp. 3-4, ¶¶157, 159 & 160) focus on the accommodation Tyson offered but fail to include allegations that the vaccination policy was facially discriminatory or applied in a discriminatory manner. Although Plaintiff recites the elements of a *prima facie* case of religious discrimination in her Amended Complaint, she failed to sufficiently plead "direct or inferential allegations with respect to all material elements of" a religious discrimination claim. *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). Rather, Plaintiff simply alleges she has "faced disciplinary action and termination" for failing to comply with Tyson's Policy and contends Tyson's Policy "discriminates against employees who do not wish to receive the vaccine on religious grounds." (D.E. 18, at ¶¶157-58). Such an allegation does not plausibly allege that she "was treated less

---

[2] *Moore v. Nashville Elec. Power Bd,* 72 S.W. 3d 643, 651 (Tenn. Ct. App. 2002) (discussing *prima facie* requirements for a disparate impact claim under the THRA).

2

favorably than similarly-situated nonprotected employees." (D.E. 18, at ¶149 (*quoting McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-804 (1973))). Rather, such allegations assert only a failure to accommodate, discussed *infra*. Therefore, Plaintiff's allegations are insufficient "to raise a right to relief above a speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citations omitted). Consequently, Plaintiff's religious discrimination claim under the THRA fails as a matter of law.

### B. The THRA Does Not Require Tyson to Accommodate Plaintiff's Religious Beliefs

In support of her religious discrimination claim under the THRA, Plaintiff conflates the Sixth Circuit's and the Tennessee Supreme Court's articulation that claims under the THRA are "analyzed in the same manner" as Title VII claims and that the purpose of the THRA "is to provide for execution . . . of the policies embodied in the federal civil rights laws" with her position that the THRA imposes a reasonable accommodation requirement. (D.E. 29, at p.17). Neither *Tetro v. Elliott Popham, Inc*. nor *Campbell v. Florida Steel Corp*. stand for this premise. 173 F.3d 988, 993 (6th Cir. 1999); 919 S.W.2d 26, 31 (Tenn. 1996).

In *Tetro* and *Campbell*, the courts addressed a race discrimination claim and sexual harassment claims, respectively, under Title VII and the THRA. *Id*. Neither addressed religious discrimination claims, much less whether the THRA imposes an accommodation requirement. That race discrimination and harassment claims under the two statutes are analyzed in the same manner and do not support Plaintiff's contention that the THRA, like Title VII, requires religious accommodation. Indeed, in *Booker v. The Boeing Company,* which Plaintiff ignores, the Tennessee Supreme Court explicitly stated that Tennessee courts must conduct their own analysis where the language of Title VII and the THRA differ. *See* 188 S.W.3d 639, 647 (Tenn. 2006) ("[W]e will not apply the reasoning and conclusions of federal civil rights decisions where doing so would

3

conflict with the THRA."). Title VII's reasonable accommodation requirement and the THRA's lack thereof is one such difference. No federal or state court in Tennessee has held that the THRA requires employers to accommodate employees' religious beliefs and practices. Therefore, Plaintiff's failure to accommodate claim under the THRA should be dismissed for failure to state a claim.

II.     **Plaintiff Cannot Salvage Her TDA Claims Because She Has Not Stated a Claim for Discrimination and the TDA Does Not Require Employers to Reasonably Accommodate Disabled Employees (Count Seven).**

Plaintiff asserts that Paragraphs 200, 201, 202, 204 and 206 of her Amended Complaint sufficiently allege the three requisite elements of a disability discrimination claim. They do not. Specifically, the allegations in Paragraph 202 that Tyson regarded her as disabled "based upon Defendants' erroneous belief that Plaintiff lacks immunity to COVID-19" do not state a "regarded as" claim. (D.E. 48, Response, at p. 6). "A claim brought under the THA [Tennessee Handicap Act, now known as the TDA] is analyzed under the same principles as those utilized for the Americans with Disabilities Act ["ADA"]. *See Sasser v. Quebecor Printing (USA) Corp.*, 159 S.W.3d 579, 584 (Tenn. Ct. App.2004). Thus, to state a "regarded as" claim under the TDA, Plaintiff must allege, among other things, that she has an impairment or that her employer thinks she has an impairment. *Poe v. Brunswick Corp.*, No. 1:17-CV-202, 2019 WL 2753985, at *11 (E.D. Tenn. July 1, 2019). Plaintiff, however, offers no authority to support the position that a belief that she (and everyone else) is *susceptible* to COVID-19 sufficiently alleges an impairment, i.e., a physiological disorder or physiological condition affecting a major bodily system. 29 C.F.R. § 1630.2. Recently, in *Speaks v. Health Systems Management, Inc.*, the district court granted the defendant's motion to dismiss the plaintiff's "regarded as" disability discrimination claim under the ADA based on her allegation that she was terminated for refusing to receive a COVID-19

vaccination in compliance with the defendant's policy. No. 522CV00077KDBDCK, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022). *see also Lundstrom v. Contra Costa Health Services,* No. 22-CV-06227-CRB, 2022 WL 17330842 at *5 (C.D. Cal. 2022) (district court, *inter alia,* dismissed plaintiff's "regarded as" disability discrimination claim under the ADA where plaintiff was terminated for failure to comply with the defendant's COVID-19 vaccination policy).

Further, Plaintiff dismisses Tyson's argument that its policy applied to all employees, asserting "the only relevant inquiry is whether Tyson's vaccine mandate disparately treated unvaccinated employees like Plaintiff on the one hand, vis-à-vis vaccinated employees on the other, upon a basis of their perceived disability." (D.E.48, Response, at p. 7). Tyson's policy did not "disparately treat" Plaintiff (or any other employee) since it applied equally to all employees. See *Phillips,* 974 S.W.2d at 686.

Thus, Plaintiff has not alleged a plausible "regarded as" disability discrimination claim, and her TDA discrimination claim must be dismissed. Finally, Plaintiff's Response ignores the multiple cases cited by Defendants (D.E. 47-1, at p. 6) that hold the TDA imposes no accommodation requirement on employers. Therefore, Plaintiff's TDA failure to accommodate claim should be dismissed.

### III. **Plaintiff's Claim Alleging a Violation of Tennessee Code §§ 14-1-101 et seq. ("Title 14") (Twelfth Cause of Action) Should Be Dismissed.**

Tenn. Code Ann. § 14-2-102 provides, among other things, that "[a] private business, governmental entity, school, or local education agency shall not compel or otherwise take an adverse action against a person *to compel the person to provide proof of vaccination* if the person objects to receiving a COVID-19 vaccine for any reason." Tenn. Code Ann. § 14-2-102(a) (emphasis added). Plaintiff's Amended Complaint does not allege that Tyson compelled or took an adverse action to "compel" Plaintiff "to provide proof of vaccination" (D.E. 18 at ¶¶ 1-268),

5

which is an essential element of a claim under Title 14. See *Sadler v. Tyson Foods, Inc.*, No. 1:22-cv-2203-STA-jay, 2022 WL 1721058, at *3 (W.D. Tenn. May 27, 2022) ("The Court construes Tenn. Code Ann. § 14–2–102(a) to require a person injured under the section to prove the following elements: (1) that a 'private business' or other covered entity (2) compelled the person to provide 'proof of vaccination' or, in the alternative, took an 'adverse action' against the person to compel the person to provide 'proof of vaccination' (3) over the person's objection to receiving a COVID-19 vaccine *for any reason*.") (emphasis in original).

Further, Plaintiff asserts the Court should reject Defendants' argument that her Title 14 claim should be dismissed because the complained of conduct occurred before the effective date of the statute because "[a] plain reading of Plaintiff's pleadings and Title 14 respectively, proves otherwise." (D.E. 48, Response, at p. 10).

First, Plaintiff argues that "Tyson unquestionably took adverse action against Plaintiff well after the November 12, 2021, enactment of Title 14, by imposing its COVID-19 vaccine mandate prospectively." *Id.*  Plaintiff's Amended Complaint, however, alleges that Tyson terminated her employment on November 1, 2021 (D.E. 18, at ¶¶ 11, 9) **before** the effective date of Title 14; it contains no allegation that Tyson subjected her to an adverse action following effective date of Title 14. (D.E. 18, at ¶¶ 1-106). Next, with respect to Plaintiff's argument that Title 14 applies retroactively, the only provision of Title 14 the General Assembly made retroactive is Tenn. Code Ann. § 14-3-101(c). The provisions of Title 14 cited by Plaintiff do not provide for retroactive application of the law (D.E. 48, Response, at pp. 10-11).   Plaintiff offers no case authority to support her argument that Title 14 should be applied retroactively or to refute the cases Defendants cited in their Motion. (D.E. 48-1, at 7-8).  Consequently, the Court should dismiss Plaintiff's Title 14 claim.

**IV.     The Court Should Dismiss the Claims Against Rhonda Gooch**

Plaintiff lumped Tyson and Rhonda Gooch together as "Tyson" in her Response. The Response does not address Defendants' motion to dismiss the claims against Gooch. For example, Plaintiff did not attempt to refute that there is no individual liability under the THRA or the TDA against Gooch. Plaintiff did not respond to Defendants' arguments that Gooch is not subject to liability under Title 14. All claims against Gooch should be dismissed.

**V.     The April 28, 2020, Executive Order ("Executive Order") and the FMIA Preempt Plaintiff's Claims.**

**A.  The Executive Order Preempts Plaintiff's Claims.**

Plaintiff makes three arguments that the Executive Order does not preempt her claims: (1) the Executive Order was not a proper exercise of authority under the Defense Production Act ("DPA"); (2) the Executive Order simply designated "the meat and poultry industry to fall under" the definition of critical and strategic materials within the DPA and delegated authority to the Secretary of Agriculture; and (3) the USDA has not exercised the authority delegated by the Executive Order 13917. (D.E. 29, at pp.25-28). Each of these arguments is without merit.

First, Plaintiff offers no explanation why the Executive Order does not "constitute an exercise of [DPA] authority." *Id.* at p.27. Second, Plaintiff's characterization of the content of the Order represents a cherry-picked, unreasonably limited recitation of the substance and scope of the Order. In stark contrast to Plaintiff's portrayal, the Executive Order specifically discusses the importance of the meat and poultry industry's ability to continue operations and the threat COVID-19 poses to that ability. Specifically, the Executive Order states:

> It is important that processors of [meat and poultry] . . . continue operating and fulfilling orders to ensure a continued supply of protein for Americans. However, outbreaks of COVID-19 among workers at some processing facilities have led to the reduction in some of those facilities' production capacity. . . .[C]losures threaten the continued functioning of the national meat and poultry supply chain, undermining critical infrastructure during the

national emergency.

85 Fed. Reg. 26,313 (Apr. 28, 2020). Thus, the Executive Order delegated authority to the Secretary of Agriculture "to ensure the continued supply of meat and poultry, consistent with the guidance for the operations of meat and poultry processing facilities jointly issued by the CDC and OSHA." *Id.* Plaintiff's assertion that the Secretary of Agriculture and the USDA have not acted on their delegated authority under the Order ignores the USDA's actions. (D.E. 29, at p.27). The *very day* the Executive Order was issued, the USDA disseminated a statement citing it and proclaiming that "[m]aintaining the health and safety of these heroic employees in order to ensure that these critical facilities can continue operating is paramount" and the USDA would "continue to work with the CDC, OSHA, FDA, and state and local officials to ensure that facilities [are] implementing this guidance to keep employees safe [and] continue operating." USDA Release No. 0234.20.[3] On May 5, 2020, the Secretary of Agriculture sent letters to leaders of meat processing companies "establishing the [USDA's] clear expectations for the implementation of President Donald J. Trump's Executive Order," noting the Order "directs plants to follow the [CDC and OSHA] guidance specific to the meat processing industry to keep these critical facilities open while maintaining worker safety." USDA Release No. 0243.20.[4] The release regarding the letters further stated, "[u]nder the Executive Order and the authority of the [DPA], USDA will work with meat processing to affirm they will operate in accordance with the CDC and OSHA guidance" and "expect[s] our partners across the country to work with us on this issue." *Id.* Tyson's Policy did just that: it implemented CDC guidance regarding vaccination to maintain worker and community

---

[3]   Available at https://www.usda.gov/media/press-releases/2020/04/28/usda-implement-president- trumps-executive-order-meat-and-poultry.

[4]   Available at https://www.usda.gov/media/press-releases/2020/05/06/secretary-perdue-issues-letters-meat-packing-expectations.

safety and keep its facilities operational to secure the food supply in accordance with the Order. Consequently, the Order preempts Plaintiff's state law claims.

### B. The FMIA Preempts Plaintiff's State Law Claims

Plaintiff asserts that the Federal Meat Inspection Act ("FMIA") does not preempt her state law claims, but she fails to recognize that prevention of infectious diseases spread by employees explicitly falls within the scope of FMIA and is thus preempted by it.

The FMIA's preemption clause states that "[r]equirements within the scope" of the FMIA are preempted with "respect to premises, facilities, and operations" of any establishment. 21 U.S.C § 678. And in defining a statute's scope for preemption purposes, a court may look to "any regulations enacted pursuant to the statute's authority." *In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Pracs. Litig.*, 621 F.3d 781, 792 (8th Cir. 2010) (citations omitted); *see also Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) ("Federal regulations have no less pre-emptive effect than federal statutes."). The Supreme Court has made clear that "[t]he FMIA's preemption clause sweeps widely," and has relied on the statute's implementing regulations in assessing that scope. *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 459 (2012). The FMIA regulates a "broad range of activities at slaughterhouses" and the USDA's Food Safety and Inspection Service ("FSIS") "has issued extensive regulations to govern the inspection of animals and meat, as well as other aspects of slaughterhouses' operations and facilities." *Id*. at 456. Of those "other aspects," the FSIS has specifically issued regulations under the FMIA pertaining to "[e]mployee hygiene" and "disease control," requiring that any employee who "has or appears to have an infectious disease . . . or any other abnormal source of microbial contamination" be excluded from facility operations. 9 C.F.R. § 416.5(c). The regulations also extend to cover personal protective equipment and various "hygienic practices" needed to guard against "the

9

creation of insanitary conditions." *Id.* § 416.5(a), (b). Thus, Tyson's Policy, which serves to prevent the spread of COVID-19, falls within the scope of the FMIA, as evidenced by its implementing regulations. *See Wazelle v. Tyson Foods, Inc.*, No. 2:20-cv-203-Z, 2021 WL 2637335, *3 (N.D. Tex. June 25, 2021) ("[W]orkplace conditions and procedures related to disease prevention implicate food safety, which could bring Plaintiffs' claims under the ambit of the FMIA."), *vacated and remanded on other grounds*, No. 22-10061, 2022 WL 4990424 (5th Cir. Oct. 03, 2022); *Johnson v. Tyson Foods, Inc.,* 580 F. Supp. 3d 382 (N.D. Tex. 2022) (District Court dismissed state statutory claim finding, *inter alia*, that claim was subject to preemption under FMIA and Executive Order 13917).

Plaintiff relies on *United States v. Stanko* for the position that Plaintiff's claims are outside the FMIA's preemptive reach. 491 F.3d 408 (8th Cir. 2007). However, in *Stanko*, the claims at issue pertained to unfair trade practices, an issue neither the FMIA nor its regulations address. *Id.* Therefore, *Stanko* is distinguishable from the issue at hand – infectious disease prevention – which the FSIS regulations cited above have expressly addressed. Plaintiff's attempt to distinguish *Nat'l Meat Ass'n v. Harris* likewise fails, as Plaintiff's argument neglects to recognize that the FMIA's preemption clause precludes not just conflicting state requirements but also any that are "in addition to, or different than those made under" the FMIA, *Nat'l Meat Ass'n*, 565 U.S. at 458, such as the FMIA regulations on employee hygiene. Therefore, the FMIA preempts Plaintiff's state law claims arising from Tyson's Policy, which Tyson implemented to prevent the spread of an infectious disease.

## CONCLUSION

For the reasons discussed herein, Defendants request that this Court grant their motion and dismiss Plaintiff's Amended Complaint in its entirety, with prejudice.

10

                                        Respectfully submitted,

                                        **FISHER & PHILLIPS LLP**

By:    */s J. Gregory Grisham*
           J. Gregory Grisham (TN BPR#013810)
           1715 Aaron Brenner Drive Suite 312
           Memphis, Tennessee 38120
           (901) 526-0431 – telephone
           (901) 526-8183 – facsimile
           ggrisham@fisherphillips.com

           *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 30th day of January 2023, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system and served on the followings persons:

B. Tyler Brooks
Law Office of B. Tyler Brooks, PLLC
P.O. Box 728
Cary, North Carolina 27512
btb@btylerbrookslawyer.com

Robert E. Barnes
Barnes Law
700 South Flower Street, Suite 1000
Los Angeles, CA 90017
robertbarnes@barneslawllp.com

*Attorneys for Plaintiff*


Robert W. Wilson
Office of the Tennessee Attorney General and Reporter
40 South Main Street, Suite 1014
Memphis, TN 38103-1877
Robert.wilson@ag.tn.gov

Shanell Lanette Tyler
Tennessee Attorney General's Office
315 Deadrick Street
Nashville, TN 38119
Shanell.tyler@ag.tn.gov

*Attorneys for Intervenor State of Tennessee*

                                                                           */s J. Gregory Grisham*
                                                                           J. Gregory Grisham

FP 46173012.4