IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| ROBBIE JOHNSON, | ) |
| | ) |
|     Plaintiff, | ) |
| | )   NO. 21–cv–01161–STA–jay |
| vs. | ) |
| | ) |
| TYSON FOODS, INC. and | ) |
| RHONDA GOOCH, | ) |
| | ) |
|     Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Plaintiff Robbie Johnson filed this action in the Dyer County Chancery Court against her employer Tyson Foods, Inc. and a human resources manager at the company Rhonda Gooch. Defendant Tyson Foods removed the action, asserting that this Court has jurisdiction over the matter under diversity–of–citizenship jurisdiction, 28 U.S.C. §1332, and federal officer jurisdiction, 28 U.S.C. § 1442(a)(1). On November 3, 2021, the Court denied Plaintiff's motion to remand finding that the Court has jurisdiction under 28 U.S.C. § 1442(a)(1). (ECF No. 17.) Plaintiff filed an amended complaint on November 18, 2021. (ECF No. 18.)

The amended complaint alleges that Defendants violated Plaintiff's rights under the First, Fourth, and Fifth Amendments to the United States Constitution; the Tennessee Constitution, Article I, Section 3; the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12010 *et seq.*; the Nuremberg Code; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 360bbb–3; the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4–21–101 *et seq.*; the Tennessee Disability Act ("TDA"), Tenn. Code Ann. §

1

8–50–103 *et seq.*; and Tenn. Code Ann. § 14–1–101 *et seq.* ("Title 14"), by requiring Plaintiff to be vaccinated with the COVID–19 vaccine prior to November 1, 2021, or else go on unpaid leave without the assurance of ever reclaiming her job. Plaintiff alleges that when she refused this option, Defendants terminated her from her employment on November 1, 2021. (Amd. Cmplt. ¶¶ 9 (alleging that "on November 1, 2021, Defendants sent Plaintiff a permanent discharge notice, notifying her that she was fired"); *see also id.* ¶¶ 11, 14, 159, 160.) Plaintiff also alleged a state common law claim of assault.

On June 15, 2022, the Court partially granted and partially denied Defendant's first motion to dismiss. (ECF No. 35.) The motion was granted with prejudice as to Claims One (Free Exercise Clause of the First Amendment), Two (religious discrimination under the Tennessee State Constitution), Five (RFRA), Nine (FDCA), Ten (Nuremberg Code), Eleven (Fourth and Fifth Amendments), and Thirteen (common law assault).[1] The motion was granted without prejudice as to Claims Three (Title VII) and Six (ADA) for failure to exhaust administrative remedies.

In their first motion to dismiss, Defendants contended that the remaining state law claims, Counts Four (THRA), Seven (TDA), and Twelve (Title 14), were preempted by (1) President Trump's Executive Order, (2) the Federal Meat Inspection Act, 21 U.S.C. §§ 601 *et seq.*, and (3) the Poultry Production Inspection Act, 21 U.S.C. § 451 *et seq.* Because there was nothing in the record to show that the Tennessee Attorney General had been notified of the constitutional challenge to the state statutory claims, the Court denied Defendant's motion to dismiss these three state law claims (claims Four, Seven, Twelve) without prejudice. Defendant was given twenty–eight days in which to notify the Court of its compliance with Tenn. Code Ann. § 29–14–107(b)

---

[1] The Court held that Defendant did not act as a government or state actor during the relevant events.

2

and Tenn. R. Civ. P. 24.04.  On September 12, 2022, the Court granted the motion to intervene of the State of Tennessee. (ECF No. 41.)

Defendants have now filed a second motion to dismiss the amended complaint.  (ECF No. 47.)  Plaintiff has responded to the motion (ECF No. 48), and Defendants have filed a reply to the response.  (ECF No. 50.)  Additionally, the State has filed a response to the motion to dismiss. (ECF No. 49.)  Defendants have filed a reply to the State's response. (ECF No. 51.)  For the reasons set forth below, Defendants' second motion to dismiss is **GRANTED**.

## Standard of Review

The Federal Rules of Civil Procedure require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint may be attacked for failure "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion to dismiss, a Court will presume that all the factual allegations in the complaint are true and will draw all reasonable inferences in favor of the nonmoving party. *See Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)).  "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)." *Id.* (citations omitted). That is, a complaint must contain enough facts "to state a claim to relief that is plausible on its face." *Id.* at 570. A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). If the Court cannot "infer more than the mere possibility of misconduct, the complaint has alleged — but has not 'show[n]' — 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

## Analysis

The Court will first look at Plaintiff's claim that Defendants discriminated against her based on her religious beliefs and failed to accommodate those beliefs in violation of the THRA (Claim Four). Plaintiff specifically alleges that she holds sincere religious beliefs that preclude her from receiving a COVID–19 vaccine and that Defendant's proposed accommodation of one year of unpaid leave is "no reasonable accommodation at all, but rather a punitive measure taken against employees who choose to exercise their religious rights." (Amd. Cmplt. ¶ 159, ECF No. 18.)

The THRA "prohibits discriminatory practice[s] in employment." *Marpaka v. Hefner*, 289 S.W.3d 308, 313 (Tenn. Ct. App. 2008). Under the THRA, an employer may not discriminate "against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's . . . religion" and restricts an employer from limiting, segregating, or classifying "an employee . . . for employment in any way that would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect the status of an employee, because of . . . religion." Tenn. Code Ann. § 4–21–401(a)(1)–(2).

4

Claims under the THRA are analyzed in the same manner as claims brought under Title VII of the Civil Rights Act of 1964, although the protections they provide are not necessarily coextensive, as discussed below. *See Barnes v. Goodyear Tire and Rubber Co.*, 48 S.W.3d 698, 705 (Tenn. 2000), *abrogated on other grounds by Gossett v. Tractor Supply Co.*, 320 S.W.3d 777 (Tenn. 2010). In order to establish a prima facie case of religious discrimination based on a disparate treatment theory, Plaintiff must prove that she is a member of a protected group, was qualified for her position, suffered an adverse employment action, and was treated less favorably than a similarly–situated employee outside the protected class.[2] *Averett v. Honda of Am. Mfg., Inc.*, 2010 WL 522826, at *9 (S.D. Ohio Feb. 9, 2010).

Defendants argue that Plaintiff has not alleged a prima face case under the THRA for religious discrimination because Defendants treated her the same as they treated other employees. In support of their argument, Defendants cite *Phillips v. Interstate Hotels Corp.*, 974 S.W.2d 680 (Tenn. 1998) (finding, in a public accommodation case under the THRA, no discrimination on the basis of race when "all patrons were affected equally by the music selection policy, as every patron, regardless of race, was subjected to the same music selections.").

Plaintiff has responded that the application of Tyson's vaccine mandate to everyone in the workplace is irrelevant when determining whether an individual plaintiff was discriminated against. She argues that what is relevant is whether Tyson's mandate treated unvaccinated employees like Plaintiff differently than vaccinated employees based on Plaintiff's religious beliefs. However, she does not dispute that all Tyson's employees were faced with the same vaccination requirement.

---

[2] In their amended complaint, Plaintiffs have listed these same elements as being required to state a claim of religious discrimination under the THRA. (Amd. Cmplt. ¶ 171, ECF No. 21.)

5

As noted by Defendants, Plaintiff has cited no authority to support her position and has failed to distinguish *Phillips v. Interstate Hotels Corp.*, in which the Tennessee Supreme Court held that no discrimination exists when everyone is subject to the same policy. "Disparate treatment cases of discrimination occur [when] an employer has treated a particular person less favorably than others because of a protected trait." *Goree v. United Parcel Serv., Inc.*, 490 S.W.3d 413, 426 (Tenn. Ct. App. 2015) (cleaned up). *See also Huguley v. Gen. Motors Corp.*, 52 F.3d 1364, 1370 (6th Cir. 1995) (explaining that disparate treatment "occurs when an employer treats some employees less favorably than others because of race, religion, sex, or the like").

In the present case, it is undisputed that Plaintiff was treated no differently than any other employee. All employees were required to be vaccinated by a certain date regardless of their religious beliefs. Accordingly, the portion of Plaintiff's claim four alleging disparate treatment is dismissed.

Defendants also contend that the THRA does not require an employer to accommodate an employee's religious beliefs.[3] Plaintiff acknowledges that there is no explicit language in the THRA imposing a duty to accommodate religious beliefs, but she argues that, because the Tennessee Supreme Court has held that THRA claims are analyzed in the same manner as Title VII claims and Title VII does prescribe a duty to accommodate an employee's religious beliefs, a duty to accommodate can be read into the THRA.[4]

---

[3] This Court was confronted with this issue in a similar case, *Matthews v. Tyson Foods, Inc.*, 2023 WL 25733, at *2 (W.D. Tenn. Jan. 3, 2023). However, there was no need to decide the issue in that case because the plaintiff voluntarily dismissed his THRA claim.

[4] It is well-settled that Title VII provides for a duty to accommodate an employee's religious beliefs. *See, e.g.*, *Collins v. Tyson Foods, Inc.*, 2023 WL 2731047, at *6 (W.D. Ky. Mar. 30, 2023) (finding that the plaintiff employee had stated a Title VII failure to accommodate claim based on Tyson's proposed accommodation for unvaccinated workers to take one year of unprotected, unpaid leave and possibly return to their positions only if they become immunized, which a jury could find was not a reasonable accommodation for plaintiff's religious beliefs).

The Court is mindful that THRA claims are analyzed in the same manner as federal Title VII claims. *See Tetro v. Elliott Popham, Inc.*, 173 F.3d 988, 993 (6th Cir. 1999) ("The Tennessee Supreme Court has held that THRA claims are analyzed in the same manner as Title VII claims. (citing *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996))). However, Plaintiff has conflated the directive that claims under the THRA are "analyzed" in the same manner as Title VII claims and that the purpose of the THRA "is to provide for execution . . . of the policies embodied in the federal civil rights laws" with her position that the THRA imposes a reasonable accommodation requirement. Contrary to Plaintiff's argument, the Tennessee Supreme Court has explained that, when interpreting Tennessee's anti–discrimination laws, courts are "neither bound by nor restricted by the federal law," although courts "may look to federal law for guidance in enforcing our own anti–discrimination laws." *Barnes*, 48 S.W.3d at 705.

When the language of the THRA differs from that found in Title VII, courts must conduct their own analysis on whether to follow federal law when interpreting the THRA. *See Booker v. The Boeing Co.*, 188 S.W.3d 639, 647 (Tenn. 2006) ("[W]e will not apply the reasoning and conclusions of federal civil rights decisions [when] doing so would conflict with the THRA."). Moreover, courts should "resist reading words or elements into a statute that do not appear on its face." *Bates v. United States*, 522 U.S. 23, 29 (1997). This Court is not aware of any case law holding that the THRA requires employers to accommodate an employee's religious beliefs and practices, and the Court will not read such a requirement into the statute. Plaintiff's Claim Four fails as a matter of law because there is no duty to accommodate an employee's religious beliefs under the THRA.

In Claim Seven, Plaintiff asserts a claim under the Tennessee Disability Act[5] which "prohibits private employers from discriminating against employees 'based solely upon any physical mental or visual disability of the applicant.'" *Bennett v. Nissan N. Am., Inc.*, 315 S.W.3d 832, 841 (Tenn. Ct. App. 2009) (quoting Tenn. Code Ann. § 8–50–103(b)). Plaintiff alleges that Defendants view her as being "disabled" because she lacks immunity to COVID–19 obtained by being vaccinated as opposed to natural immunity from a prior infection.

There are three elements to a claim for discrimination under the TDA: a plaintiff must show: "(1) that the individual was qualified for the position; (2) that the individual was disabled; and (3) that the individual suffered an adverse employment action because of that disability." *Bennett*, 315 S.W.3d at 841 (citations omitted). "The threshold issue, however, is whether the claimant is 'disabled.'" *Id.* (citations omitted).

Although the TDA does not define the term "disabled," the definition contained in the THRA is applicable to TDA claims. *Jones v. Sharp Elecs. Corp.*, 2014 WL 806131, at *3 (Tenn. Ct. App. Feb. 28, 2014) (citation omitted). The THRA defines disability with respect to a person as:

> (i) A physical or mental impairment that substantially limits one (1) or more of such person's major life activities;
> (ii) A record of having such an impairment; or
> (iii) Being regarded as having such an impairment[.]

Tenn. Code Ann. § 4–21–102(3)(A).

Defendants contend, and the Court agrees, that Plaintiff has failed to allege a cause of action in Claim Seven because Plaintiff has not shown that her unvaccinated status equates to an

---

[5] The Tennessee Disability Act was formerly known as the Tennessee Handicap Act. Effective April 7, 2008, the legislature amended the THA to change all references to "handicap" within the Act to "disability" including changing the name; however, the substance of the THA was not changed. *See* 2008 Tenn. Pub. Acts, ch. 706, §§ 3, 5.

8

actual or perceived disability. The Tennessee Court of Appeals in *Bennett v. Nissan N. Am., Inc.*, explained that "merely having an impairment does not make one disabled." 315 S.W.3d at 843 (citation omitted). Instead, a "claimant must also demonstrate that the impairment substantially limits one or more major life activities." *Id.* (citations omitted). *Bennett* referenced the EEOC's "specialized definition" of "substantially limits" when the "major life activity under consideration is that of working." *Id.* Thus, a person claiming that his impairment significantly limits his major life activity of working must show that the impairment

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

*Id.* (citing 29 C.F.R. § 1630.2(j)(3)(i)). The *Bennett* Court also looked at the Tennessee Supreme Court's examination of the term "substantially limited."

> The Tennessee Supreme Court recognized this principle when it held that "an impairment that may disqualify one from working at a job of choice does not limit a major life activity," but that an individual's physical or mental impairment would be considered as substantially limiting the major life activity of working if it disqualified him or her from a broad class of jobs.

*Id.* at 844 (citing *Barnes*, 48 S.W. 3d at 706).

In the present case, Plaintiff has not alleged that her "impairment" prevents her working at other jobs.[6] Thus, even if Plaintiff's lack of vaccinated COVID–19 antibodies may be considered an "impairment," that lack clearly does not prevent her from obtaining other employment, *i.e.*, her "general employability" has not been affected. *See Cecil v. Gibson*, 820 S.W.2d 361, 365 (Tenn.

---

[6] The Court has assumed for the purpose of this analysis only that Plaintiff's unvaccinated status constitutes an impairment.

Ct. App. 1991).[7]  Therefore, Plaintiff has not shown that she has a disability within the meaning of the TDA.

However, even if Plaintiff had properly alleged that she has a disabling impairment within the meaning of the TDA, there is no duty to accommodate an employee's disability under the TDA.

> The[] elements [of a TDA claim] are "very similar to those of the ADA, but do not include a 'reasonable accommodation' component.'" *Bennett*, 315 S.W.3d at 841–42 (citing *Roberson v. Cendant Travel Servs., Inc.*, 252 F.Supp.2d 573, 583 (M.D. Tenn. 2002)). *See also Jones v. Sharp Elecs. Corp.*, No. W2013–01817–COA–R3CV, 2014 WL 806131, at *3 (Tenn. Ct. App. Feb. 28, 2014) ("Unlike its federal counterpart, the Americans with Disabilities Act . . . , the TDA does not impose a duty on employers to make reasonable accommodations to accommodate a disabled employee"). Thus, courts will not find that an employer discriminated against its employee if the employee's disability prevented or impaired him or her from performing the job's duties. *Jones*, No. W2013–01817–COA–R3CV, 2014 WL 806131, at *3 (citing *Bennett*, 315 S.W.3d at 841).

*Oliver v. Titlemax*, 149 F. Supp. 3d 857, 865 (E.D. Tenn. 2016). *Accord Hilliard v. Dolgencorp*, LLC, 2019 WL 1377263, at *11 (Tenn. Ct. App. Mar. 26, 2019) (citing *Jones*); *Russo v. Moore Ingram Johnson & Steele, LLP*, 2022 WL 1787102, *17 (M.D. Tenn. 2022) ("[T]he TDA differs

---

[7] *See also Speaks v. Health Systems Management, Inc.*, 2022 WL 3448649 (W.D.N.C. Aug. 17, 2022) (agreeing with the defendant's position that "the fact that Speaks – like all their other employees – was required to be vaccinated or that she refused to become vaccinated are insufficient to show that she was disabled under the meaning of the ADA.")

> The Company did not classify Speaks as having any "impairment" that limited one of her "major life activities." Instead, she was simply required to become vaccinated under the Company's COVID-19 policy applicable to all employees, which, while it ultimately led to Speaks' termination from Health Systems, plainly did not impair her ability to work (for example, for another company).
>
> Simply put, inferring that the Company classified Speaks as impaired by requiring her to become vaccinated or seek an exemption would mean that Health Systems considered all its employees to have an "impairment," which is of course not a plausible inference, particularly in light of the possibility of an exemption.

2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022). *Accord Jorgenson v. Conduent Transp. Sols., Inc.*, 2023 WL 1472022, at *4 (D. Md. Feb. 2, 2023); *Sharikov v. Philips Med. Sys. MR, Inc.*, 2023 WL 2390360, at *7 (N.D.N.Y. Mar. 7, 2023).

from the ADA in one critical respect. Unlike the ADA, the TDA does not impose a duty on employers to make reasonable accommodations for a disabled employee.") For these reasons, Defendant's motion to dismiss Claim Seven is granted.

In Claim Twelve, Plaintiff alleges that Defendants violated Tenn. Code Ann. § 14–2–102 which provides that "[a] private business, governmental entity, school, or local education agency shall not compel or otherwise take an adverse action against a person to compel the person to provide proof of vaccination if the person objects to receiving a COVID–19 vaccine for any reason," Tenn. Code Ann. § 14–2–102(a).[8] The Tennessee General Assembly enacted Title 14 of the Tennessee Code Annotated, effective November 12, 2021, to create a number of protections related to COVID–19. Title 14 grants a person injured as a result of such a violation a private right of action to seek "injunctive relief and to recover compensatory damages and reasonable attorneys' fees against an alleged violator." § 14–6–103.

Defendants argue that Plaintiff has failed to state a Title 14 claim because Plaintiff has not alleged that Defendants took an adverse action against Plaintiff after the Act's effective date. Defendants have also restated their arguments that federal law preempts the Tennessee law. Before the Court reaches Defendants' preemption defense and their constitutional argument that federal law preempts Tenn. Code Ann. § 14–2–102(a), the Court must first decide whether the amended complaint states a plausible claim for the violation of the Tennessee law. *Torres v. Precision Indus., Inc.*, 938 F.3d 752, 755 (6th Cir. 2019) (holding that "courts should not address a question of preemption if they can resolve the case on other grounds").

---

[8] Defendant has claimed that this section does not apply to a "private business" such as itself, but clearly it does.

Based on the allegations of the amended complaint, the Court holds that Plaintiff has failed to allege a claim under Tenn. Code Ann. § 14–2–102(a).  The Tennessee law took effect November 12, 2021.  However, Plaintiff alleges that Defendants terminated her employment on November 1, 2021.  (Amd. Cmplt. ¶¶ 9 (alleging that "on November 1, 2021, Defendants sent Plaintiff a permanent discharge notice, notifying her that she was fired"); *see also id.* ¶¶ 11, 14, 159, 160.) In other words, Plaintiff's employment relationship with Tyson Foods ended before the effective date of the new Tennessee law.  In Tennessee, "an employee or an employer may terminate an employment-at-will relationship at any time, with or without good cause." *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 648 (Tenn. 1995) (citing *Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994)).  Plaintiff has cited no authority, and the Court is aware of none, which would allow an employee to seek relief against a former employer under a new statutory cause of action for final, completed actions taken by the employer before the new law went into effect.  This would essentially make the employer retroactively liable for actions which the law permitted it to take at the time when it took them.  That is not the law in Tennessee.

The Tennessee Constitution states, "That no retrospective law, or law impairing the obligations of contracts, shall be made." Tenn. Const. art. 1, § 20.  Statutes are presumed to operate prospectively unless the legislature clearly indicates otherwise. *Shell v. State,* 893 S.W.2d 416, 419 (Tenn. 1995) (citations omitted).  Nothing in Title 14 or in Tenn. Code Ann. § 14–2–102(a) specifically provides for the retroactive application of the law.  Plaintiff can only bring her Title 14 claim if she can show that some exception to Tennessee's prospective-only application rule applies.  "An exception to the prospective–only application exists for statutes which are remedial or procedural in nature." *Nutt v. Champion Intern. Corp.*, 980 S.W.2d 365, 368 (Tenn. 1998). The Tennessee Supreme Court has defined a "procedural statute" as a law "that addresses the mode

or proceeding by which a legal right is enforced," *id*. (citing *Saylors v. Riggsbee,* 544 S.W.2d 609, 610 (Tenn. 1976)), and a "remedial statute" as a law "providing means or method whereby causes of action may be effectuated, wrongs redressed and relief obtained . . . ." *Id*. (citing *State v. Defriece,* 937 S.W.2d 954, 958 (Tenn. Ct. App. 1996)). Plaintiff maintains that Title 14 is such a "remedial statute."

Because a "procedural or remedial statute is one that does not affect the vested rights or liabilities of the parties, . . . [s]tatutes that create a new right of recovery or change the amount of damages recoverable are . . . deemed to have altered the parties vested right and thus are not considered remedial." *Id*. (quoting *Shell,* 893 S.W.2d at 420). Whether Title 14 can be understood as a "remedial" statute in the general sense of the term, as Plaintiff contends, Tenn. Code Ann. § 14–2–102(a) clearly created a new right of recovery for Tennessee employees. As a result, the Court holds that Tenn. Code Ann. § 14–2–102(a) is not the type of remedial statute Tennessee courts would apply retroactively. In light of Plaintiff's allegations that Tyson terminated her eleven days before Tenn. Code Ann. § 14–2–102(a) went into effect, the amended complaint fails to state a claim for the violation of the law. The motion to dismiss Claim Twelve is granted.

The Court recently reached a different result in the matter of *Hayslett v. Tyson Foods*, *Inc.*, --- F. Supp. 3d ---, 2022 WL 12029381 (W.D. Tenn. Oct. 20, 2022). Like Johnson, the plaintiff in *Hayslett* worked at the Tyson facility in Tennessee and was subject to the same mandatory vaccination policy for Tyson employees. Like Johnson, the plaintiff in *Hayslett* was given the option of one year's unpaid leave or immediate termination for refusal to provide proof of vaccination, effective November 1, 2021. Unlike Johnson, however, the plaintiff in *Hayslett* elected to take the one year of unpaid leave, and remained on leave until her termination in May

2022. By contrast, Johnson alleges that Tyson terminated her employment on November 1, 2021. Simply put, the two cases are distinguishable.

Having dismissed Plaintiff's Title 14 claim on the merits, the Court finds it unnecessary to decide whether federal law preempts Tennessee law under the facts of this case.

Defendant's motion to dismiss is **GRANTED** as to Counts Four, Seven, and Twelve.

**IT IS SO ORDERED**.

                                        **s/ S. Thomas Anderson**
                                        S. THOMAS ANDERSON
                                        UNITED STATES DISTRICT JUDGE

Date:  June 8, 2023.